No. 25-10746

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

THE TOWN OF PINE HILL, ALABAMA

*Plaintiff-Appellee*,

v.

3M COMPANY,

*Defendant-Appellant*,

DAIKIN AMERICA, INC., et al.,

*Defendants*.

_____

On Appeal from the United States District Court
for the Southern District of Alabama, No. 2:24-cv-00284-KD-N

_____

## OPENING BRIEF FOR
## DEFENDANT-APPELLANT 3M COMPANY

_____

Paul D. Clement
Nicholas A. Aquart
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com

Amir C. Tayrani
Zachary Tyree
Gibson, Dunn & Crutcher LLP
1700 M Street NW
Washington, DC 20036
(202) 955-8500
atayrani@gibsondunn.com
ztyree@gibsondunn.com

*Counsel for 3M Company*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellant 3M Company ("3M") certifies that the following is a list of persons and entities that have an interest in the outcome of this case:

1. 3M Company, *Appellant*;

2. Aquart, Nicholas A., *counsel for Appellant*;

3. Balch & Bingham, *counsel for Daikin America, Inc.*;

4. BASF Corporation, *co-defendant*;

5. Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., *counsel for Appellee*;

6. Beasley, Jere L, *counsel for Appellee*;

7. Bienenfeld, Elliot, *counsel for Appellee*;

8. Bradley, Arant, Boult Cummings, *counsel for BASF Corporation*;

9. Clement & Murphy PLLC, *counsel for Appellant*;

10. Clement, Paul D., *counsel for Appellant*;

11. Corteva, Inc., *co-defendant*;

12. Cozen O'Connor, *counsel for Solenis LLC*;

13. Daikin America, Inc., *co-defendant*;

14. Davis, Richard Eldon, *counsel for Solenis LLC*;

i

15. Diab, David, *counsel for Appellee*;

16. Dixon, Shannon, *co-defendant*;

17. DLA Piper LLP US, *counsel for BASF Corporation*;

18. Dubose, Kristi K, *District Judge*;

19. Dupont De Nemours, Inc., *co-defendant*;

20. EIDP, Inc., *co-defendant*;

21. Estes, Allen McLean, *counsel for Daikin America, Inc.*;

22. Flachsbart, Elizabeth, *counsel for Daikin America, Inc.*;

23. Flax, Jillian, *counsel for Solenis LLC*;

24. Frazer, Greene, Upchurch & Baker, LLC, *counsel for Daikin America, Inc.*;

25. Gibson, Dunn & Crutcher, LLP, *counsel for Appellant*;

26. Gilchrist, Wesley B., *counsel for Appellant*;

27. Goldman, Lauren R., *counsel for Appellant*;

28. Griffith, Matthew Ross, *counsel for Appellee*;

29. Harrison, Mary Elizabeth, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

30. Heller, James Harris, *counsel for Solenis LLC*;

31. International Paper Company, *co-defendant*;

32. Johnson, Andrew Burns, *counsel for BASF Corporation*;

33. Johnson, John M., *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

34. Jones Day, *counsel for Daikin America, Inc.*;

35. Jones, Rhon E., *counsel for Appellee*;

36. King, Gavin Floyd, *counsel for Appellee*;

37. King, M. Christian, *counsel for Appellant*;

38. Lankford, Ambria LaFaye*, counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

39. Lightfoot, Franklin & White, LLC, *counsel for Appellant*;

40. Lightfoot Franklin & White, LLC, *counsel for EIDP, Inc., the Chemours Company, Dupont De Nemours, Inc., Corteva, Inc.*;

41. Montalto, Vincent John, *counsel for BASF Corporation*;

42. Nelson, Katherine P., *Magistrate District Judge*;

43. Pearson, Carla, *co-defendant*;

44. Perry, Ken Law Firm*, counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

45. Perry, Kenneth Martin, *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

46. Pompey & Pompey, PC, *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

iii

47.  Pompey, William M., *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

48.  Prater, Harlan I. IV, *counsel for Appellant*;

49.  Price, Jeffrey Donald, *counsel for Appellee*;

50.  Radney, William Larkin, IV, *counsel for Appellant*;

51.  Riney, Shelby, *counsel for Solenis, LLC*;

52.  Saywell, James Robert, *counsel for Daikin America, Inc.*;

53.  Solenis, LLC; *co-defendant*;

54.  Speegle, Clinton Timothy, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

55.  Starnes & Atchison, LLP, *counsel for Solenis, LLC*;

56.  Tayrani, Amir C., *counsel for Appellant*;

57.  The Chemours Company, *co-defendant*;

58.  The Town of Pine Hill, Alabama, *Appellee*;

59.  Thompson, Amber Nicole, *counsel for Appellant*;

60.  Traeger, William H., III, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

61.  Tyree, Zachary, *counsel for Appellant*;

62.  Upchurch, Michael E., *counsel for Daikin America, Inc.*;

63.  Webb, Steve, *co-defendant*;

64. Weyerman, Elizabeth, *counsel for Appellee*;

65. Williams, Kayla R., *counsel for Appellant*;

66. Yeilding, Christopher Lynch, *counsel for Daikin America, Inc.*

Appellant further states that:

The below are subsidiaries of 3M.

3M (East) AG
3M (Proprietary) Ltd
3M (Schweiz) GmbH
3M a/s
3M APAC RDC PTE. LTD.
3M Arabia Advanced Trading Company One Person Company
3M Argentina Stock Company, Commercial, Industrial, Financial Real Property and Farming Corporation
3M Asia Holding B.V.
3M Asia Pacific UK Holding Ltd
3M Asset Management GmbH
3M Australia Pty. Ltd.
3M Belgium BV
3M Bricolage et Batiment
3M Canada Company - Compagnie 3M Canada
3M Canada Holdings Ltd.
3M Central American Management Company, S. DE R.L.
3M Cesko, spol. s.r.o.
3M Chemical Operations LLC
3M Chile S.A.
3M China Limited
3M Clubs of the United States, Inc.
3M Colombia S.A.
3M Consulting (Guangzhou) Co., Ltd.
3M Deutschland GmbH
3M do Brasil Ltda.
3M Dominicana, S.r.l.
3M El Salvador, Sociedad Anonima de Capital Variable
3M EMEA GmbH
3M Employees' Benefits Trust Association

3M Espana, S.L.
3M Fall Protection Company
3M Film Construction (Shanghai) Co., Ltd.
3M Financial Management Company
3M Foreign Holding LLC
3M France S.A.S.
3M Global Capital Limited
3M Global Channel Services, Inc.
3M Global Holding B.V.
3M Global Service Center Management Company
3M GLOBAL TECHNOLOGY CENTER LLP
3M Global Trading, Inc.
3M Guatemala, Sociedad Anonima
3M Gulf Limited
3M Health Care Limited
3M Holding Company B.V.
3M Hong Kong Limited
3M Hungária Trade Limited Liability Company
3M Importadora, S.A.
3M India Limited
3M Innovation (Thailand) Limited
3M Innovation Singapore Pte. Ltd.
3M Innovative Properties Company
3M Inovasyon Urunleri Sanayi ve Ticaret Limited Sirketi
3M Interamerica, LLC
3M Intermediate Acquisitions B.V.
3M International Company
3M International Group B.V.
3M International Holding B.V.
3M International Investments B.V.
3M International Trading (Cheng Du) Co., Ltd.
3M International Trading (Shanghai) Co., Ltd.
3M International Trading (Shenzhen) Co., Ltd.
3M International Trading (Tianjin) Co., Ltd.
3M International Trading B.V.
3M Investments (China) Co., Ltd.
3M Ireland Limited
3M Israel Ltd.
3M ITALIA s.r.l.
3M Japan Holdings G.K.

3M Japan Innovation Limited
3M Japan Limited
3M Japan Products Limited
3M Kenya Ltd
3M Korea Co., Ltd
3M Lanka (Private) Limited
3M Latin American Regional Distribution Center S.A. (LARDC)
3M Malaysia Sdn. Bhd.
3M Manaus Industria de Produtos Quimicos Ltda.
3M Manufacturera Venezuela, S.A.
3M Material Technology (Guangzhou) Co., Ltd.
3M Material Technology (Hefei) Co., Ltd.
3M Material Technology (Suzhou) Co., Ltd.
3M Mexico, Sociedad Anonima de Capital Variable
3M Minnesota Mining & Manufacturing Nigeria Ltd
3M Nederland B.V.
3M Nederland Holding B.V.
3M New Zealand Limited
3M New Zealand Trustee Limited
3M Norge A/S
3M Occupational Safety LLC
3M Open Fund
3M Osterreich Gesellschaft m.b.H.
3M Pakistan (Private) Limited
3M Panama Pacifico S. de R.L.
3M Pension Trust e.V
3M Pension Trustees Limited
3M Peru, Sociedad Anonima
3M Philippines (Export), Inc.
3M Philippines, Inc.
3M Phoenix Limited
3M Poland Manufacturing Spółka z ograniczoną odpowiedzialnością
3M Poland Spolka z ograniczona odpowiedzialnoscia
3M Precision Grinding GmbH
3M Products Limited
3M Puerto Rico, Inc.
3M Real Estate GmbH & Co KG
3M Real Estate Management GmbH
3M Sanayi Ve Ticaret A.S.
3M Seremban (Malaysia) Sdn. Bhd.

3M Service Center APAC, Inc.
3M Service Center EMEA Sp. z o.o.
3M Servicios Mexico, S. de R.L. de C.V.
3M Singapore Pte. Ltd.
3M Slovensko s.r.o.
3M South Africa (Proprietary) Limited
3M South Asia Manufacturing Private Limited
3M Specialty Materials (Shanghai) Co., Ltd.
3M Svenska Aktiebolag
3M Taiwan Limited
3M Taiwan Optronics Corporation
3M Technical Ceramics Canada ULC
3M Technical Ceramics Clarkston LLC
3M Technical Ceramics, Inc.
3M TECHNOLOGIES (S) PTE LTD
3M Thailand Limited
3M Touch Systems, Inc.
3M UK Holdings Limited
3M Ukraine LLC
3M United Kingdom Public Limited Company
3M Vietnam Limited
3M West Europe B.V.
3M Wroclaw spolka z ograniczona odpowiedzialnoscia
Aearo Canada Limited/Aearo Canada Limitee
Aearo Holding LLC
Aearo Intermediate LLC
Aearo LLC
Aearo Mexico Holding Corp.
Aearo Technologies De Baja, S.A.de C.V.
Aearo Technologies de Mexico, S.A. de C.V.
Aearo Technologies LLC
Aearo Trading Company (Shenzhen) Ltd.
Cabot Safety Intermediate LLC
Capital Safety Global Holdings Limited
CAPITAL SAFETY GROUP - Banská Bystrica, s.r.o.
Capital Safety Group Canada ULC
Ceradyne Cayman Holdings, Inc.
D B Industries, LLC
Dyneon GmbH
Edumex, S.A. De C.V.

Edusa Corporation
Eknäs Industristad AB
EMFI SAS
Fall Protection Group Inc.
Figgie (G.B.) Limited
Figgie (U.K.) Limited
Figgie Sportswear (U.K.) Limited
Figgie Sportswear Limited
Fondation d'entreprise 3M France
Fondazione 3M
Fundacion 3M
Infrared Systems Group Ltd.
Kinetic Safety, LLC
Kolors Kevarkian S.A.
Lotum S.A.
Manufacturas Digitales, S.A. de C.V.
Masking SRL
Meguiar's Deutschland GmbH
Meguiar's Holland B.V.
Meguiar's Trading Limited
Meguiar's, Inc.
Minnesota Mining and Manufacturing Company
MTI PolyFab Inc.
North Alabama Real Property Holdings, LLC
P.T. 3M Indonesia
Pensionskasse der 3M Firmen in der Schweiz
PT. 3M Indonesia Importama
Scott Health & Safety Limited
Scott Technologies, Inc.
SemEquip, Inc.
SOA Logistics S.A.S.
Sociedade Previdenciaria 3M - Preveme
Sociedade Previdenciaria 3M - Preveme II
Sun Abrasives Company Limited
Suomen 3M Oy
Three M Global Service Center Costa Rica, Sociedad de Responsabilidad Limitada
Tres M Costa Rica Sociedad Anónima
Two Harbors Insurance Company
Wendt (India) Limited

Wendt GmbH
Winterthur Technology (Taicang) Co., Ltd.
Woodtrail Estates, LLC
Yamanaka Advanced Materials, Inc.

Appellant is publicly held; is traded under stock ticker NYSE: MMM; has no parent company; and no publicly held corporation holds 10% or more of Appellant's stock.

## STATEMENT REGARDING ORAL ARGUMENT

3M respectfully requests oral argument.  This appeal presents an important and recurring question regarding a defendant's right to remove a case based on the federal-officer removal statute.  The opportunity for oral argument would allow counsel to answer the Court's questions and aid in the Court's decisionmaking.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................1

STATEMENT OF JURISDICTION..................................................4

STATEMENT OF THE ISSUE.........................................................5

STATEMENT OF THE CASE............................................................5

    A.    PFAS and MilSpec AFFF .................................................5

    B.    The AFFF Multidistrict Litigation.................................7

    C.    The Town's Suit ...............................................................8

SUMMARY OF ARGUMENT ..........................................................12

STANDARD OF REVIEW ................................................................16

ARGUMENT .......................................................................................16

    I.    3M Is Undisputedly A Person That Acted Under Federal Authority. ..........................................................................18

    II.    This Suit Relates To Actions 3M Took Under Color Of Federal Office.........................................................................19

        A.    3M Has Plausibly Alleged A Nexus Between The Charged Conduct In This Suit And Its sProduction Of MilSpec AFFF For The U.S. Military. ...................................20

            1.    The Charged Conduct Is 3M's Alleged Contamination Of The Town's Water Supply With PFAS. ..............................................................21

            2.    There Is A "Connection Or Association" Between That Charged Conduct And 3M's MilSpec AFFF Production......................................................24

        B.    The District Court Erred Twice Over In Concluding That Remand Was Proper. .................................................31

|   | 1. | The District Court Misidentified The Gravamen Of The Complaint. | 32 |

|   | 2. | In Any Event, The District Court's Nexus Conclusion Was Incorrect. | 34 |

| C. | The Town's Disclaimer Cannot Sever This Suit's Connection To MilSpec AFFF | 37 |

|   | 1. | The Town's Artful Disclaimer Rests On A False Premise, As Courts Have Held In Closely Analogous Circumstances. | 38 |

|   | 2. | The Town's Contrary Arguments Are Flawed. | 43 |

| III. | 3M Has Asserted A Colorable Federal Defense. | 44 |

| IV. | 3M's Plausible Allegations Are Sufficient For Removal. | 48 |

| CONCLUSION | | 52 |

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agyin v. Razmzan*,
  986 F.3d 168 (2d Cir. 2021) ..........................................................17, 49

*Am. Fed. of Gov't Empls., Local 2017 v. Brown*,
  680 F.2d 722 (11th Cir. 1982) ...............................................................47

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*,
  2024 WL 1470056 (D.S.C. Feb. 29, 2024)...........................................44

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
  2022 WL 4291357 (D.S.C. Sept. 16, 2022) .........................................46

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
  357 F. Supp. 3d 1391 (J.P.M.L. 2018) ...................................................7

*Baker v. Atl. Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020) ......................................... 4, 14, 21, 22, 24, 26, 28,
                                                                    30, 34, 39, 40, 41, 49, 50, 51

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988)..........................................................................7, 45

*Brinson v. Raytheon Co.*,
  571 F.3d 1348 (11th Cir. 2009) ...............................................................7

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*,
  572 F.3d 1271 (11th Cir. 2009) ..........................................................47

*Caver v. Cent. Ala. Elec. Coop.*,
  845 F.3d 1135 (11th Cir. 2017) ............. 3, 11, 13, 16, 17, 18, 19, 20, 21, 24, 27,
                                                 29, 31, 35, 36, 39, 42, 43, 44, 45, 47, 48, 49, 50

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*,
  996 F.3d 243 (4th Cir. 2021) .........................................................21, 32

*Crouch v. N. Ala. Sand & Gravel, LLC*,
  177 So. 3d 200 (Ala. 2015)....................................................................24

# TABLE OF AUTHORITIES

(*continued*)

**Page(s)**

*Cuomo v. Crane Co.*,
771 F.3d 113 (2d Cir. 2014) ...............................................................50

*Curiale v. A. Clemente, Inc.*,
2023 WL 4362722 (D.N.J. July 5, 2023) .........................................42

*Dart Cherokee Basin Operating Co. v. Owens*,
574 U.S. 81 (2014)..........................................................17, 35, 45, 48

*Drummond Co. v. Walter Indus., Inc.*,
962 So. 2d 753 (Ala. 2006)................................................................24

*Federated Dep't Stores, Inc. v. Moitie*,
452 U.S. 394 (1981)...........................................................................43

*Georgia v. Meadows*,
88 F.4th 1331 (11th Cir. 2023) ....................................... 2, 14, 17, 20, 21, 22, 23,
                                                                        32, 33, 34, 35, 36, 49

*Gilligan v. Morgan*,
413 U.S. 1 (1973)...............................................................................47

*Gov't of Puerto Rico v. Express Scripts, Inc.*,
119 F.4th 174 (1st Cir. 2024)........................................ 15, 18, 30, 41, 42, 43, 49

*Hilyer v. Fortier*,
227 So. 3d 13 (Ala. 2017)..................................................................23

*Isaacson v. Dow Chem. Co.*,
517 F.3d 129 (2d Cir. 2008) ..............................................................18

*Jefferson Cnty. v. Acker*,
527 U.S. 423 (1999).........................................................3, 21, 30, 35, 41, 43

*Kircher v. Putnam Funds Tr.*,
547 U.S. 633 (2006)...........................................................................17

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).....................................................................49

**TABLE OF AUTHORITIES**

(*continued*)

<u>**Page(s)**</u>

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) .......................................................49, 50

*Maine v. 3M Co.*,
  2023 WL 4758816 (D. Me. July 26, 2023) .......................................44

*Maryland v. 3M Co.*,
  130 F.4th 380 (4th Cir. 2025) ................ 4, 14, 15, 16, 17, 21, 23, 24, 26, 27, 28,
                          31, 34, 35, 38, 39, 40, 42, 43, 44, 50, 51

*Maryland v. 3M Co.*,
  2024 WL 1152568 (D. Md. Feb. 12, 2024).......................................44

*Moore v. Elec. Boat Corp.*,
  25 F.4th 30 (1st Cir. 2022)..............................................................45

*Morrison v. Amway Corp.*,
  323 F.3d 920 (11th Cir. 2003) ........................................................50

*Nadler v. Mann*,
  951 F.2d 301 (11th Cir. 1992) ...................................................21, 22

*Nessel v. Chemguard, Inc.*,
  2021 WL 744683 (W.D. Mich. Jan. 6, 2021)....................................42

*New Hampshire v. 3M Co.*,
  132 F.4th 556 (1st Cir. 2025)......................................................30, 31

*New Hampshire v. 3M Co.*,
  665 F. Supp. 3d 215 (D.N.H. 2023)..................................................44

*Illinois ex rel. Raoul v. 3M Co.*,
  111 F.4th 846 (7th Cir. 2024) ................................... 4, 14, 21, 26, 28, 29, 39, 40

*Illinois ex rel. Raoul v. 3M Co.*,
  693 F. Supp. 3d 948 (C.D. Ill. 2023) ...............................................44

*Russell Corp. v. Sullivan*,
  790 So. 2d 940 (Ala. 2001)..............................................................23

# TABLE OF AUTHORITIES

## (*continued*)

**Page(s)**

*Sawyer v. Foster Wheeler LLC*,
860 F.3d 249 (4th Cir. 2017) ........................................................ 19, 22

*United States v. Moss*,
34 F.4th 1176 (11th Cir. 2022) ................................................................. 16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................. 26

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007) ....................................................................... 16, 19, 22

*Willingham v. Morgan*,
395 U.S. 402 (1969) ....................................... 13, 16, 17, 27, 39, 43, 44, 47, 48

**Statutes**

1 U.S.C. § 1 ............................................................................................. 18

28 U.S.C. § 1442 ................................. 1, 4, 5, 9, 12, 16, 19, 20, 31, 35, 38, 46, 52

28 U.S.C. § 1446 .......................................................................... 31, 48, 49

28 U.S.C. § 1447 ..................................................................................... 4

28 U.S.C. § 1455 ................................................................................... 49

**Regulation**

48 C.F.R. § 9.203(a) ................................................................................. 6

**Other Authorities**

Edward S.K. Chian et al., *Membrane Treatment of Aqueous Film
Forming Foam (AFFF) Wastes for Recovery of Its Active
Ingredients* (Oct. 1980) ....................................................................... 46

EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid
and Its Salts* (Nov. 4, 2002) ................................................................ 46

**TABLE OF AUTHORITIES**

(*continued*)

**Page(s)**

U.S. Navy, *Military Specification: Fire Extinguishing Agent, Aqueous Film-Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water* (Nov. 21, 1969) ................................................................. 6

## INTRODUCTION

This appeal arises from the Town of Pine Hill's attempt to evade federal jurisdiction through artful pleading.  The Town's complaint seeks to hold 3M liable for the alleged contamination of its water supply with certain per- and polyfluoroalkyl substances ("PFAS").  3M removed the case to federal court under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), which provides jurisdiction over any lawsuit that has a nexus to a defendant's actions as a federal contractor and that implicates a colorable government-contractor defense.

3M's notice of removal plausibly alleges that at least some of the alleged contamination resulted from its production of aqueous film-forming foam ("AFFF") that 3M supplied to the U.S. military pursuant to rigorous military specifications ("MilSpec").  The Town does not contest that any claim to recover for alleged PFAS contamination stemming from MilSpec AFFF needs to be litigated in federal court. But in an effort to defeat 3M's statutory right to a federal forum, the Town purported to disclaim relief for any PFAS contamination stemming from AFFF, and alleged that the contamination at issue resulted from non-AFFF products used at paper mills upstream of Pine Hill.  3M's notice of removal, however, alleges that PFAS from MilSpec AFFF released from an Air Force base "commingled with PFAS from non-AFFF sources," including the paper mills, "in the Alabama River" and contributed

"at least in part" to the alleged contamination of the Town's water supply.  Dkt. 1 ¶¶ 3-4.

The district court remanded the case to state court.  It did not rely on the Town's disclaimer of recovery for AFFF-based contamination.  Instead, the court focused on an issue that the Town had not raised and the parties had not briefed.  It noted that the first step in the federal-officer removal statute's nexus analysis is to "identify the 'act' or charged conduct underlying" the lawsuit. *Georgia v. Meadows*, 88 F.4th 1331, 1343 (11th Cir. 2023).  The court then held that the "charged conduct" at issue here was 3M's supply of non-AFFF PFAS to paper mills—even though the Town's claims, allegations, and sought-after remedies all rest more broadly on the alleged contamination of its water supply.  The district court concluded that because the charged conduct supposedly consisted of the paper mills' purchase of non-AFFF PFAS, 3M could not remove.

This theory never occurred to the Town because it is wrong.  First, the Town's claims against 3M are not limited to the sale of PFAS to paper mills; to the contrary, the Town alleges that 3M caused the alleged contamination of its water supply.  This Court has held that the nature of the plaintiff's claims determines the charged conduct. *Meadows*, 88 F.4th at 1344-45.  Under Alabama law, all four of the Town's claims focus squarely on the alleged contamination of the Town's water supply, yet

the district court never discussed the nature of the claims or cited any Alabama precedent.

Second, no matter how the charged conduct is defined, the district court erred by failing to reach the second step of the nexus analysis: whether 3M has alleged the requisite "'connection or association'" between that conduct and 3M's federal activities. *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017). In analyzing *that* question, the Court must credit the plausible allegations in the defendant's notice of removal. *Id.* at 1145; *see Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999). 3M's notice of removal plausibly alleges that at least a portion of the alleged PFAS in the Town's water supply came from MilSpec AFFF released at the upstream Air Force base, and that PFAS from MilSpec AFFF and non-AFFF products commingle in the environment and cannot readily be disaggregated. Because PFAS compounds in MilSpec AFFF are chemically indistinguishable from the same PFAS compounds in non-AFFF products, any imposition of liability—even if the charged conduct is artificially narrowed to the sale of non-AFFF products— would necessarily hold 3M liable for its manufacture of MilSpec AFFF for the military. At the very least, a court would have to determine whether it is possible to disentangle the indistinguishable chemical compounds, and if so, a factfinder would need to determine what PFAS stemmed from which source.

The Town's purported disclaimer does not change the analysis, because it does not eliminate the need for *some* court to resolve questions of causation and allocation stemming from the commingling of PFAS from AFFF and non-AFFF sources in the Town's water supply. And as the Fourth and Seventh Circuits have recently explained in similar cases involving AFFF disclaimers, that court must be a federal one pursuant to the federal-officer removal statute. *See Maryland v. 3M Co.*, 130 F.4th 380, 390-91 (4th Cir. 2025); *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848-49 (7th Cir. 2024) (citing *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944-46 & n.3 (7th Cir. 2020)). "Where the parties dispute difficult factual questions" that determine the availability of a contractor's federal defense, "a contractor acting at the government's direction 'should have the opportunity to present their version of the facts to a federal, not a state, court.'" *Maryland*, 130 F.4th at 391.

Because 3M has plausibly alleged the necessary elements for federal jurisdiction under the federal-officer removal statute, this Court should reverse.

## STATEMENT OF JURISDICTION

This appeal arises from 3M's removal of a case from state court to federal court. The district court had federal-officer removal jurisdiction under 28 U.S.C. § 1442(a)(1). This Court has jurisdiction under 28 U.S.C. § 1447(d), which provides that "[a]n order remanding a case to the State court from which it was removed" pursuant to § 1442(a)(1) "shall be reviewable by appeal." The district court's

4

remand order was entered on March 6, 2025, and 3M timely noticed its appeal on March 7, 2025.  Dkt. 86; Dkt. 87; Dkt. 89.

## STATEMENT OF THE ISSUE

Whether the district court erred in holding that the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), does not provide for federal jurisdiction in this case, despite 3M's plausible allegations that the Town's claims for PFAS contamination of its water supply relate to 3M's federally directed production of MilSpec AFFF and thus implicate 3M's colorable federal government-contractor defense.

## STATEMENT OF THE CASE

### A.    PFAS and MilSpec AFFF

PFAS are chemicals used in a broad variety of products, including consumer and household goods.  Dkt. 1-2 ¶ 31.  PFAS are also key ingredients in AFFF, a firefighting foam widely used by the U.S. military on bases, airfields, and ships to extinguish life-threatening, fuel-based fires.  Dkt. 1 ¶ 21.  In settings where "fuel fires are inevitable and potentially devastating," the Department of Defense has described AFFF as a "'mission critical product that saves lives and protects assets.'"  *Id.* ¶¶ 21, 42 (alteration omitted).

Although the U.S. Naval Research Laboratory developed AFFF, the government required the assistance of chemical manufacturers to maintain a sufficient supply.  *See* Dkt. 1 ¶¶ 21-22.  The Department of Defense thus developed

detailed specifications (MilSpec) for use by private manufacturers. *Id.* ¶ 22. AFFF suppliers must use rigorous inspection and testing procedures to "assure supplies . . . conform to [the] prescribed requirements." U.S. Navy, *Military Specification: Fire Extinguishing Agent, Aqueous Film-Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water* 3 (Nov. 21, 1969). The Navy carefully tests AFFF products for compliance with the MilSpec, after which it adds approved products to the "Qualified Products List." *Id.* at 2; *see also* 48 C.F.R. § 9.203(a).

Until recently, the specifications mandated that any AFFF produced for the U.S. military contain "fluorocarbon surfactants"—a class of PFAS chemicals. Dkt. 1 ¶ 23. While the AFFF MilSpec no longer identifies PFAS by name, it still effectively requires the presence of these chemicals. *Id.* As the Department of Defense acknowledges in the extant version of the AFFF MilSpec, it is not currently possible for manufacturers to eliminate PFAS entirely "'while still meeting all other military specification requirements.'" *Id.* (quoting MIL-PRF-24385F(4) § 6.6 (2020)).

3M manufactured and sold MilSpec AFFF to the federal government for over three decades. Dkt. 1 ¶ 24. The U.S. military has used 3M's MilSpec AFFF at military facilities across the country, including at sites in Alabama. One such site is Maxwell Air Force Base (including the Gunter Annex), which is situated along the Alabama River in Montgomery. *Id.* ¶¶ 25-26. Government reports confirm that

AFFF was used at the Base, allegedly resulting in PFOS and PFOA contamination of the Alabama River. *Id.* ¶ 26 (citing report). The Town of Pine Hill is also located on the Alabama River, downstream from the Base. *Id.* ¶¶ 25-26.

## B.     The AFFF Multidistrict Litigation

Over the past several years, States, public water providers, and private plaintiffs have brought product-liability suits against AFFF manufacturers, alleging that "AFFF products used at airports, military bases, or certain industrial locations caused the release of" PFAS compounds "into local groundwater and contaminated drinking water supplies." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). The Judicial Panel on Multidistrict Litigation centralized these actions into a single proceeding—the AFFF multidistrict litigation ("MDL")—in the District of South Carolina. *Id.* at 1396.

The Judicial Panel on Multidistrict Litigation concluded that consolidation would "promote the just and efficient conduct of this litigation." 357 F. Supp. 3d at 1394. That is partially because "the AFFF manufacturers likely will assert identical government contractor defenses in many of the actions." *Id.* The federal government-contractor defense immunizes government contractors from state tort liability when they produce equipment for the U.S. military pursuant to "'reasonably precise specifications'" issued by the government. *Brinson v. Raytheon Co.*, 571 F.3d 1348, 1351 (11th Cir. 2009) (quoting *Boyle v. United Techs. Corp.*, 487 U.S.

500, 512 (1988)).  In the MDL, manufacturers are asserting the federal government-contractor defense based on their production of MilSpec AFFF for the Department of Defense.

### C.    The Town's Suit

In July 2024, the Town of Pine Hill filed this action against 3M and others, alleging that the defendants had "caused PFAS pollution to the Alabama River, specifically the portion of the river from which [the Town] draws" its drinking water. Dkt. 1-2 ¶ 2.  The complaint alleges that "Defendants . . . have and continue to release PFAS . . . directly into the environment and abutting rivers," and that "[t]his PFAS[-]laden waste enters and then pollutes the Alabama River."  *Id.* ¶ 35. According to the complaint, the Town's water supply has elevated levels of PFOS and PFOA.  *Id.* ¶ 66.  The complaint seeks damages to "compensate [the Town] for removing PFAS from Pine Hill's drinking water and facilities" and an injunction "requiring Defendants to remove their chemicals from Pine Hill's water supply and to prevent these chemicals from continuing to contaminate Pine Hill's water supply and facilities."  *Id.* at 18.

The complaint alleges that the source of the asserted PFAS contamination is International Paper's operation of three paper mills upstream of Pine Hill.  Dkt. 1-2 ¶¶ 57-60.  According to the complaint, 3M and other manufacturer-Defendants sold PFAS-containing products to the mills for use in their "paper-manufacture

processes." *Id.* ¶ 56. The mills allegedly discharged PFAS-containing wastewater into the Alabama River. *Id.* ¶¶ 57-60. One of the three paper mills—the Prattville mill—is located near Montgomery, along the same stretch of the Alabama River as Maxwell Air Force Base. *Id.* ¶ 58; Dkt. 1 ¶¶ 25-26. Despite its asserted injury and sought-after recovery, the Town disclaims "any relief for contamination or injury related to Aqueous Film Forming Foam that contains PFAS." Dkt. 1-2 ¶ 73; *see id.* ¶¶ 1, 40.

3M removed the case to the U.S. District Court for the Southern District of Alabama, asserting jurisdiction under the federal-officer removal statute. Dkt. 1 at 1 (citing 28 U.S.C. § 1442(a)(1)). The Town moved to remand to state court, arguing that its AFFF disclaimer was dispositive. Dkt. 18. In its opposition brief, 3M explained that its notice of removal contained detailed factual allegations showing that, notwithstanding the Town's disclaimer, this case is inextricably related to 3M's production of MilSpec AFFF. *See* Opp. to Mot. to Remand at 8-9, *Town of Pine Hill v. 3M Co.*, 2:24-cv-00284 (S.D. Ala. Sept. 10, 2024), Dkt. 53.

In particular, 3M alleges in its notice of removal that PFAS from MilSpec AFFF released from the Maxwell Base, which is "located . . . roughly the same distance from Pine Hill along the Alabama River" as the Prattville paper mill, "commingled with PFAS from non-AFFF sources in the Alabama River" and contributed "at least in part" to the alleged contamination of the Town's water

supply.  Dkt. 1 ¶¶ 25-29; *see id.* ¶¶ 2, 33-36, 44.  AFFF and non-AFFF products contain and allegedly released "the same PFAS chemicals" at issue in this case: PFOS and PFOA.  *Id.* ¶ 4; Dkt. 1-2 ¶¶ 31, 42-49.  The same PFAS compounds are chemically indistinguishable in the environment regardless of their source.  Dkt. 1 ¶ 4.  Accordingly, there is no ready way "to segregate out" AFFF-sourced PFAS compounds from non-AFFF-sourced PFAS compounds in the Town's water supply. *Id.*

Because PFOS and PFOA from different sources (including MilSpec AFFF) are chemically indistinguishable and have allegedly contaminated the Town's water supply, 3M further explained, it intends to invoke the federal government-contractor defense in this case for all alleged contamination, or at a minimum for any contamination allocated to AFFF.  Dkt. 1 ¶ 29.  Accordingly, this case falls within the federal-officer removal statute.  *Id.* ¶¶ 31-46.

The Magistrate Judge recommended that the district court grant the Town's remand motion.  The Magistrate Judge acknowledged that the parties' briefing "focus[ed] exclusively on whether Pine Hill's disclaimer" defeats federal jurisdiction, but she recommended that the motion be granted on a different ground. Dkt. 81 at 6.  The Magistrate Judge said that the conduct at the heart of the Town's claims was 3M's "manufacture of PFAS-containing products for, and suppl[y]ing of them to, International Paper specifically for use in its Alabama mills."  *Id.* at 8-9.

The court then held that simply because *that* conduct was not undertaken "'under color of federal office,'" 3M could not remove the case under the federal-officer removal statute. *Id.* at 10.

In its objections to the Magistrate Judge's recommendation, 3M explained that the Magistrate Judge had misidentified the charged conduct in the Town's complaint *and* had failed to account for the facts alleged in 3M's notice of removal in determining that 3M failed to allege a sufficient nexus. 3M explained that the heart of the Town's claims is the attempt "to hold 3M liable for PFAS in its water supply." Def. 3M Co.'s Objections to Report and Recommendation at 9-10, *Town of Pine Hill v. 3M Co.*, 2:24-cv-00284 (S.D. Ala. Sept. 10, 2024), Dkt. 85. And 3M's notice alleges that the asserted presence of PFAS in the Town's water supply was plausibly caused at least in part by the use of MilSpec AFFF at the Maxwell Base. *Id.* at 10-12. 3M had thus plausibly alleged "'a connection or association between the act in question'"—alleged PFAS contamination of the Town's water supply—"'and the federal office.'" *Id.* at 8-9 (quoting *Caver*, 845 F.3d at 1144).

The district court nonetheless adopted the Report and Recommendation in full, without offering any independent reasoning, one day before the Fourth Circuit in *Maryland* held that similar cases alleging PFAS contamination have a clear nexus to 3M's federal conduct. Dkt. 86; Dkt. 87.

3M timely noticed this appeal. Dkt. 89.

11

## SUMMARY OF ARGUMENT

This case belongs in federal court.  The Town charges 3M (and others) with causing the alleged PFAS contamination of its water supply, and 3M's notice of removal plausibly alleges that PFAS from MilSpec AFFF are inseparably commingled in the water supply with PFAS from non-AFFF sources.  As the Fourth and Seventh Circuits have recently and persuasively explained, those allegations are sufficient to support federal jurisdiction; the Town's ersatz "disclaimer" of AFFF-related recovery cannot preclude 3M from removing the action to federal court.  Whether the debate is framed as a question about the scope of the "charged conduct," the scope of the Town's disclaimer, or the scope of 3M's federal defense, some court will need to decide whether PFAS contamination can be disentangled and if so to what degree.  Under the federal-officer removal statute, that court must be a federal court.  3M readily satisfies each prerequisite for removal, so the district court has jurisdiction over this case under 28 U.S.C. § 1442(a)(1).

I.    3M is undisputedly a "person" within the statute's meaning.  And 3M also undisputedly acted under federal authority when it manufactured and supplied MilSpec AFFF to the U.S. military under government contracts.

II.    This suit is plainly "for or relating to" 3M's exercise of federal authority.  28 U.S.C. § 1442(a)(1).  The Town seeks to recover for alleged contamination of its water supply that—based on the plausible allegations in 3M's

notice of removal—was caused at least in part by MilSpec AFFF. PFAS from MilSpec AFFF and non-AFFF sources have commingled in the Town's water supply. The same PFAS compounds, such as PFOS or PFOA, are chemically indistinguishable whether they derive from MilSpec AFFF or non-AFFF sources. Thus, 3M has plausibly alleged that the Town has no ready way to segregate the purported PFAS in its water supply based on source. Any relief, therefore, would necessarily sweep in at least some MilSpec AFFF for which 3M has a federal defense. That is especially true given the complaint's request for injunctive relief, which is indivisible by its nature.

At a minimum, the parties will need to present expert testimony or other evidence to determine whether there is an accurate means of apportioning liability and remedies between PFAS from MilSpec AFFF and non-AFFF sources—and if so, to assist the jury in making the apportionment determination. Because the causation and allocation questions determine the "ultimate validity" of 3M's defense, *Caver*, 845 F.3d at 1145, 3M should "have the opportunity to present [its] version of the facts to a federal, not a state, court," *Willingham v. Morgan*, 395 U.S. 402, 409 (1969).

The Fourth and Seventh Circuits have recently held that cases like this have a connection to 3M's federal conduct under § 1442(a)(1). The courts held that claims for PFAS contamination like those at issue here should be resolved in federal court

13

because "a factfinder must . . . decide the important causation and allocation questions" presented by commingled PFAS contamination from both MilSpec AFFF and non-AFFF sources. *Maryland*, 130 F.4th at 392 (citing *Raoul*, 111 F.4th at 849); *see Baker*, 962 F.3d at 944-46 & n.3.

The district court erred in holding, *sua sponte*, that 3M failed to allege a sufficient nexus between the charged conduct and 3M's federal activities. The district court wrongly narrowed the charged conduct to 3M's manufacturing and supplying PFAS-containing products to paper mills. The charged conduct is instead the alleged tortious contamination of the Town's water supply with PFAS. *Meadows*, 88 F.4th at 1344. Both the nature of the Town's claims under Alabama case law *and* the Town's allegations and requests for relief show as much.

Even if the charged conduct is artificially narrowed to supplying PFAS to paper mills, the district court still erred. Given 3M's plausible allegations of commingling and indistinguishability, the Town cannot hold 3M liable for the harm allegedly caused by its paper-mill-related activities without *also* holding 3M liable for its MilSpec AFFF production. There is thus a connection or association between the charged conduct—however framed—and 3M's federal acts.

The Town's disclaimer does not sever the nexus between its suit and 3M's manufacture of MilSpec AFFF. That disclaimer contradicts 3M's plausible allegations that chemically indistinguishable PFAS compounds from both AFFF and

14

non-AFFF sources have commingled in the Town's water supply. Those allegations mean that the factfinder will "necessarily" be asked to impose liability based on "work that 3M did for the federal government" or will at least need to decide difficult causation and apportionment questions based on expert modeling. *Maryland*, 130 F.4th at 390-91. Those decisions—whether framed in terms of the scope of the disclaimer or the scope of the federal defense—would determine the availability and scope of 3M's federal government-contractor defense. 3M has the right to present its view of the facts and the law to a federal court to decide those questions. In short, the Town's disclaimer cannot defeat removal. *See id.* at 390-92; *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 188-93 (1st Cir. 2024).

III.    3M has a colorable federal government-contractor defense in this case. 3M's notice of removal plausibly alleges that 3M provided MilSpec AFFF to the U.S. military according to reasonably precise specifications requiring the use of PFAS and that the government was aware of the risks of PFAS. This suit implicates a colorable government-contractor defense for precisely the same reasons the nexus requirement is satisfied.

IV.    3M's notice of removal contains plausible allegations that establish each element of federal-officer removal jurisdiction, so this case belongs in federal court. The Town incorrectly asserted below that 3M must produce evidence to

15

support those allegations, but the Supreme Court and this Court have squarely rejected that argument.

Because 3M is entitled to a federal forum in which to raise its colorable federal defense to the Town's claims, this Court should reverse.

## STANDARD OF REVIEW

This Court reviews a district court's remand decision and any questions of statutory interpretation *de novo*. *Caver*, 845 F.3d at 1142 n.5; *United States v. Moss*, 34 F.4th 1176, 1194 (11th Cir. 2022).

## ARGUMENT

3M satisfies the requirements for federal-officer removal in this case. The federal-officer removal statute authorizes any officer of the United States, "or any person acting under that officer," to remove a civil action if the action is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "One of the primary purposes of the removal statute . . . was to have [federal officers'] defenses litigated in the federal courts." *Willingham*, 395 U.S. at 407; *see Maryland*, 130 F.4th at 387 (the statute "give[s] effect to the legislative principle that those acting at the federal government's direction should be able to defend themselves in federal—not state—court"). The Supreme Court has thus instructed that § 1442(a)(1) "must be 'liberally construed'" in favor of removal. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). The strong federal policy in favor of

16

removing these actions "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)," *Willingham*, 395 U.S. at 407, which could allow "states [to] stymy the federal government's operations," *Maryland*, 130 F.4th at 387.

The federal-officer removal statute creates an *exception* to the ordinary well-pleaded-complaint rule. It permits a federal officer, or a party that acted under a federal officer, to remove an entire action if he pleads a colorable federal defense to at least "'one claim'" in the case, *Meadows*, 88 F.4th at 1344 (emphasis omitted), "despite the nonfederal cast of the complaint," *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006).

A notice of removal need not provide "[e]vidence" to establish jurisdiction; instead, it "need include only . . . *plausible allegation[s]*" of jurisdictional facts. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (emphasis added); *see Willingham*, 395 U.S. at 407 (defendant "need not win his case before he can have it removed"). In other words, "'the same liberal rules employed in testing the sufficiency of a pleading should apply to appraise the sufficiency of a defendant's notice of removal'" under the federal-officer removal statute. *Agyin v. Razmzan*, 986 F.3d 168, 180-81 (2d Cir. 2021); *see*, *e.g.*, *Maryland*, 130 F.4th at 388-89. Accordingly, this Court asks whether a notice of removal's "allegations, if true, would establish that" federal-officer removal jurisdiction exists. *Caver*, 845 F.3d at 1145.

A private defendant can remove a case under § 1442(a)(1) if it plausibly alleges three elements: (1) the defendant is a "person . . . who acted under a federal officer"; (2) there is a "'connection between what the [defendant] has done under asserted official authority and the action against'" the defendant; and (3) the defendant has "a colorable federal defense." *Caver*, 845 F.3d at 1142. Because 3M's notice of removal establishes all three elements of federal-officer removal, this case should be resolved in federal court.

## I.     3M Is Undisputedly A Person That Acted Under Federal Authority.

3M readily satisfies the first element of the test: It is a "person" that "act[ed] under" federal authority. A corporation is a "person" within the meaning of 28 U.S.C. § 1442. *See* 1 U.S.C. § 1 (the word "person" "include[s] corporations," "unless the context indicates otherwise"); *e.g.*, *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135-36 (2d Cir. 2008) (corporations are persons under § 1442); *Express Scripts*, 119 F.4th at 184 n.4 (same); *cf. Caver*, 845 F.3d at 1138, 1142, 1146 (upholding federal-officer removal and noting the parties "do not debate that" a "nonprofit membership corporation[]" "is a person within the meaning of the statute"). 3M is a corporation. *See* Dkt. 1 ¶ 31. Thus, as the Town has not disputed, 3M is a person under § 1442(a)(1).

3M also acted under federal authority. The "acting under" requirement describes "the triggering relationship between a private entity and a federal officer,"

*Watson*, 551 U.S. at 149, and is met when an entity "'*assist[s]*, or . . . help[s] *carry out*, the duties or tasks of the federal superior,'" *Caver*, 845 F.3d at 1143. 3M manufactured AFFF for the federal government pursuant to rigorous military specifications that required the use of PFAS. Dkt. 1 ¶¶ 22-24. Understandably, then, neither the district court nor the Town disputed that 3M acted under a federal officer when it contracted with the government to develop and supply MilSpec AFFF to the U.S. military. *See Caver*, 845 F.3d at 1144 ("a federal contractor performing work on behalf of the government" is a paradigm example); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) ("[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*.").

## II. This Suit Relates To Actions 3M Took Under Color Of Federal Office.

The second element asks whether the Town's claims in this case have a nexus to 3M's federal conduct. The answer is yes. The federal-officer removal statute authorizes any officer of the United States, "or any person acting under that officer," to remove a civil action that is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). 3M's notice of removal plausibly alleges a sufficient link between the conduct charged in the complaint—allegedly contaminating the Town's water supply with PFAS—and 3M's production of MilSpec AFFF for the U.S.

19

military.  Indeed, the Town's water supply is downstream from a military base from which MilSpec AFFF was allegedly released, and that base is physically proximate to one of the paper mills the Town identifies as the source of the alleged PFAS contamination.  The district court's myopic focus on the paper mills was misplaced and, at any rate, does not sever the nexus between the charged conduct and 3M's federal activities.  And, as several recent decisions from other circuits make clear, the Town's purported disclaimer of AFFF-related liability does not defeat federal jurisdiction.

### A.    3M Has Plausibly Alleged A Nexus Between The Charged Conduct In This Suit And Its Production Of MilSpec AFFF For The U.S. Military.

3M's notice of removal plausibly alleges that the Town's suit is "for or relating to" 3M's production of MilSpec AFFF.  28 U.S.C. § 1442(a)(1).  As this Court has explained, Congress amended the federal-officer removal statute in 2011 "to add the phrase 'or relating to,' which was intended to broaden the scope of acts that allow a federal officer to remove a case to federal court."  *Caver*, 845 F.3d at 1144 n.8.  This Court begins by "identify[ing] the 'act' or charged conduct underlying" the lawsuit.  *Meadows*, 88 F.4th at 1343; *see Caver*, 845 F.3d at 1145.  The Court then determines whether there is "'a connection or association between the act in question and the federal office.'"  *Caver*, 845 F.3d at 1144.  Particularly given that the "phrase 'relating to' is broad," "'[t]he hurdle erected by this

requirement is quite low.'" *Id.* In evaluating whether a nexus exists, the Court "credit[s] [3M's] theory of the case." *Acker*, 527 U.S. at 432; *e.g.*, *Maryland*, 130 F.4th at 389. If even one claim is removable, then the entire case is. *Nadler v. Mann*, 951 F.2d 301, 306 n.9 (11th Cir. 1992).

3M's plausible allegations—taken together with the Town's own allegations—easily clear this low bar and establish a sufficient connection between the Town's alleged PFAS contamination and 3M's production of MilSpec AFFF. As the Fourth Circuit recently explained in a similar case, "the important causation and allocation questions" these kinds of cases present "highlight" that the alleged contamination "is inextricably related to" 3M's federal conduct. *Maryland*, 130 F.4th at 391-92; *see Raoul*, 111 F.4th at 848-49 (similar) (citing *Baker*, 962 F.3d at 945 n.3). A federal court must decide those questions because they determine the availability and scope of 3M's federal defense. *Maryland*, 130 F.4th at 389-92. This case is thus "for or relating to" 3M's exercise of federal authority.

### 1. The Charged Conduct Is 3M's Alleged Contamination Of The Town's Water Supply With PFAS.

In evaluating the nexus element of federal-officer removal, a court must first "identify the . . . charged conduct underlying" the plaintiff's suit. *Meadows*, 88 F.4th at 1343; *see Caver*, 845 F.3d at 1145. In doing so, a court should not "elevate form over substance," *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 256 (4th Cir. 2021), and reads the complaint as a whole to determine the

"'heart' or 'gravamen'" of the claims, *Meadows*, 88 F.4th at 1344. This inquiry involves analyzing the character and elements of the plaintiff's causes of action. *See id.* at 1344-45 (discussing Georgia conspiracy).[1]

The Town charges 3M with allegedly contaminating the Town's water supply with PFAS. The allegations underlying each of the complaint's four substantive claims center on PFAS contamination. The negligence count alleges that Defendants breached their "duty to Pine Hill to exercise due and reasonable care in their distribution, sales, manufacturing, disposal, and other operations to prevent the contamination of PFAS into the water supply." Dkt. 1-2 ¶ 75; *see id.* ¶ 76 (Defendants "breached duties owed to Pine Hill, including failing to prevent PFAS contamination in the Alabama River"). The public-nuisance count alleges that "Defendants have created a nuisance by failing to prevent the contamination of

---

[1] In evaluating a case for removal, a court must assess all the allegations in the complaint and analyze the nature of each claim in determining the charged conduct because an entire case is removable if even one of the claims is. *See Nadler*, 951 F.2d at 306 n.9; *Baker*, 962 F.3d at 945; *Sawyer*, 860 F.3d at 257; 14C Wright & Miller, *Federal Practice and Procedure* § 3726 (4th ed.) (the "entire action" is removable "even if only one of the controversies it raises involves a federal officer or agency"). In addition, as noted, the court must credit the plausible allegations in the notice of removal. *See supra* at 17. To the extent the "heart or gravamen" standard could be understood to suggest a narrower approach, where the search for the "heart or gravamen" of the complaint would allow a court to ignore "minor" removable claims or defenses to claims, that would be inconsistent with those settled principles and with the Supreme Court's clear direction that the federal-officer removal statute "must be 'liberally construed'" in favor of removal. *Watson*, 551 U.S. at 147.

PFAS into the waters throughout the State of Alabama, which has caused and continues to cause contamination of Pine Hill's water supply." *Id.* ¶ 79. The private-nuisance count alleges that "[t]he contamination of Pine Hill's water treatment facilities constitutes a private nuisance." *Id.* ¶ 84. And the trespass count alleges that "Defendants' intentional acts in failing to contain the release of PFAS . . . caused an invasion of Pine Hill's real and personal property by Defendants' PFAS chemicals." *Id.* ¶ 89. The Town's separate "Injunctive Relief" count seeks an order "requiring Defendants to take all steps necessary to remove their chemicals from Pine Hill's water supplies and property." *Id.* ¶ 102. The plain "'gravamen'" of these "'claim[s],'" *Meadows*, 88 F.4th at 1344, is not some narrow concern about particular product sales, but rather encompasses all alleged PFAS contamination of the Town's water supply, *see Maryland*, 130 F.4th at 390-91 ("Both [plaintiffs] plead general PFAS contamination").

The nature of the Town's claims under Alabama law crystalizes the point. Alabama negligence law, for example, requires that the Town prove injury. *See Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017) ("'To establish negligence, the plaintiff must prove . . . damage or injury.'"). The injury that the Town alleges 3M caused is "the contamination of PFAS [in] the water supply." Dkt. 1-2 ¶ 75. In addition, the Town can bring a public-nuisance claim only if it "suffered a 'special damage'" distinct from the public, *Russell Corp. v. Sullivan*, 790 So. 2d 940, 951

(Ala. 2001), and the special damages alleged include "the future installation and operation of a filtration system capable of removing Defendants' chemicals from the water," Dkt. 1-2 ¶ 80. "'The essence of private nuisance is an interference with the use and enjoyment of land.'" *Crouch v. N. Ala. Sand & Gravel, LLC*, 177 So. 3d 200, 209 (Ala. 2015). Similarly, trespass law "'is plain that the gist of any trespass action is the interference with a right to possession of property.'" *Drummond Co. v. Walter Indus., Inc.*, 962 So. 2d 753, 782 (Ala. 2006). Here, the Town alleges that 3M caused PFAS to interfere with its water-treatment facilities via the allegedly contaminated water supply. Dkt. 1-2 ¶¶ 89-91.

In short, the heart of the Town's complaint—the charged conduct in this case—is 3M's alleged contamination of the Town's water supply with PFAS. *See Maryland*, 130 F.4th at 390-91; *Baker*, 962 F.3d at 944-45.

### 2. There Is A "Connection Or Association" Between That Charged Conduct And 3M's MilSpec AFFF Production.

There is a clear "'connection or association'" between the Town's charged conduct and 3M's asserted federal authority. *Caver*, 845 F.3d at 1144. As explained, the Town alleges that its water supply, drawn from a portion of the Alabama River, is contaminated with PFAS—in particular PFOS and PFOA. *See supra* at 8-9, 22-23. And it alleges that the source of that PFAS is three paper mills upstream of Pine Hill, including one in Prattville. Dkt. 1-2 ¶¶ 57-60. 3M's notice of removal, however, plausibly alleges that PFAS (including PFOS and PFOA) from MilSpec

AFFF were released from Maxwell Air Force Base into the Alabama River, not far from the Prattville mill.  Dkt. 1 ¶ 4, 25-26.  Indeed, the City of Montgomery sued 3M and other defendants for alleged PFAS contamination stemming from AFFF use at that very Base.  *Id.* ¶ 27.  The alleged "PFOA and PFOS contamination" about which the Town complains thus "equally as plausibly resulted, at least in part, from MilSpec AFFF use" at the Base as from the Prattville mill operations.  *Id.* ¶ 25.  That alone establishes a plausible nexus between 3M's production of MilSpec AFFF and the alleged contamination for which the Town seeks relief.  *Id.* ¶¶ 4, 25-30.

Moreover, 3M's notice of removal alleges that the PFOS and PFOA from both MilSpec AFFF and non-AFFF sources are allegedly "commingled" in "the Alabama River," including in the Town's water supply.  Dkt. 1 ¶¶ 4, 25-30.  And those particular PFAS compounds are chemically indistinguishable, no matter whether they were allegedly used in AFFF products or non-AFFF products.  *Id.* ¶ 4.  As 3M alleges in its notice of removal, a specific PFAS compound is "the same" regardless of its source.  *Id.*  Once commingling has occurred, there is no ready way "to segregate out" any particular PFAS based on source.  *Id.*  The upshot of those allegations is that there is no feasible means of determining what PFAS came from which source in the stretch of the Alabama River that the Town has put at issue.

3M's allegations of commingling and indistinguishability establish a plausible nexus between the acts complained of in this case and 3M's production of MilSpec

25

AFFF for the U.S. military. As the Fourth Circuit recognized, "a company like 3M satisfies the nexus element for removal if the factfinder will need to identify the sources of pollutants," at least some of which were "manufactur[ed] . . . for the federal government." *Maryland*, 130 F.4th at 391; *see Raoul*, 111 F.4th at 849; *Baker*, 962 F.3d at 945 & n.3.

Despite the Town's attempt to avoid a federal forum through "artful pleading," *Maryland*, 130 F.4th at 390, the Town has no accurate means of disentangling PFAS from MilSpec AFFF and non-AFFF sources, *see* Dkt. 1 ¶ 4. It is therefore implausible for a factfinder in this case to hold 3M liable for *only* non-AFFF-sourced PFAS contamination. Any relief "would necessarily implicate work that 3M did for the federal government"—work for which 3M has a federal defense. *Maryland*, 130 F.4th at 390. Thus, "3M's federal work is inextricably related to the charged conduct." *Id.* at 391.

That is especially true with respect to the Town's request for injunctive relief—"an Order . . . requiring Defendants to take all steps necessary to remove their chemicals from Pine Hill's water supplies and property." Dkt. 1-2 ¶ 102. Where PFAS from MilSpec AFFF is commingled with PFAS from other sources, it is both conceptually and practically impossible for 3M to abate only PFAS contamination resulting from non-AFFF sources. *Cf. Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 360 (2011) (noting "the indivisible nature of the injunctive . . . remedy").

Even with respect to the Town's request for damages, the Town would need to present expert testimony or other evidence—*e.g.*, evidence concerning the movement of PFAS through water—to assist the factfinder in "apportion[ing] how much of a given sample of PFAS contamination came from [MilSpec] AFFF compared to non-AFFF products." *Maryland*, 130 F.4th at 391. And so, at a minimum, 3M has a right to a federal forum in which to contest the reliability and accuracy of that modeling. *See id.* And 3M has the right for a federal factfinder to undertake any apportionment that might be possible. *See id.* Those questions determine "the validity of [3M's] federal defense," so they must be "tried in federal court." *Caver*, 845 F.3d at 1145; *see Willingham*, 395 U.S. at 409 (defendant must "have the opportunity to present [its] version of the facts to a federal, not a state, court").

Several courts have held in recent decisions that cases like these have a sufficient nexus for removal.

***The Fourth Circuit.*** In the Fourth Circuit, Maryland and South Carolina each filed "overlapping" suits seeking recovery for alleged PFAS contamination, and they disclaimed in their "non-AFFF" suits recovery for PFAS stemming from AFFF. 130 F.4th at 385-86. 3M removed the "non-AFFF" suits based on allegations that PFAS

27

from MilSpec AFFF and non-AFFF sources had indistinguishably commingled in the natural resources at issue. *Id.* The court held that it "must credit" 3M's "theory of the case as to whether the conduct with which it has been charged is related to its federal work." *Id.* at 389. Based on 3M's plausible allegations of commingling and indistinguishability, the court concluded that "3M's Military AFFF production is inextricably related to the States' general allegations of PFAS contamination." *Id.* at 392. The "challenging causation" and "apportion[ment]" questions that the "factfinder" "will have to disentangle" as a result "highlight how the charged conduct relates to [3M's] federal work." *Id.* at 391. The court vacated the district courts' contrary decisions because such "important" "merits questions" "belong in federal court." *Id.* at 392.

***The Seventh Circuit.*** The Seventh Circuit came to the same conclusion in *Raoul*. There, Illinois sued 3M, alleging PFAS contamination from a specific facility, and 3M removed, asserting that some of the alleged contamination might have come from MilSpec AFFF at a downstream army arsenal. 111 F.4th at 847-48. The court explained that 3M had a viable defense because "a factfinder would need to apportion the contamination" between the alleged sources. *Id.* at 848-49. That task presents "'difficult causation question[s] that a federal court should . . . resolve.'" *Id.* at 849 (quoting *Baker*, 962 F.3d at 945 n.3).

The Seventh Circuit ultimately remanded *Raoul* to state court, but for a very specific reason not applicable here. During oral argument before the Seventh Circuit, Illinois "clearly and unequivocally conceded . . . that it would not seek relief against 3M for mixed PFAS contamination." 111 F.4th at 849. In other words, Illinois "expressly agreed that a factfinder will not need to apportion the PFAS contamination between sources." *Id.* For Illinois to recover given that concession, the evidence must show that "100% of th[e] contamination" in a "designated area" came "from the [3M] [f]acility" and that not "even a morsel of contamination" came from elsewhere. *Id.*

The Town has made no such concession here—and could not. 3M has plausibly alleged that the single site for which the Town seeks recovery contains PFAS commingled from MilSpec AFFF and non-AFFF sources. Dkt. 1 ¶¶ 25-26. For the Town to make a concession like Illinois's would thus waive all relief.[2]

The Seventh Circuit's decision in *Baker* confirms that federal jurisdiction attaches here. In *Baker*, the plaintiffs sued DuPont for allegedly "contaminat[ing]

---

[2] While the issue is not presented here, 3M does not concede that a *Raoul*-style concession forecloses federal jurisdiction. Even if a plaintiff forswears relief at locations with PFAS commingled from various sources, the factfinder must still decide whether any given location has "even a morsel" of PFAS from MilSpec AFFF. *Raoul*, 111 F.4th at 849. That decision, like any other causation or apportionment decision, implicates "the validity of the [government-contractor] defense" and should be "tried in federal court." *Caver*, 845 F.3d at 1145.

the[ir] property" with lead and arsenic. 962 F.3d at 939. DuPont removed, alleging that its freon production for the federal government "resulted in waste streams that contained lead and arsenic." *Id.* at 945 n.3. DuPont's allegations thus presented "a difficult causation question that a federal court should be the one to resolve." *Id.*

***The First Circuit.*** A recent First Circuit decision adds further confirmation. In *Express Scripts*, Puerto Rico sued Caremark for allegedly conducting its insurance-related rebate negotiations in a price-inflationary manner. 119 F.4th at 179. Puerto Rico purportedly sought relief only for price inflation as to private clients, expressly disclaiming "relief relating to any federal program" or "contract," including Medicare and Medicaid. *Id.* at 179, 181-82. Caremark removed on federal-officer grounds, alleging that it had conducted just one set of "joint negotiations" setting the rates both for "private parties and for the federal government." *Id.* at 180, 183.

The First Circuit held that Caremark's allegation of one single, "indivisib[le]" course of negotiations—"an important facet of Caremark's 'theory of the case' that must be 'credited' in evaluating removal," 119 F.4th at 189 (quoting *Acker*, 527 U.S. at 432) (alteration omitted)—made the case removable. Puerto Rico "target[ed] Caremark's rebate negotiations," and the indivisibility of those negotiations meant that, if "Caremark [were held] liable" for the alleged misconduct, "then it could be liable for its conduct under [the government's] direction." *Id.* at 191; *see New*

30

*Hampshire v. 3M Co.*, 132 F.4th 556, 563 (1st Cir. 2025) ("the alleged presence of *any* commingling requires a court to determine whether and to what extent MilSpec AFFF produced by 3M caused a portion of the contamination at issue," so even "*some* commingling" makes a case "removable under 3M's theory").[3]

\* \* \*

Based on the plausible allegations in 3M's notice of removal, and consistent with the conclusions reached by multiple courts of appeals in recent decisions, there is a strong "'connection or association'" between the acts for which 3M is being sued—alleged PFAS contamination of the Town's water supply—and 3M's manufacture of MilSpec AFFF for the federal government. *Caver*, 845 F.3d at 1144; *see Maryland*, 130 F.4th at 391 (the two are "inextricably related"). This suit is thus "for or relating to" 3M's acts under color of federal office. 28 U.S.C. § 1442(a)(1).

## B.     The District Court Erred Twice Over In Concluding That Remand Was Proper.

The district court granted the Town's remand motion because it artificially narrowed the scope of the charged conduct and then concluded that the charged conduct was not performed for the federal government. That analysis is doubly flawed. The district court was wrong about the charged conduct; it ignored the state-

---

[3] In *New Hampshire*, the First Circuit concluded that 3M failed to timely remove the case to federal court. 132 F.4th at 563. Timeliness is no issue here; 3M removed this case within 30 days of the Town's filing its complaint. *See* 28 U.S.C. § 1446(b)(1).

law claims at issue and over-relied on a readily distinguishable case.  And even if the district court's characterization of the charged conduct were correct, it still erred by failing to conduct a connection-or-association analysis.

### 1.    The District Court Misidentified The Gravamen Of The Complaint.

The district court held that "the 'heart' or 'gravamen' of [the Town's] claims against 3M is its manufacture of PFAS-containing products for, and suppl[y]ing of them to, International Paper specifically for use in its Alabama mills."  Dkt. 81 at 8-9.  The court acknowledged that "some of the complaint's allegations sweep broadly," but nonetheless concluded that the "'core of the factual allegations'" was limited to non-AFFF PFAS used by paper mills.  *Id.* at 8.  The court reasoned that *Meadows* requires that conclusion by directing courts to focus on the heart or gravamen of the complaint, but in doing so, the court misread *Meadows* and "elevat[ed] form over substance."  *Arlington Cnty.*, 996 F.3d at 256.

Both the allegations and the underlying legal claim in *Meadows* differ sharply from those in this case.  There, a former White House chief of staff was indicted under Georgia law for conspiracy to interfere in the presidential election.  88 F.4th at 1335.  Meadows removed to federal court, but this Court affirmed the district court's decision to remand.  *Id.*  Because Georgia conspiracy is an "inchoate crime," the Court explained, the prosecution did not "need [to] prove that Meadows committed any . . . overt acts"—*e.g.*, "attending any individual meeting or sending

any specific message"—just that he agreed to join and further the alleged conspiracy. *Id.* at 1344-45. Thus, no single overt act formed the heart of the indictment. *Id.* at 1345. Rather, the heart of the indictment was Meadows's "alleged agreement to join [the conspiracy] and his alleged conduct undertaken to further the conspiracy." *Id.* The Court then concluded—under the heightened bar for removing criminal cases— that no act Meadows performed in his official duties as chief of staff related to his alleged participation in the conspiracy because his official "role [did] not include altering valid election results in favor of a particular candidate." *Id.* at 1348-50. Rather, Meadows undertook all the alleged conspiracy-related acts in his non-official capacity. *Id.*

A faithful application of *Meadows* supports removal here. *Meadows* directs that the heart of the complaint "must be defined by the 'claim' brought against the defendant," 88 F.4th at 1344, yet the district court's analysis never discussed the state-law claims the Town brings, let alone Alabama case law addressing those claims. As explained above, Alabama precedents make clear that alleged PFAS contamination, not the sale of PFAS to paper mills, is at the heart of the claims. *See supra* at 21-24. The complaint's allegations show the same thing: They center on the alleged PFAS contamination of the Town's water supply, not on sales to paper mills. Dkt. 1-2 ¶¶ 74-93, p. 18. Meadows's alleged discrete acts of "attending any individual meeting or sending any specific message" were not the heart of the

33

complaint—they became "illegal" only because they were part of a broader conspiracy. *Meadows*, 88 F.4th at 1345. Similarly, 3M's alleged discrete acts of supplying PFAS "specifically for use in [International Paper's] Alabama mills" are not the heart of the complaint here—they became actionable (if at all) only because PFAS eventually contaminated the Town's water supply. Dkt. 81 at 8-9. The gravamen of the complaint is that alleged contamination. *See Maryland*, 130 F.4th at 390-91; *Baker*, 962 F.3d at 944-45.[4]

## 2.    In Any Event, The District Court's Nexus Conclusion Was Incorrect.

Even if the district court's artificially narrow characterization of the charged conduct were correct, reversal would still be appropriate. The court held that the charged conduct is 3M's "manufacture of PFAS-containing products for, and suppl[y]ing of them to, International Paper specifically for use in its Alabama mills." Dkt. 81 at 8-9. Because 3M did not produce non-AFFF PFAS pursuant to military specifications, the court concluded that "3M has not shown that it performed 'the

---

[4] Though the district court disavowed reliance on the Town's disclaimer of recovery for PFAS contamination stemming from AFFF sources, it ultimately said that the disclaimer at least supports the conclusion that the heart of the claims is manufacturing and supplying non-AFFF products. Dkt. 81 at 6, 9. But, again, *Meadows* dictates that the charged-conduct analysis turns on the substance of the Town's claims and allegations. And, as in *Maryland*, the claims and allegations here are about "PFAS contamination." 130 F.4th at 390-91.

actions for which it is being sued under color of federal office'" and therefore could not remove.  *Id.* at 10.

But the district court misunderstood what this element requires.  A removing defendant satisfies the nexus prong if the charged conduct is "for *or relating to*" the defendant's federal conduct.  28 U.S.C. § 1442(a)(1) (emphasis added).  Indeed, Congress expressly "broaden[ed] the scope of acts that allow a federal officer to remove a case to federal court" in its 2011 amendments.  *Caver*, 845 F.3d at 1144 & n.8.  That means a defendant need only allege "'a connection or association between the act in question and the federal office.'"  *Id.* at 1144.  In other words, a defendant can show that it "performed the actions for which it is being sued under color of federal office" by alleging that there is a "'connection between what [the defendant] has done under asserted official authority and the action against him.'"  *Id.* at 1142.

Yet the district court never analyzed whether such a connection exists, incorrectly requiring a much stricter tie between the Town's claims (as it conceived of them) and 3M's federal conduct.  Contrary to binding precedent, that led the court to ignore completely 3M's "plausible allegation[s]" regarding removal, *Dart Cherokee*, 574 U.S. at 89, and 3M's "theory of the case" in assessing whether a nexus exists, *Acker*, 527 U.S. at 432.  *See Caver*, 845 F.3d at 1145; *Maryland*, 130 F.4th at 389-91.  And this case, of course, is *not* "a criminal case," so (unlike in *Meadows*) a "more detailed showing" is not required.  88 F.4th at 1348.

Gauged by the proper standards, this case is removable—even if the charged conduct were 3M's supply of non-AFFF PFAS to paper mills. 3M has plausibly alleged that PFAS from MilSpec AFFF used at Maxwell Air Force Base contributed, at least in part, to the alleged contamination of the Town's water supply, which the Town attributes to PFAS use at the mills. 3M thus plausibly alleges that PFAS from the two sources combined to cause the alleged injury. That raises the question how much of the alleged PFAS contamination in the Town's water supply results from non-AFFF versus MilSpec AFFF sources. As explained, that means there is a "'connection between what [3M] has done under asserted official authority and the action against [it].'" *Caver*, 845 F.3d at 1142; *see supra* at 24-31. The district court's contrary conclusion was thus incorrect even under its flawed characterization of the charged conduct.

The *Meadows* decision is thus distinguishable on another level: The State there did not need to prove any specific act to prevail, just that Meadows joined the election-related conspiracy, and the Court concluded that no part of the official chief of staff duties had anything to do with election results. 88 F.4th at 1344-45, 1349. *Meadows* did not involve a disclaimer or implicate the wall of precedent—discussed above—rejecting efforts to evade federal jurisdiction by bifurcating conduct undertaken at least in part pursuant to a contract with the federal government that,

36

according to the plausible allegations in the notice of removal in this case, is indivisible. *See supra* at 27-31.

In addition, for the same reasons that a plaintiff cannot defeat a defendant's right to a federal forum via a disclaimer that contradicts the plausible allegations in the notice of removal, a court cannot achieve the same result by artificially narrowing the charged conduct. There is little practical difference between a disclaimer of liability for all non-AFFF contamination and construing the charged conduct to reach only non-AFFF contamination. If credited as severing the connection or association to federal conduct, both courses effectively nullify the deference owed to the plausible allegations in the notice or removal; indeed, neither course is compatible with the cases holding that a defendant is entitled to a federal forum if it plausibly alleges that federally protected conduct and non-federally protected conduct are not readily divisible. Those allegations must be tested in some court, and the federal-officer removal statute makes the correct court a federal one.

### C. The Town's Disclaimer Cannot Sever This Suit's Connection To MilSpec AFFF.

Below, the Town's remand argument rested almost entirely on its purported disclaimer of recovery for AFFF PFAS, which—according to the Town—severs the nexus between this case and 3M's production of MilSpec AFFF. *See* Dkt. 18 at 7-12. That shows *the Town* understood the charged conduct to be the alleged contamination of its water supply, which would implicate 3M's federal activities

absent a disclaimer.  In any event, the Town's disclaimer argument is wrong for multiple reasons.

### 1.    The Town's Artful Disclaimer Rests On A False Premise, As Courts Have Held In Closely Analogous Circumstances.

The Town's disclaimer is inconsistent with 3M's plausible allegations that the factfinder will be unable to distinguish between PFAS compounds from MilSpec AFFF and non-AFFF sources—they are identical in the environment, regardless of their source.  *See* Dkt. 1 ¶ 4.  The disclaimer cannot absolve the factfinder of having to make a judgment, based on expert testimony or other evidence, about what percentage of PFAS contamination at a site traces back to the military.  Because the notice of removal plausibly alleges that the Town has no ready way to separate PFAS based on source—and thus that any finding of liability would necessarily be premised, in part, on MilSpec AFFF—this case has a plausible causal nexus to 3M's work for the federal government and is therefore removable.  In other words, despite the "artful crafting" of its disclaimer, *Maryland*, 130 F.4th at 393, the Town is suing 3M "for or relating to" its production of MilSpec AFFF for the federal government, 28 U.S.C. § 1442(a)(1).

At a minimum, 3M has a right to challenge the reliability and accuracy of the Town's efforts at trial to distinguish PFAS attributable to MilSpec AFFF from PFAS attributable to other sources and to argue that—without an accurate means of differentiation—the Town cannot recover because of 3M's federal government-

contractor defense.  Attempts to decide the causal source and apportion the alleged contamination on that basis determine "the validity of the federal defense," *Caver*, 845 F.3d at 1145, and 3M should "have the opportunity to present [its] version of the facts to a federal, not a state, court," *Willingham*, 395 U.S. at 409, despite the Town's disclaimer, *see Raoul*, 111 F.4th at 849; *Baker*, 962 F.3d at 945 & n.3.

Questions about the scope of the disclaimer and the scope of the federal defense are just two sides of the same coin, and those questions belong in federal court.  After all, if the causation and apportionment determinations incorrectly attribute PFAS contamination to a non-MilSpec AFFF source, that determination would nullify 3M's federal government-contractor defense and impose state-law liability on 3M for conduct immunized by federal law.  Congress enacted the federal-officer removal statute to ensure that federal courts are the ones that make those weighty determinations.

The recent court of appeals decisions addressed above, *see supra* at 27-31, explain why disclaimers like the Town's are not effective.  In *Maryland*, the Fourth Circuit emphatically rejected the States' "attempts to immunize their complaints from federal officer removal with their purported disclaimers."  130 F.4th at 389. Given 3M's plausible allegations of commingling and indistinguishability, the "challenging causation" and "apportion[ment]" questions that the "factfinder" "will have to disentangle"—whether expressed in terms of the scope of the disclaimer or

the scope of the federal defense—"highlight how the charged conduct relates to [3M's] federal work." *Id.* at 391. The court vacated the district courts' contrary decisions because such "important" "merits questions" "belong in federal court." *Id.* at 392.

The Seventh Circuit came to the same conclusion in *Raoul*. Illinois disclaimed relief for AFFF contamination, 111 F.4th at 847-48, but the court explained that 3M's federal government-contractor defense based on commingling and indistinguishability of PFAS from MilSpec AFFF and non-AFFF sources remains "viab[le]" even when a plaintiff "disclaim[s]" recovery for certain contamination because "a factfinder would need to apportion the contamination" between the alleged sources, *id.* at 848-49. That task presents "'difficult causation question[s] that a federal court should . . . resolve.'" *Id.* at 849 (quoting *Baker*, 962 F.3d at 945 n.3).

In *Baker*, too, the plaintiffs "purport[ed] to disclaim" damages resulting from DuPont's freon production for the federal government, 962 F.3d at 945 n.3, focusing on lead and arsenic pollution only from DuPont's commercial activities, *id.* at 945. The court nonetheless concluded that the self-styled disclaimer was ineffective. Because the plaintiffs sought recovery for lead and arsenic—and because DuPont alleged that its government-contractor freon production had released those chemicals—the suit related to DuPont's federal contracting. *See id.* at 943-45. The

factual dispute about the source of the toxins did not counsel against removal; instead, it was "just another example of a difficult causation question that a federal court should be the one to resolve." *Id.* at 945 n.3.

The First Circuit reached the same basic conclusion in *Express Scripts*. Puerto Rico disclaimed "relief relating to any federal program" or "contract," including Medicare and Medicaid. 119 F.4th at 179, 181-82. But Caremark's allegation of one single, "indivisib[le]" course of negotiations—"an important facet of Caremark's 'theory of the case' that must be 'credited' in evaluating removal," *id.* at 189 (quoting *Acker*, 527 U.S. at 432) (alteration omitted)—made the case removable "no matter what the disclaimer says," *id.* at 191. "[C]rediting the disclaimer" would create the distinct possibility that the Commonwealth "could recover in the [Puerto Rico] Court of First Instance for Caremark's acts under a federal officer's authority," thereby "depriv[ing] Caremark of the federal forum to which it is entitled." *Id.* at 191-92.

Several district courts have likewise refused to treat disclaimers as dispositive in this context. In one case, the court held that removal was proper despite Michigan's disclaimer because it was "entirely possible" that the alleged injuries were caused at least in part by MilSpec AFFF and whichever court "ultimately hears this case will likely have to engage in a detailed fact-finding process to determine whether the injuries from MilSpec and Commercial AFFF can be distinguished."

41

*Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021). In another, the court held that DuPont was "entitled to put forward an alternate theory of causation" based on federal activity, which the plaintiff could not "avoid" "by disclaiming harm resulting from" products made for "World War II efforts" but not from "the chemicals that are subject to [that] government contract." *Curiale v. A. Clemente, Inc.*, 2023 WL 4362722, at *6 (D.N.J. July 5, 2023).

The reasoning in those decisions applies with full force here. 3M has plausibly alleged that because differently sourced PFAS have become commingled and are indistinguishable in the Town's water supply, the Town has no ready way to segregate the alleged PFAS contamination based on its source. Those allegations must be credited as true for purposes of removal. *See Caver*, 845 F.3d at 1145. The Town's attempt to hold 3M liable for the targeted conduct would therefore "necessarily implicate work that 3M did for the federal government." *Maryland*, 130 F.4th at 390. At the very least, the Town's disclaimer would still "require[] a state court to determine the nexus 'between the charged conduct and federal authority'"—decisions regarding causation and apportionment. *Id.* at 389 (quoting *Express Scripts*, 119 F.4th at 188).

Crediting the disclaimer and remanding this case would thus impermissibly substitute state-court litigation over the scope of the disclaimer for federal-court litigation over the scope of the federal defense and create an intolerable risk of a

42

state jury's imposing liability on 3M for conduct immunized by federal law. The Town's "artful" disclaimer—offered up while the Town continues pursuing the exact damages and equitable remedies it purportedly disavows, given 3M's theory of removal—does not bar federal-officer removal of this case. *Maryland*, 130 F.4th at 389-91; *see Express Scripts*, 119 F.4th at 187-93; *cf. Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) (plaintiffs may not "use artful pleading to close off [a] defendant's right to a federal forum"). This Court should reject the Town's bald-faced attempt to evade federal jurisdiction.

### 2. The Town's Contrary Arguments Are Flawed.

The Town nevertheless argued below that its disclaimer is dispositive. The Town relied heavily on five district-court decisions that have credited disclaimers like the one at issue here. Dkt. 18 at 7-12 ("the five cases discussed above are instructive and applicable here"). But none of those decisions deferred to 3M's plausible allegations of commingling and indistinguishability or credited 3M's theory of the case, as required by well-established precedent. *See Acker*, 527 U.S. at 432; *Caver*, 845 F.3d at 1145. Nor did the decisions grapple meaningfully with whether removal is appropriate where, as a result of commingling of chemically identical PFAS from MilSpec AFFF and other PFAS sources, any verdict for the plaintiff would necessarily rest in part on MilSpec AFFF. *See Willingham*, 395 U.S. at 407 (federal-officer defenses should be "litigated in the federal courts").

Unsurprisingly, all five of the decisions on which the Town relied—which pre-date *Maryland*, *Raoul*, and *Express Scripts*—have either been abrogated or directly vacated. *Maryland* vacated the district-court decisions from the Fourth Circuit (*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 2024 WL 1470056 (D.S.C. Feb. 29, 2024), and *Maryland v. 3M Co.*, 2024 WL 1152568 (D. Md. Feb. 12, 2024)). *Raoul* abrogated the district-court decision from the Seventh Circuit (*Illinois ex rel. Raoul v. 3M Co.*, 693 F. Supp. 3d 948 (C.D. Ill. 2023)). And the reasoning in *Express Scripts* undermines the district-court decisions from the First Circuit (*New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215 (D.N.H. 2023), and *Maine v. 3M Co.*, 2023 WL 4758816 (D. Me. July 26, 2023)).

This Court should follow the cogent reasoning of the First, Fourth, and Seventh Circuits, rather than the now-discredited decisions of several district courts. Given 3M's plausible allegations of commingling and indistinguishability, "3M's federal work is inextricably related to the charged conduct." *Maryland*, 130 F.4th at 391.

## III.   3M Has Asserted A Colorable Federal Defense.

Finally, a private defendant seeking removal under § 1442(a)(1) must allege "a colorable federal defense." *Caver*, 845 F.3d at 1145. Like the nexus requirement, this is not a high bar. A defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407. The defense's "'ultimate validity is not to

be determined at the time of removal.'" *Caver*, 845 F.3d at 1145. Instead, the defendant need only plausibly allege a defense based in federal law, *see Dart Cherokee*, 574 U.S. at 89; *Caver*, 845 F.3d at 1145, that is not "immaterial" or "wholly insubstantial and frivolous," *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 37 (1st Cir. 2022).

3M has invoked the federal government-contractor defense, which provides that government contractors are not subject to state tort liability when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

3M's notice of removal plausibly alleges all three elements of that defense. *First*, the federal government developed and used "reasonably precise specifications" for the formulation, performance, and testing of MilSpec AFFF, and those specifications required the use of PFAS. Dkt. 1 ¶¶ 22-23, 40. *Second*, the Naval Sea Systems Command determined that 3M's AFFF products conformed to those specifications, as shown by the inclusion of those products on the Department of Defense's "Qualified Products List." *Id.* ¶¶ 22-24, 41. *Third*, 3M was not aware of any material risk regarding MilSpec AFFF about which the federal government did not know. *Id.* ¶¶ 42-43. The federal government has long understood—and

publicly acknowledged—that AFFF contains PFAS, that AFFF constituents may migrate to groundwater, and that some studies suggest potential adverse effects from PFAS. *See*, *e.g.*, Edward S.K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980) (report supported by Department of Defense stating that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally"); EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 6 (Nov. 4, 2002) (study assessing "health and environmental issues presented by fluorochemicals"). Drawing all reasonable inferences in 3M's favor, as is required at this stage, 3M has asserted a colorable federal government-contractor defense.

This should come as no surprise. Numerous States and other parties have raised no objection on this basis to removal (and transfer to the MDL) of cases filed in state court that allege contamination from MilSpec AFFF. And the MDL court has explained that the government-contractor defense is available for claims against 3M relating to MilSpec AFFF. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, *15 (D.S.C. Sept. 16, 2022). Because 3M has plausibly alleged that this case is "for or relating to" MilSpec AFFF too, the same conclusion follows here. 28 U.S.C. § 1442(a)(1).

46

Before the district court, the Town did not argue that 3M failed to allege any piece of the government-contractor defense. Instead, the Town relied solely on its disclaimer, arguing that it renders the defense moot for the same reasons that the disclaimer purportedly severs the nexus between this case and 3M's production of MilSpec AFFF. Dkt. 18 at 20. As explained, however, the disclaimer is not effective in eliminating federal issues. *See supra* Part II.C. 3M has therefore asserted a colorable federal defense.

Under § 1442(a)(1), 3M has the right to have its federal defense "litigated in the federal courts." *Willingham*, 395 U.S. at 407; *see Caver*, 845 F.3d at 1145. The concern animating federal-officer removal—"to protect federal officers from interference by hostile state courts," *Willingham*, 395 U.S. at 405—applies with particular force in the context of military procurement. Decisions involving military contracts "involve[] military and managerial choices inherently unsuitable for the judiciary to consider." *Am. Fed. of Gov't Empls., Local 2017 v. Brown*, 680 F.2d 722, 726-27 (11th Cir. 1982). Indeed, it is "'difficult to conceive of an area . . . in which the courts have less competence'" than in "'the composition, training, equipping, and control of a military force.'" *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1294 (11th Cir. 2009) (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)). But if a court must intervene, it should be a *federal* court—not a state court—that does so.

47

## IV.    3M's Plausible Allegations Are Sufficient For Removal.

As explained, 3M's notice of removal contains "plausible allegation[s]" that establish each element of the federal-officer removal test. *Dart Cherokee*, 574 U.S. at 89. Because those "allegations, if true, would establish that" federal jurisdiction exists, *Caver*, 845 F.3d at 1145, the district court erred in granting the Town's remand motion, *see Willingham*, 395 U.S. at 407 (defendant "need not win his case before he can have it removed").

The Town argued briefly below that 3M could not remove because it failed to produce *evidence* that would support federal jurisdiction—namely, evidence to show that PFAS from MilSpec AFFF that *3M* manufactured ended up in the Alabama River. Dkt. 18 at 12-13; Reply in Support of Mot. to Remand at 5-6, *Town of Pine Hill v. 3M Co.*, 2:24-cv-00284 (S.D. Ala. Sept. 17, 2024), Dkt. 58. But the Supreme Court has been clear that a notice of removal—which must "'contain[] a short and plain statement of the grounds for removal'"—"need not contain evidentiary submissions." *Dart Cherokee*, 574 U.S. at 83-84 (quoting 28 U.S.C. § 1446(a)). Rather, the pleading requirement for a notice of removal "tracks the general pleading requirement stated in" Rule 8 "[b]y design," which means a "notice of removal need include only a plausible allegation" of the basis for removal. *Id.* at 87, 89. Courts must therefore credit plausible allegations of jurisdictional facts unless a statutory provision requires more. *See id.* at 88 (noting that 28 U.S.C. § 1446(c)(2)(B)

requires that the "'court finds, by the preponderance of the evidence,'" that the requisite amount in controversy is met for diversity removal); *Meadows*, 88 F.4th at 1336 (28 U.S.C. § 1455(b)(5) requires evidentiary hearing for removal of criminal cases).

Accordingly, as this Court and many others have recognized, federal-officer removal is determined solely by a notice of removal's plausible factual allegations. *Caver*, 845 F.3d at 1145 (holding that "there is a causal nexus" because the notice of removal's "allegations, if true, would establish" that nexus); *see*, *e.g.*, *Express Scripts*, 119 F.4th at 189, 194 (jurisdiction is proper based on "the notice of removal's well-pleaded allegations"); *Agyin*, 986 F.3d at 181 ("when 'determining whether jurisdiction is proper, we look only to the jurisdictional facts alleged in the Notice[] of Removal'"); *Baker*, 962 F.3d at 941 (asking whether removal allegations "are facially plausible").

Some courts have distinguished between "facial" and "factual" attacks on removal allegations, holding that a court might require "competent proof" in the latter scenario. *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014). But a factual attack is not permitted in this context for at least two reasons. First, the removal statutes require evidentiary support only for the amount in controversy in civil cases, 28 U.S.C. § 1446(c)(2)(B), and for removal of criminal cases, *id.* § 1455(b)(5). *See Leatherman v. Tarrant Cnty. Narcotics Intelligence &*

49

*Coordination Unit*, 507 U.S. 163, 168 (1993) ("*Expressio unius est exclusio alterius*."). Second, the liberal construction in favor of removal of federal-officer cases means that "[p]recisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [its] version of the facts to a federal, not a state, court.'" *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014).

In any event, the Town's challenge here was merely facial—an argument that "the allegations in the complaint" are not sufficient, rather than an argument that contests those allegations based on evidence outside the pleadings. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003); *see Leite*, 749 F.3d at 1121-22. This Court should therefore accept 3M's allegations as true and assess removal on that basis.[5]

---

[5] Even if the Town could bring—and had brought—a factual challenge to 3M's removal allegations, a federal court assessing removal would still be constrained in at least two significant ways. *First*, a defendant would need competent proof only that the federal defense is "plausible; its ultimate validity is not to be determined at the time of removal." *Caver*, 845 F.3d at 1145 ("The law does not require that the removing defendant virtually win his case before it can be removed."). *Second*, and relatedly, a court cannot resolve at the removal stage factual questions that "implicate the merits" of the claim (or, in this context, of the federal defense), *Morrison*, 323 F.3d at 925—as the causation and apportionment questions presented here undoubtedly do, *Maryland*, 130 F.4th at 392 ("those are merits questions that belong in federal court"); *Baker*, 962 F.3d at 944 (same).

Correctly evaluated, the allegations in 3M's notice of removal clearly suffice. Citing both a government report and a scientific study, 3M has alleged that the use of AFFF at Maxwell Air Force Base "result[ed] in PFOS and PFOA contamination of the Alabama River" upstream of the Town's water supply. Dkt. 1 ¶ 26. Despite the Town's assertion that 3M never alleged that any of *its* MilSpec AFFF was used at the Base, Dkt. 18 at 12-13, 3M has alleged that "PFAS from MilSpec AFFF manufactured by 3M" has contributed to the "alleged PFOS and PFOA contamination of the Alabama River," Dkt. 1 ¶ 29; *see id.* ¶ 36 (the Town's "claims in this case for purported contamination from non-AFFF PFAS sources just as plausibly arise at least in part from 3M's manufacture of products for which the applicable MilSpec required the use of PFAS to meet the Government's needs"); *id.* ¶ 44 (similar). At the very least, the clear *inference* from the allegations in the notice of removal is that at least some of the MilSpec AFFF PFAS released from the Base into the Alabama River upstream of the Town's water supply was supplied by 3M to the federal government. *See Baker*, 962 F.3d at 945 (removing defendants get "the benefit of all reasonable inferences from the facts alleged").

3M's plausible allegations, if true, would establish that PFAS from 3M's MilSpec AFFF "contributed to at least a 'portion of'" the Town's alleged contamination, triggering 3M's right to a federal forum. *Maryland*, 130 F.4th at 391 (quoting *Baker*, 962 F.3d at 945).

\* \* \*

Particularly given the Supreme Court's direction to construe the federal-officer removal statute liberally, 3M's notice of removal plausibly alleges that this case is "for or relating to" its production of MilSpec AFFF and thereby implicates 3M's federal government-contractor defense. 28 U.S.C. § 1442(a)(1). The district court's contrary conclusion misapplied the relevant statute and binding precedent. The Town, for its part, staked its case for remand on its purported disclaimer, but that disclaimer is ineffectual given the plausible allegations in 3M's notice of removal. The district court has jurisdiction under the federal-officer removal statute. This Court should hold as much and reverse.

## CONCLUSION

For these reasons, 3M respectfully requests that the Court reverse the district court's order granting the Town's motion to remand.

Dated:  May 16, 2025                              Respectfully submitted,


                                                         _/s/ Lauren R. Goldman_____

Paul D. Clement                                Lauren R. Goldman
Nicholas A. Aquart                             GIBSON, DUNN & CRUTCHER LLP
Clement & Murphy, PLLC                         200 Park Avenue
706 Duke Street                                New York, NY 10166
Alexandria, VA 22314                           (212) 351-2375
(202) 742-8900                                 lgoldman@gibsondunn.com
paul.clement@clementmurphy.com

                                               Amir C. Tayrani
                                               Zachary Tyree
                                               GIBSON, DUNN & CRUTCHER LLP
                                               1700 M Street, N.W.
                                               Washington, DC 20036
                                               (202) 955-8500
                                               atayrani@gibsondunn.com
                                               ztyree@gibsondunn.com

            *Counsel for 3M Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Times New Roman, 14-point font). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 12,507 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

May 16, 2025                    Respectfully submitted,


  */s/ Lauren R. Goldman*
Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2025, I caused a true and correct copy of this brief to be filed electronically through the Court's CM/ECF system, which will send a notice of filing to all registered users.

> */s/ Lauren R. Goldman*
> Lauren R. Goldman
> GIBSON, DUNN & CRUTCHER LLP
> 200 Park Avenue
> New York, NY 10166
> (212) 351-2375
> lgoldman@gibsondunn.com