**No. 25-10746**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

THE TOWN OF PINE HILL, ALABAMA

*Plaintiff-Appellee,*

v.

3M COMPANY,

*Defendant-Appellant,*

DAIKIN AMERICA, INC., et al.,

*Defendants*.

On Appeal from the United States District Court for the Southern
District of Alabama, No. 2:24-cv-00284-KD-N

---

**ANSWER BRIEF FOR
PLAINTIFF-APPELLEE THE TOWN
OF PINE HILL, ALABAMA**

---

Matthew R. Griffith
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
301 St. Louis Street
Mobile, AL 36602
(251) 308-1515
matt.griffith@beasleyallen.com

Elliot S. Bienenfeld
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
2839 Paces Ferry Road #400
Atlanta, GA 30339
(404) 751-1162
elliot.bienenfeld@beasleyallen.com

*Attorneys for Plaintiff-Appellee
The Town of Pine Hill, Alabama*

**No. 25-10746**
**The Town of Pine Hill, Alabama v. 3M Company, et al.**

**CERTIFICATE OF INTERESTED PERSONS AND**
**CORPORATE DISCLOSURE STATEMENT**

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Plaintiff-Appellee the Town of Pine Hill, Alabama ("the Town") certifies that the following is a list of persons and entities that have an interest in the outcome of this case:

1.     3M Company, *Appellant*;

2.     Aquart, Nicholas A., *counsel for Appellant*;

3.     Balch & Bingham, *counsel for Daikin America, Inc.*;

4.     BASF Corporation, *co-defendant*;

5.     Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., *counsel for Appellee*;

6.     Beasley, Jere L, *counsel for Appellee*;

7.     Bienenfeld, Elliot, *counsel for Appellee*;

8.     Bradley, Arant, Boult Cummings, *counsel for BASF Corporation*;

9.     Clement & Murphy PLLC, *counsel for Appellant*;

10.    Clement, Paul D., *counsel for Appellant*;

11.    Corteva, Inc., *co-defendant*;

12.    Cozen O'Connor, *counsel for Solenis LLC*;

i

13.   Daikin America, Inc., *co-defendant*;

14.   Davis, Richard Eldon, *counsel for Solenis LLC*;

15.   Diab, David, *counsel for Appellee*;

16.   Dixon, Shannon, *co-defendant*;

17.   DLA Piper LLP US, *counsel for BASF Corporation*;

18.   Dubose, Kristi K, *District Judge*;

19.   Dupont De Nemours, Inc., *co-defendant*;

20.   EIDP, Inc., *co-defendant*;

21.   Estes, Allen McLean, *counsel for Daikin America, Inc.*;

22.   Flachsbart, Elizabeth, *counsel for Daikin America, Inc.*;

23.   Flax, Jillian, *counsel for Solenis LLC*;

24.   Frazer, Greene, Upchurch & Baker, LLC, *counsel for Daikin America, Inc.*;

25.   Gibson, Dunn & Crutcher, LLP, *counsel for Appellant*;

26.   Gilchrist, Wesley B., *counsel for Appellant*;

27.   Goldman, Lauren R., *counsel for Appellant*;

28.   Griffith, Matthew Ross, *counsel for Appellee*;

29.   Harrison, Mary Elizabeth, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

ii

30.    Heller, James Harris, *counsel for Solenis LLC*;

31.    International Paper Company, *co-defendant*;

32.    Johnson, Andrew Burns, *counsel for BASF Corporation*;

33.    Johnson, John M., *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

34.    Jones Day, *counsel for Daikin America, Inc.*;

35.    Jones, Rhon E., *counsel for Appellee*;

36.    King, Gavin Floyd, *counsel for Appellee*;

37.    King, M. Christian, *counsel for Appellant*;

38.    Lankford, Ambria LaFaye*, counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

39.    Lightfoot, Franklin & White, LLC, *counsel for Appellant*;

40.    Lightfoot Franklin & White, LLC, *counsel for EIDP, Inc., the Chemours Company, Dupont De Nemours, Inc., Corteva, Inc.*;

41.    Montalto, Vincent John, *counsel for BASF Corporation*;

42.    Nelson, Katherine P., *Magistrate District Judge*;

43.    Pearson, Carla, *co-defendant*;

44.    Perry, Ken Law Firm*, counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

45. Perry, Kenneth Martin, *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

46. Pompey & Pompey, PC, *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

47. Pompey, William M., *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

48. Prater, Harlan I. IV, *counsel for Appellant*;

49. Price, Jeffrey Donald, *counsel for Appellee*;

50. Radney, William Larkin, IV, *counsel for Appellant*;

51. Riney, Shelby, *counsel for Solenis, LLC*;

52. Saywell, James Robert, *counsel for Daikin America, Inc.*;

53. Solenis, LLC; *co-defendant*;

54. Speegle, Clinton Timothy, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

55. Starnes & Atchison, LLP, *counsel for Solenis, LLC*;

56. Tayrani, Amir C., *counsel for Appellant*;

57. The Chemours Company, *co-defendant*;

58. The Town of Pine Hill, Alabama, *Appellee*;

59. Thompson, Amber Nicole, *counsel for Appellant*;

iv

60. Traeger, William H., III, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

61. Tyree, Zachary, *counsel for Appellant*;

62. Upchurch, Michael E., *counsel for Daikin America, Inc.*;

63. Webb, Steve, *co-defendant*;

64. Weyerman, Elizabeth, *counsel for Appellee*;

65. Williams, Kayla R., *counsel for Appellant*;

66. Yeilding, Christopher Lynch, *counsel for Daikin America, Inc.*

Plaintiff-Appellee further states that it is a municipality that is not publicly held; is not publicly traded; has no subsidiary companies; and has no parent company.

## STATEMENT REGARDING ORAL ARGUMENT

The Town respectfully requests oral argument. This appeal presents important issues regarding the extent to which a defendant can remove a case based on the federal officer removal statute. The opportunity for oral argument would allow counsel to answer any questions the Court may have.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ............................................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................ vi

TABLE OF CONTENTS ...................................................................... vii

TABLE OF AUTHORITIES ................................................................. x

INTRODUCTION .............................................................................. 1

STATEMENT OF THE ISSUE............................................................ 3

STATEMENT OF THE CASE ............................................................ 3

    1.    PFAS and AFFF ................................................................. 3

    2.    The Town's Lawsuit ........................................................... 4

    3.    3M's Notice of Removal...................................................... 5

    4.    The JPML Determined That This Case Does Not Involve MilSpec
       AFFF – Twice ................................................................... 6

    5.    The District Court's Remand Order ...................................... 7

SUMMARY OF THE ARGUMENT ..................................................... 8

ARGUMENT ................................................................................... 12

    I.    Legal Standard................................................................... 12

    II.    3M Is Not Currently "Acting Under" Federal Authority...................... 14

    III.    3M Cannot Establish a Causal Connection Between the Town's
        Charged Conduct and 3M's Past Production of Military-Grade
        AFFF ............................................................................... 15

A.  3M fails to allege, much less offer competent proof of, a causal nexus between the Town's complained-of conduct and 3M's past actions taken under federal authority ........................................16

    1.  3M fails to allege any causal connection between its MilSpec AFFF and any PFAS pollution in the Town's water supply ..................................................................16

    2.  Even if 3M alleged facts supporting a causal nexus (which are absent), 3M fails to meet its evidentiary burden of proof..................................................................20

B.  The "heart" and "gravamen" of the Town's complaint demonstrates that none of the Town's complained-of conduct relates to 3M's production of military-grade AFFF ................22

    1.  The district court correctly remanded this case based on the "heart" and "gravamen" of the Town's complaint....23

        a.  *State v. Meadows* and its application to this case .23

        b.  Multiple JPML rulings further support the district court's application of *Meadows* here....................26

        c.  The Town's complaint, read as a whole, clearly never implicates AFFF ........................................26

C.  The Town's express, unambiguous AFFF disclaimer severs the causal nexus between the Town's charged conduct and any actions 3M took under federal authority ..................................29

    1.  Numerous courts have remanded cases based on similar disclaimers ......................................................30

    2.  3M's arguments to ignore the Town's disclaimer are without merit..................................................................34

        a.  The Town's express, specific disclaimer is a targeted disclaimer of claims, not jurisdiction ....34

       b.     3M's cited cases are distinguishable ..................36

          1.    In this case, the factual record shows that 3M has *never* asserted that *its* AFFF was supplied to the military facility in question, a key difference from *Maryland* .........................39

          2.    3M simply ignores the arguments raised in *Maryland's* dissent ......................................41

IV.    3M Does Not Have a "Colorable" Federal Defense ..........................45

    A.    3M's federal defense rests solely on products and claims not at issue in this case ........................................................................46

    B.    3M does not assert a *federal* defense – instead, it has simply put forth an ordinary *factual* defense of an alternative theory of causation, which can and should be resolved in state court .....47

    C.    3M does not satisfy the *Boyle* requirements .............................50

CONCLUSION    .....................................................................................52

CERTIFICATE OF COMPLIANCE .......................................................................53

CERTIFICATE OF SERVICE .................................................................................54

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Manypenny*,
　451 U.S. 232 (1981)............................................................................. 30

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).............................................................................14

*Baker v. Atl. Richfield Co.*,
　962 F.3d 937 (7th Cir. 2020) ........................................................13, 36, 37, 39

*Batchelor v. Am. Optical Corp.*,
　185 F. Supp. 3d 1358 (S.D. Fla. 2016)..............................................30, 34, 50

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007).............................................................................14

*Betzner v. Boeing Co.*,
　910 F.3d 1010 (7th Cir. (2018)..............................................................13, 20

*Boyle v. United Technologies Corp.*,
　487 U.S. 500 (1988)..........................................................10, 11, 13, 46, 51

*Caver v. Central Alabama Electric Cooperative*,
　845 F.3d 1135 (11th Cir. 2017) ...................................................13, 19, 29, 45

*City & Cnty. of Honolulu v. Sunoco LP*,
　39 F.4th 1101 (9th Cir. 2022) ................................................................14

*City of Hoboken v. Chevron Corp.*,
　45 F.4th 699 (3d Cir. 2022) ........................................... 11, 21, 33, 34, 44, 49

*Cnty. Bd. of Arlington Cty. v. Express Scripts Pharmacy Inc.*,
　996 F.3d 243 (4th Cir. 2021) ................................................................27

*Cnty. of San Mateo v. Chevron Corp.*,
　32 F.4th 733 (9th Cir. 2022) .................................................................21

## TABLE OF AUTHORITIES – CONTINUED

*Connecticut v. EIDP, Inc.,*
    No. 3:24-CV-239 (SRU), 2024 WL 5135601
    (D. Conn. Dec. 17, 2024)...................................................................31, 48

*Cuomo v. Crane Co.*,
    771 F.3d 113 (2d Cir. 2014) ..........................................................21

*Delaware v. BP Am. Inc.*,
    578 F. Supp. 3d 618 (D. Del. 2022) ...................................35, 36, 50

*District of Columbia v. Exxon Mobil Corp.*,
    89 F.4th 144 (D.C. Cir. 2023).........................................................33

*Dougherty v. A O Smith Corp.*,
    2014 WL 3542243 (D. Del. July 16, 2014)...........................34, 35

*Georgia v. Meadows*,
    692 F. Supp. 3d 1310, 1317 (N.D. Ga.)
    *aff'd*, 88 F.4th 1331 (11th Cir. 2023),
    *cert. denied*, 145 S. Ct. 545 (2024)..........................................23, 24

*Gov't of Puerto Rico v. Express Scripts, Inc.*,
    119 F.4th 174 (1st Cir. 2024) ...............................30, 31, 32, 36, 42

*Hayden v. 3M Co.*,
    2015 WL 4730741 (E.D. La. Aug. 10, 2015).........................35, 50

*Heilner v. Foster Wheeler LLC*,
    No. 1:22-CV-00616, 2022 WL 3045838 (M.D. Pa. Aug. 2, 2022) ..............50

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
    No. MDL 2:18- MN-2873-RMG,
    2022 WL 4291357 (D.S.C. Sept. 16, 2022) ......................11, 13, 51

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007) ..........................................................20

## TABLE OF AUTHORITIES – CONTINUED

*Isaacson v. Dow Chem. Co.*,
    517 F.3d 129 (2d Cir. 2008) ..........................................9, 15, 20, 21

*Jefferson County v. Acker*,
    527 U.S. 423 (1999)........................................................................9

*Kelleher v. A.W. Chesterton Co.*,
    No. 15–CV–893–SMY–SCW, 2015 WL 7422756
    (S.D.Ill. Nov. 23, 2015) ......................................................35, 47, 50

*Latiolais v. Huntington Ingalls, Inc.*,
    951 F.3d 286 (5th Cir. 2020) ..................................................42, 46

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ..................................................13, 21

*Leonard v. Enterprise Rent a Car*,
    279 F.3d 967 (11th Cir. 2002) ........................................................13

*Magnin v. Teledyne Cont'l Motors*,
    91 F.3d 1424 (11th Cir. 1996) ........................................................13

*Maine v. 3M Co.*,
    No. 2:23-CV-00210-JAW, 2023 WL 4758816
    (D. Me. July 26, 2023)....................................................................31

*Maryland v. 3M Co.*,
    130 F.4th 380 (4th Cir. 2025) ...............................................*passim*

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022)....................................................21, 29

*Moore v. Elec. Boat Corp.*,
    25 F.4th 30 (1st Cir. 2022) ......................................................11, 46

*New Hampshire v. 3M Co.*,
    665 F. Supp. 3d 215 (D.N.H. 2023) ..............................................31

## TABLE OF AUTHORITIES – CONTINUED

*Papp v. Fore-Kast Sales Co.*,
    842 F.3d 805 (3d Cir. 2016) ............................................................45

*People ex rel. Raoul v. 3M Co.*,
    111 F.4th 846 (7th Cir. 2024) ..................................................36, 38

*Ruppel v. CBS Corp.*,
    701 F.3d 1176 (7th Cir. 2012) ........................................................46

*Sawyer v. Foster Wheeler LLC*,
    860 F.3d 249 (4th Cir. 2017) ..........................................................42

*State by Tong v. Exxon Mobil Corp.*,
    83 F.4th 122 (2d Cir. 2023) .............................................................20

*State of Maryland v. Soper*,
    270 U.S. 9 (1926) .............................................................................47

*State v. Meadows*,
    88 F.4th 1331 (11th Cir. 2023) ................................................*passim*

*Watson v. Phillip Morris Companies., Inc.*,
    551 U.S. 142 (2007) ...................................................................12, 45

*Willingham v. Morgan*,
    395 U.S. 402 (1969) .....................................................................8, 20

*Wood v. Crane Co.*,
    764 F.3d 316 (4th Cir. 2014) ..........................................................33

*Young v. Tyco Fire Prod., LP*,
    No. 21-15912, 2022 WL 486632 (9th Cir. Feb. 17, 2022) ..............33, 35, 49

## TABLE OF AUTHORITIES - CONTINUED

**Statutes**

28 U.S.C. § 1442 ..................................................................*passim*

**Other Authorities**

§ 3722.1 *Removal Based on Federal-Question Jurisdiction—Removal Based on Artful Pleading*, 14C FED. PRAC. & PROC. JURIS. § 3722.1 (Rev. 4th ed.) ............... 34

§ 3733 *Procedure for Removal – Content and Amendment of the Notice of Removal*, 14C FED. PRAC. & PROC. JURIS. (Rev. 4th ed.) ......................................................... 21

**INTRODUCTION**

This case is about PFAS pollution in the Alabama River emanating from several paper mills upstream of The Town of Pine Hill, Alabama (the "Town"). This case is *not* about military-grade AFFF that 3M sold to the U.S. Military from 1970-2000. But that is what 3M wants this case to be about. And that is the sole basis for 3M's attempt to remove this case to federal court.

On three previous occasions, federal courts reviewed the Town's complaint and disagreed with 3M's framing of this case. All three times, courts have determined that this case is not about AFFF. This appeal represents 3M's fourth bite at the apple to convince a court that the Town's allegations somehow relate to 3M's decades-old production of military-grade AFFF used at a military base never mentioned in the Town's complaint.

The district court was correct – this case belongs in state court.

In its complaint, the Town expressly disclaims any relief from the sole basis on which 3M seeks removal: pollution from firefighting foam, or "MilSpec AFFF," which 3M claims to have manufactured decades ago. The Town's allegations are clear: it seeks recovery only for pollution resulting from 3M's *consumer-grade* PFAS it supplied to paper mills, one of which is located directly across the street from the Town's water treatment facility. Because the Town's allegations have no connection to 3M's MilSpec AFFF, the district court correctly remanded this case.

1

3M theorizes that MilSpec AFFF might have been used at Maxwell Air Force Base, and that this military-grade AFFF might be a source of PFAS pollution in the Town's water. Therefore, 3M insists, it is entitled to federal officer removal.

3M's argument fails for multiple, and independent, reasons.

*One* – 3M stopped making MilSpec AFFF in 2000, so it is not currently "acting under" any federal officer and is not entitled to federal officer removal.

*Two* – As the Town's complaint makes clear, this case has nothing to do with 3M's production of military-grade AFFF. The heart of the Town's complaint focuses specifically on pollution from 3M's consumer-grade PFAS supplied to paper mills. 3M discontinued manufacturing MilSpec AFFF decades ago, is wholly immaterial to the claims in this case, was expressly disclaimed by the Town, and is wholly separate from 3M's production of consumer-grade PFAS used by paper mills.

*Three* – 3M does not have a viable colorable federal defense, which is required for removal. Any argument that 3M could raise that AFFF may have commingled with non-AFFF PFAS in the Town's water supply is simply an ordinary defense on the theory of alternative causation which does not need to be adjudicated in federal court. Moreover, because 3M was never required to follow precise government specifications in manufacturing AFFF, as a matter of law 3M cannot assert a federal government contractor defense.

3M invites this Court to stretch the bounds of the federal officer removal statute beyond all recognition, arguing that the slightest perceived connection to AFFF gives it the right to federal jurisdiction. This Court should reject 3M's invitation and affirm the district court's remand.

## STATEMENT OF THE ISSUE

Whether the district court was correct in remanding this case because the federal officer removal statute, 28 U.S.C. § 1442(a)(1), does not provide federal jurisdiction to entities not currently acting under federal authority, where the "heart" and "gravamen" of the Town's complaint does not involve MilSpec AFFF, where the Town expressly and unambiguously disclaimed any relief for harm relating to military-grade AFFF, and where 3M failed to raise a colorable federal government-contractor defense.

## STATEMENT OF THE CASE

### 1. PFAS and AFFF

PFAS (per- and polyfluoroalkyl substances) are a class of man-made chemicals that includes nearly 12,000 individual compounds. JA1-2 ¶ 31.[1] A key feature of PFAS is the presence of strong carbon-fluorine bonds. JA1-2 ¶ 41. These bonds impart oil- and grease-resistant properties on household and consumer goods. JA1-2 ¶¶ 41, 56. For this reason, PFAS are frequently used to coat paper and

---

[1] All cites to "JA" refer to Tabs within the Joint Appendix, Dkt. 19, May 21, 2025.

3

cardboard products. JA1-2 ¶ 37. Part of the PFAS-coating process for paper products involves the discharge of excess wastewater into the environment. JA1-2 ¶¶ 57-60. However, the same carbon-fluorine bond that makes PFAS useful for consumer goods like paper also means they persist in the environment and do not biodegrade naturally. JA1-2 ¶ 41. PFAS are harmful to humans at extremely low levels. JA1-2 ¶ 4. PFAS have also been used in certain types of firefighting foam, specifically aqueous film-forming foam ("AFFF"). JA1 ¶ 21. AFFF was developed by the U.S. Naval Research Laboratory and supplied to the U.S. military by manufacturers according to military specifications ("MilSpec"). JA1 ¶¶ 21, 22.

**2. The Town's Lawsuit**

On July 9, 2024, the Town filed its lawsuit in the Circuit Court of Wilcox County, Alabama. The Town provides treated drinking water to residential and commercial customers in Wilcox County, Alabama. JA1-2 ¶ 5. The Town alleges its water supply, the Alabama River, is polluted with PFAS from nearby paper mills. JA1-2 ¶¶ 1, 38, 57-60. The Town named several defendants, including 3M. The Town alleges 3M supplied consumer-grade PFAS to these paper mills despite knowing its PFAS would inevitably be released into the Alabama River and pollute the Town's water supply. JA1-2 ¶¶ 35-36, 38-39, 56. The Town's suit exclusively alleges state-law causes of action. The scope of the Town's lawsuit was repeatedly

limited by express disclaimers against any recovery from AFFF pollution. JA1-2 ¶¶ 1, 8, 40.

### 3. 3M's Notice of Removal

On August 14, 2024, 3M removed this case to the U.S. District Court for the Southern District of Alabama, invoking the federal officer removal statute, 28 U.S.C. § 1442(a)(1). 3M argued that its past role as a supplier of MilSpec AFFF to the U.S. military entitles it to remove the case so that it can raise a potential government contractor defense. JA1 ¶ 2. 3M "phased out production of AFFF in 2000," and its MilSpec AFFF was no longer on the Navy's Qualified Products List as of 2010. JA1 ¶ 24. Despite the Town's disclaimer and 3M's AFFF phase-out, 3M argued that MilSpec AFFF potentially commingled with non-AFFF PFAS in the Town's water source, meaning it can raise the government contractor defense to all of the Town's claims. JA1 ¶ 4.

The single location cited by 3M as a source of potential MilSpec AFFF pollution is Maxwell Air Force Base ("Maxwell"), located in the "vicinity" of Montgomery, Alabama. JA1 ¶ 25. Although its Notice of Removal lists Maxwell as a location where MilSpec AFFF was used, 3M has never alleged that it supplied MilSpec AFFF to Maxwell, 3M's MilSpec was ever used there, or even that any AFFF actually left the base and polluted the Alabama River. *See* JA1 ¶¶ 26, 27.

The Town moved to remand the case on August 20, 2024. JA18. The motion was referred to the Magistrate Judge for consideration.

### 4. The JPML Determined That This Case Does Not Involve MilSpec AFFF – Twice

While the Town's motion to remand was pending, 3M made two unsuccessful attempts to transfer this case to the AFFF multidistrict litigation in the District of South Carolina, MDL No. 2873 (the "AFFF MDL"). 3M argued there, as it does now, that this case was really about military-grade AFFF, not consumer-grade PFAS pollution from paper mills.

First, 3M filed a Notice of Potential Tag-Along with the Judicial Panel on Multidistrict Litigation ("JPML"). ECF No. 2928, (J.P.M.L. Sep. 30, 2024).[2] The Clerk of the Panel quickly declined to issue a Conditional Transfer Order, stating this case was "not appropriate for inclusion in [the AFFF] MDL." ECF No. 2933, (J.P.M.L. Oct. 2, 2024).

The next day, 3M filed a Motion to Transfer to the AFFF MDL. ECF No. 2937, (J.P.M.L. Oct. 3, 2024). The JPML denied 3M's motion. ECF No. 3260, (J.P.M.L. Feb. 12, 2025). The Panel held that the Town's complaint did not "involve[] allegations pertaining to the manufacture, use, or disposal of AFFFs." *Id.* at 1. The JPML determined this was a "non-AFFF case" and that transfer was not

---

[2] Unless identified by another case number, references to "ECF No._" are to the JPML's docket for MDL 2873 – the AFFF MDL.

warranted because the Town's claims were "'overwhelmingly focused' on non-AFFF industrial concerns such as paper mills…" *Id.* at 3 (citing ECF No. 1510, (J.P.M.L. Aug. 3, 2023) (denying transfer of an action relating to a 3M plant on the Mississippi River and rejecting 3M's argument that AFFF use at a nearby military facility could have contributed to the plaintiff's alleged PFAS contamination).

### 5. The District Court's Remand Order

Two days after the JPML denied 3M's transfer bid, the Magistrate Judge issued a Report and Recommendation ("R&R"), recommending the Town's motion to remand should be granted. JA81, 1. The R&R found that, based on Eleventh Circuit precedent, because the "heart" and "gravamen" of the Town's complaint did not implicate AFFF, 3M was not entitled to removal. JA81, 9. Based on the scope of the Town's allegations, even *without* the Town's AFFF disclaimer, 3M would *still* not be entitled to federal officer removal. JA81, 6.

The district court adopted in full the R&R, JA 86, and entered judgment remanding this case on March 6, 2025. JA87.

3M filed its Notice of Appeal the next day. JA89.

7

## SUMMARY OF THE ARGUMENT

The district court properly remanded this case because 3M fails to satisfy the requirements of the federal officer removal statute. To invoke that statute, 3M must *currently* be acting under a federal officer. 3M must also demonstrate a causal nexus between its federal actions and the Town's charged conduct. Finally, 3M must assert a viable, colorable federal defense.

3M fails all three. Accepting 3M's arguments would drastically expand the scope of federal officer removal to circumstances where no federal question is implicated. *See Willingham v. Morgan,* 395 U.S. 402, 405 (1969) (describing the purpose of the removal statute as to "provide a federal forum for cases where federal officials must raise defenses arising from their official duties.").

I. 3M is not currently "acting under" federal authority.

This Court bars federal officer removal for *past* conduct and *former* federal officers. *State v. Meadows*, 88 F.4th 1331, 1338 (11th Cir. 2023) ("But the statute does not apply to *former* federal officers.") (emphasis in original). In its Notice of Removal, 3M admits it has not manufactured MilSpec AFFF since 2000, and its MilSpec AFFF has not been on the Navy's Qualified Products List since 2010. JA1 ¶ 24. 3M is not currently "acting under" a federal officer. Both the plain language of § 1442(a)(1) and *Meadows* bar 3M's removal for its past conduct.

8

II. 3M cannot establish a plausible causal connection between its actions and the Town's charged conduct.

*First*: Although a removing defendant must show a "plausible" nexus, it must establish an actual *causal* connection between its acts under federal authority and the Town's complained-of harm. *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (citation and internal quotation marks omitted). 3M must "demonstrate that the acts for which [it is] being sued … occurred *because of* what [it was] asked to do by the Government." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (emphasis in original). Where, as here, a plaintiff contests the facts underpinning a defendant's claim of a causal nexus, this Court requires that the defendant support its allegations by "competent proof." *Meadows*, 88 F.4th at 1348 (cleaned up).

A plain reading of 3M's Notice of Removal shows 3M fails this critical step. 3M has not even alleged, much less proven, that any military-grade AFFF manufactured by 3M was supplied to or used at Maxwell. Further, 3M has not alleged, much less proven, that any AFFF (regardless of supplier) used at Maxwell polluted the Alabama River. Despite numerous, conclusory, and argumentative assertions to the contrary in 3M's brief, 3M's Notice of Removal makes no such necessary allegations.

*Second:* This Court held in *Meadows* that the heart and gravamen of a complaint dictate whether there exists a causal connection between a plaintiff's

9

claims and a defendant's actions, "instead of individually evaluating each overt act alleged…" *Meadows*, 88 F.4th at 1344-45. Both the district court and the JPML concluded the Town's claims focused overwhelmingly on consumer-grade PFAS from nearby paper mills. Because the "heart" and "gravamen" of the Town's complaint never implicates *any* MilSpec AFFF, much less *3M's* conduct in manufacturing and supplying MilSpec AFFF, no causal nexus exists.

*Third*: The Town's express, unambiguous disclaimer for any relief related to AFFF pollution further clarifies and severs any causal nexus. Courts routinely credit targeted and specific claim disclaimers, like the Town's here, to sever the causal nexus required for federal officer removal. 3M attempts to overcome the disclaimer by relying on out-of-circuit decisions, but all those cases are distinguishable.

III. 3M cannot raise any viable colorable federal defense.

*First:* No court thus far has accepted 3M's argument that it has a colorable federal defense where a plaintiff expressly disclaims any relief from AFFF. This Court should not be the first. 3M's federal defense is premised on the argument that it manufactured MilSpec AFFF as a government contractor. The government contractor defense protects contractors from liability for design defects in military equipment. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). The Town makes no allegations regarding 3M's liability for anything AFFF-related, much less "design defects" in MilSpec AFFF. Thus, 3M will never need to raise this

10

defense, never need to address its work done producing MilSpec AFFF, and will not need to address any issues relating to 3M's failure to warn the U.S. government about harms related to AFFF. Because these defenses will never need to be raised, by definition any government contractor defense is "immaterial" and is therefore not a colorable federal defense. *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 37 (1st Cir. 2022).

*Second*: Any argument 3M may possibly raise about AFFF commingling with non-AFFF PFAS in the Alabama River is an ordinary, factual defense of an alternative theory of causation. Such a theory does not implicate 3M's actions from decades ago while it manufactured military-grade AFFF. The fact that 3M last served as a governmental contractor during the Clinton administration is irrelevant to the Town's claims here. Questions of causation not involving a federal defense can be resolved in state court. *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2022).

*Third*: 3M's purported government contractor defense must meet the three-part test set forth in *Boyle*, including that MilSpec AFFF was produced according to "reasonably precise specifications." *Boyle*, 487 U.S. at 512-13. However, despite 3M's claims to the contrary, the AFFF MDL court held "*as a matter of law* that the AFFF MilSpec is *not* a reasonably precise specification under the first prong of *Boyle*." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *8 (D.S.C. Sept. 16, 2022) (emphasis

11

added). 3M's manufacture of MilSpec AFFF did not follow "reasonably precise specifications," thereby failing the *Boyle* test.

For these reasons, this Court should affirm the district court's order remanding this case to state court.

## ARGUMENT

### I.    Legal Standard

The federal officer removal statute allows a defendant "acting under" a United States officer to remove a civil action to federal court "for or relating to any act under color of such office." 28 U.S.C. §1442(a)(1). The statute's "basic purpose is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State officers and agents of the Federal Government acting within the scope of their authority." *Watson v. Phillip Morris Companies., Inc.*, 551 U.S. 142, 150 (2007) (cleaned up). It protects federal officers from "local prejudice" and provides "a federal forum in which to assert federal immunity defenses." *Id.* (cleaned up). Although the federal officer removal statute may be liberally construed, its "broad language is not limitless." *Id.* at 147.

Where the defendant seeking removal is not a federal officer, the defendant must satisfy a three-pronged test: 1) that it is a "person" within the meaning of the statute who acted under a federal officer; 2) that it performed the actions for which

it is being sued under color of federal office; and 3) that it has raised a colorable defense. *Caver v. Central Alabama Elec. Coop.,* 845 F.3d 1135, 1142 (11th Cir. 2017). To meet the second prong, this Court has held that the removing defendant must show a "causal connection between what the officer has done under asserted official authority and the action against him." *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).

When asserting a government contractor defense, a defendant must satisfy *Boyle's* three-part test: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *4 (quoting *Boyle,* 487 U.S. at 512-13).

A defendant seeking federal officer removal bears the burden of proving federal jurisdiction and must support its factual claims both by "competent proof," *Meadows*, 88 F.4th at 1348 (citing *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002)) and a preponderance of the evidence. *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). Moreover, the allegations in a notice of removal must still satisfy "federal pleading standards." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018). The allegations must be "facially plausible." *Baker v. Atl. Richfield*

13

*Co.*, 962 F.3d 937, 941 (7th Cir. 2020). "[S]peculative" allegations, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "mere conclusory statements" *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) are not sufficient. Just because a removing defendant claims federal jurisdiction does not make it so. *See City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1110 (9th Cir. 2022) (finding no federal jurisdiction because "[d]efendants' conclusory statements and general propositions of law do not make their defenses colorable")*, cert. denied*, 143 S. Ct. 1795 (2023).

This Court reviews issues of federal officer removal jurisdiction, including a district court's remand order, *de novo*. *Meadows*, 88 F.4th at 1338.

## II.    3M Is Not Currently "Acting Under" Federal Authority

In *Meadows*, this Court made crystal clear that the federal officer removal statute does not apply to *past* conduct and *former* federal officers. ("But the statute does not apply to *former* federal officers."). *Meadows*, 88 F.4th at 1338 (emphasis in original). *Meadows* comports with the plain language of the statute which applies only to "any person *acting* under that officer." 28 U.S.C. § 1442(a)(1) (emphasis added).

The sole basis for 3M's argument that it was "acting under" federal authority is its production and supply of MilSpec AFFF to the U.S. military. JA1 ¶ 33.

3M does not claim to be *currently* "acting under" a federal officer. In fact, 3M admits to phasing out all AFFF production in 2000, with its MilSpec AFFF no longer

14

on the Navy's Qualified Products List since at least 2010. JA1 ¶ 24. Both the plain language of the removal statute and *Meadows* preclude 3M from removing this case based on actions that it ceased decades ago.

As a threshold issue, the removal analysis can end here. Simply put, 3M is not entitled to federal officer removal based on its past production of a chemical not at issue in this case.[3]

### III. 3M Cannot Establish a Causal Connection Between the Town's Charged Conduct and 3M's Past Production of Military-Grade AFFF

To invoke the federal officer removal statute, a removing defendant must establish a causal nexus between the actions it took under federal authority and the conduct charged against it. *Meadows*, 88 F.4th at 1343. The casual nexus requirement means that corporate entities (like 3M) must "demonstrate that the acts for which they are being sued … occurred *because of* what they were asked to do by the Government." *Isaacson,* 517 F.3d at 137 (emphasis in original).

For multiple reasons, 3M fails to establish this requisite causal nexus.

---

[3] 3M may argue that *Meadows* should not apply here because 3M was a contractor "acting under" a federal officer, not a federal officer itself. But this is a distinction without a difference. 3M cannot dispute that *Meadows* limits federal officer removal to *current* federal officers, and 3M cannot explain why former non-governmental contractors who were allegedly "acting under" a federal officer in the past would receive somehow greater protection under the removal statute.

**A. 3M fails to allege, much less offer competent proof of, a causal nexus between the Town's complained-of conduct and 3M's past actions taken under federal authority**

3M's argument on appeal can be boiled down to this: because it has plausibly alleged a nexus[4] between the Town's charged conduct (non-AFFF PFAS pollution from nearby paper mills) and its past production of military-grade AFFF, this case belongs in federal court.

This argument, however, suffers several fatal flaws. The most glaring is the one 3M attempts to gloss over – 3M does not allege *its* military-grade AFFF was ever supplied to or used at Maxwell, nor does it allege that any MilSpec AFFF ever left Maxwell. 3M does not allege that any AFFF polluted the Alabama River, much less that this AFFF pollution traveled miles downstream to eventually commingle with non-AFFF PFAS at the Town's water source.

    1. <u>3M fails to allege any causal connection between its MilSpec AFFF and any PFAS pollution in the Town's water supply</u>

The *sole* basis for 3M's removal theory is MilSpec AFFF was used at Maxwell, which is located near the Alabama River upstream of the Town. 3M points to no other potential sources of MilSpec AFFF pollution which could implicate federal officer jurisdiction in this case.

_____

[4] Throughout its brief, 3M refers to the connection between its acts taken under federal authority and the Town's charged conduct simply as a "nexus." *See, e.g.,* Br. at 20. 3M emphasizes that this nexus only needs to be "plausible," Br. at 21, but ignores completely this Court's requirement that the nexus must be a *causal* one, as discussed below.

16

Glaringly absent from 3M's pleadings, however, is *any* allegation that it *ever* supplied MilSpec AFFF to Maxwell, or that any of 3M's military-grade AFFF was ever used at Maxwell. Nor does 3M allege that any AFFF has even left the boundaries of the base, let alone traveled miles downstream the Alabama River to pollute the Town's water source. The Town urges this Court to review 3M's Notice of Removal. Nowhere – nowhere – does 3M allege as much. 3M bases its entire theory of removal on MilSpec AFFF being present at and leaking from a single location: Maxwell. 3M sets forth a series of unrelated facts and asks this Court to jump to an illogical conclusion that 3M's MilSpec AFFF could somehow be part of the Town's non-AFFF PFAS contamination. This Court should not fall for 3M's sleight of hand.

First, 3M admits it was not the exclusive MilSpec AFFF supplier to the U.S. military. JA1 ¶ 2 ("3M *and others* developed and sold to the U.S. military" MilSpec AFFF (emphasis added)). Then, 3M identifies one location – Maxwell – because it is in the "vicinity" of one of the three paper mills named in the Town's complaint. JA1 ¶ 25. Next, 3M cites a single, six-year-old report[5] which states AFFF (not 3M's in particular) was used at Maxwell. JA1 ¶ 26. The Inspection Report identified AFFF releases *only on base* – not in the environment or waterways outside the boundaries

---

[5] *Final Site Inspection Report, Site Inspection of Aqueous Film Forming Foam (AFFF) Release Areas (Maxwell Air Force Base, Montgomery Alabama)*, January 2019 (the "Inspection Report").

of the base, and not in the Alabama River. *See generally* Inspection Report. Finally, 3M cited the Inspection Report's note that groundwater on base "flowed *in the direction of* the Alabama River." JA1 ¶ 26. (emphasis added). From this series of disparate facts, 3M claims that the Town's complained-of pollution could "equally as plausibly resulted, at least in part, from MilSpec AFFF use." JA1 ¶ 25.

Two key components are missing from 3M's supposed nexus. *First*, any allegation that 3M ever supplied a single morsel of its AFFF to Maxwell or that its AFFF was ever used there. *Second*, any allegation that AFFF has ever left Maxwell and polluted the Alabama River (much less that it traveled miles downstream to eventually pollute the Town's water source).

In the 1,000-page Inspection Report (3M's sole piece of extrinsic "evidence"), 3M's name is never mentioned. Not once does the Inspection Report list 3M as a supplier of AFFF used or stored at Maxwell. And, most importantly, the Inspection Report never says that any AFFF from the base is polluting the environment. Indeed, it states the opposite: "It is unlikely that PFAS in the surficial aquifer has migrated any considerable distance beyond the western installation boundary." Inspection Report at 22.

3M has not alleged, much less pleaded, a plausible causal nexus. Instead, it attempts to create the appearance of one. But here, appearances are deceiving. Stripped to its basics, 3M has alleged the following: military-grade AFFF

18

manufactured by someone, long ago, was used at Maxwell; and AFFF releases have been found on-site at the base. Despite the paucity of 3M's factual allegations, 3M concludes that it has "plausibly" alleged an appropriate nexus allowing for removal. Br. at 20. Relying on *Caver*, 3M argues that Congress's 2011 amendments to the removal statute through the inclusion of the phrase "for or relating to" broadened a defendant's ability to attain federal officer jurisdiction if it can demonstrate even the slightest "connection or association between the act in question and the federal office." Br. at 20, citing *Caver*, 845 F.3d at 1144. Emphasizing it has alleged that it is at least "plausible" that some AFFF may have commingled with non-AFFF PFAS at the Town's water source, 3M argues that it has cleared the "low bar" to establish a connection between the Town's complained-of conduct and 3M's work done for the federal government.

Missing from this argument, however, is that this Court – in *Caver*, no less – still requires an affirmative causal connection between the complained-of conduct and actions taken under federal authority. *Caver*, 845 F.3d at 1144. 3M is correct that it need only demonstrate a "connection or association" between the two, but that "connection or association" must still be based on a concrete causal connection. 3M has not shown any connection, much less a causal one, between its AFFF and the PFAS pollution at the heart of the Town's complaint.

19

Absent such a connection, 3M is not entitled to federal officer removal. 3M has not shown that the acts for which it is being sued (its supply of consumer-grade PFAS to paper mills) occurred "because of" the work it did for the government (its production and supply of military-grade AFFF to the U.S. military). *Isaacson*, 517 F.3d at 137. No causal connection exists here.

As the Second Circuit explained, "a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage - there must be a 'causal connection between the charged conduct and asserted official authority.'" *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 144 (2d Cir. 2023) (quoting *Betzner*, 910 F.3d at 1015). 3M falls short even of the "low bar" mentioned in *Caver*.

2. <u>Even if 3M alleged facts supporting a causal nexus (which are absent), 3M fails to meet its evidentiary burden of proof</u>

3M argues it does not need to provide any evidence to support its "connection or association" theory. Br. at 48. Instead, 3M argues this Court must credit all aspects of its removal theory as true and take its allegations at face value without any supporting evidence. *Id.* But, because the Town attacked both 3M's facts and the purported causal connection (JA18 at 12-13), 3M bears the burden of supporting its allegations with actual proof.

When seeking federal officer jurisdiction, a defendant must provide "candid, specific and positive" allegations that it was acting under federal authority when it performed the actions for which it has been sued. *In re Methyl Tertiary Butyl Ether*

20

(*"MTBE"*) *Prods. Liab. Litig.*, 488 F.3d 112, 130 (2d Cir. 2007) (quoting *Willingham*, 395 U.S. at 408). Non-governmental corporate entities (like 3M) must "demonstrate that the acts for which they are being sued … occurred *because of* what they were asked to do by the Government." *Isaacson*, 517 F.3d at 137 (emphasis in original).

This Court requires that a defendant seeking federal officer jurisdiction must "support the factual averments linking his conduct and his office 'by competent proof.'" *Meadows*, 88 F.4th at 1348 (cleaned up). The "competent proof" standard, approved by this Court in *Meadows*, requires the removing defendant to prove, by a preponderance of the evidence, each of the requirements for federal subject-matter jurisdiction. *Id.* (citing *Leite,* 749 F.3d at 1122 (applying the "competent proof" standard to federal officer removal.) [6]

---

[6] *See also Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d Cir. 2014) (a court must "ensure the existence of some competent evidence supporting a 'colorable' federal defense"); *Cnty. of San Mateo v. Chevron Corp.,* 32 F.4th 733, 760 (9th Cir. 2022) (defendants "have not carried their burden of proving by a preponderance of the evidence that they were 'acting under' a federal officer"); *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 231 (4th Cir. 2022) (rejecting federal officer jurisdiction based on analysis of underlying federal contracts); *City of Hoboken*, 45 F.4th at 713 (rejecting federal officer removal jurisdiction based on estimate by scientist that federal officers were responsible for a small fraction of the world's energy consumption); *Cf.* § 3733 *Procedure for Removal – Content and Amendment of the Notice of Removal*, 14C FED. PRAC. & PROC. JURIS. (Rev. 4th ed.) (evidence "is required" for jurisdiction "when the plaintiff contents, or the district court questions, the defendant's allegations").

But, as shown above in Section III.A.1.,[7] 3M has not even alleged a *possible* nexus between its military-grade AFFF and any non-AFFF PFAS pollution in the Town's water source, much less a *plausible* one. Lacking any *allegation* that it was 3M's MilSpec AFFF in use at Maxwell, 3M certainly cannot offer "competent proof." Having sold its AFFF to the military for over thirty years (as 3M claims), if 3M had any evidence so much as suggesting its AFFF was used at Maxwell, it would have provided it long ago.

Instead of competent proof, 3M's allegations – even taken as true on their face – do not support federal officer removal. Because 3M has failed to allege that any AFFF present at the Town's water supply was ever supplied by 3M, let alone that any AFFF ever left Maxwell to wind up in the Town's water supply located miles downstream along the Alabama River, no causal nexus – plausible or otherwise – exists.

### B. The "heart" and "gravamen" of the Town's complaint demonstrates that none of the Town's complained-of conduct relates to 3M's production of military-grade AFFF

For purposes of federal officer removal, this Court looks to the "heart" and "gravamen" of the complaint when determining whether a defendant's actions taken under federal authority relate to the charged conduct. *Meadows,* 88 F.4th at 1344-1345. A plain reading of the Town's complaint, with which both the district court

---

[7] *Supra* at pp. 16-20.

and the JPML agree, shows that none of the Town's complained-of conduct relates in any way to 3M's production of MilSpec AFFF.

### 1. The district court correctly remanded this case based on the "heart" and "gravamen" of the Town's complaint

The district court found that *even without* the Town's AFFF disclaimer, 3M is *still* not entitled to federal officer removal because none of the Town's claims are premised on the design, manufacture, or sale of AFFF to the U.S. military. JA81 at 6 (adopted in full by district court, JA86). The district court relied on this Court's ruling in *Meadows* that, when determining whether there is the required causal connection, courts must look to the "heart" or "gravamen" of the claims, "instead of individually evaluating each overt act alleged…" JA81 at 7, citing *Meadows*, 88 F.4th at 1344-45. The remand accords with the JPML's rulings and *Meadows*.

### a. State v. Meadows *and its application to this case*

In *Meadows*, the State of Georgia charged Mark Meadows, a former White House chief of staff, with conspiring to interfere in the 2020 presidential election. *Georgia v. Meadows*, 692 F. Supp. 3d 1310, 1317 (N.D. Ga.) *aff'd*, 88 F.4th 1331 (11th Cir. 2023), *cert. denied*, 145 S. Ct. 545 (2024). Meadows removed the case to federal court, claiming he was entitled to federal officer removal because his charged conduct was "for or relating to any act under color of … office." *Id.* at 1320. The district court remanded the case to state court, determining that such an "act" must be evaluated by looking to the "heart" or "gravamen" of the allegations, instead of

23

individually evaluating each overt act alleged. *Id.* at 1324. The district court held that the "gravamen" and "heavy majority of overt acts" alleged against Meadows did not support federal officer jurisdiction. *Id.* at 1332.

This Court affirmed the remand. After first holding that remand was appropriate because § 1442(a)(1) did not apply to former federal officers,[8] this Court held that, even if it did, the events giving rise to the action against Meadows were not "relate[d] to his official duties." *Meadows*, 88 F.4th at 1343.

Instead of looking to any single act in a vacuum, this Court held that "we must look to the 'heart' of Meadows's conduct to determine whether his … 'act'—of conspiring to 'unlawfully change the outcome of the election in favor of Trump'— supports removal." *Id.* at 1344. In doing so, this Court held that it "must look to the core of the factual allegations to identify whether Meadows's conduct in aggregate furthered the alleged enterprise to overturn the election." *Id.* at 1345. Because none of Meadows's acts taken under federal authority related to the claims against him, Meadows was not entitled to federal officer removal.

Here, the district court faithfully applied the *Meadows* "heart" and "gravamen" analytical framework to the Town's complaint. It correctly found no

---

[8] As noted above in Section II, as a threshold issue 3M is not entitled to federal officer removal because the removal statute does not apply to former federal officers or those who are not currently performing work under federal authority. *See* pp. 14-15 *supra.*

nexus existed between the Town's allegations and 3M's manufacture of MilSpec AFFF. "Reading the complaint as a whole, it is clear that the 'heart' or 'gravamen' of [the Town's] claims against 3M is its manufacture of PFAS-containing products for, and suppling of them to, International Paper specifically for use in its Alabama mills." JA81 at 8-9.

The district court noted the Town's allegations centered around International Paper's discharge of PFAS into the Alabama River from three of its paper mills. JA81 at 9. In citing several portions of the complaint's precise language, the district court found that the Town was only bringing claims against 3M for its sale and supply of consumer-grade PFAS to the paper mill industry – none of which were federal officers or agencies. *Id.*

The Town's express disclaimer relating to AFFF further bolstered the court's finding: ["T]he fact that the complaint expressly disclaims any damages or cause of action based on PFAS-containing AFFF lends further support to the determination that 3M's manufacture for and supplying of AFFF to the U.S. military are not at the 'heart' of Pine Hill's claims against 3M." *Id.* The district court rightly determined that 3M's supply of MilSpec AFFF (a substance not named in the Town's complaint) that might have been present at Maxwell (a location never mentioned in the Town's complaint) was irrelevant to the Town's allegations as a whole; they were "not

'actions for which [3M] is being sued,' but instead actions 3M seeks to assert as a defense against the claims for which it is being sued." *Id.*

### b. Multiple JPML rulings further support the district court's application of Meadows here

3M sought to transfer this case to the AFFF MDL twice, arguing both times (just like it does here) that this case was really about AFFF pollution, not non-AFFF PFAS from paper mills. Twice, the JPML rejected 3M's argument.

The JPML denied 3M's motion for a Conditionl Transfer Order, holding that this case was "not appropriate for inclusion in [the AFFF] MDL." ECF No. 2933 (J.P.M.L. Oct. 2, 2024). Then the JPML denied 3M's motion to transfer this case to the AFFF MDL, holding that on its face, the Town's complaint did not "involve[] allegations pertaining to the manufacture, use, or disposal of AFFFs." ECF No. 3260 at 1 (J.P.M.L. Feb. 12, 2025). Despite 3M's argument that it was "plausible" that some of the Town's PFAS contamination could stem from, at least in part, the use of AFFF at Maxwell, the JPML flatly held that this case was a "non-AFFF case." *Id.* at 2. And, just like the district court, the JPML held that the Town's complaint was "overwhelmingly focused" on PFAS pollution from paper mills, which were non-AFFF industrial concerns. *Id.* at 3.

### c. The Town's complaint, read as a whole, clearly never implicates AFFF

3M contends that the district court's reading of the heart and gravamen of the Town's complaint is "myopic." Br. at 20. Instead, 3M claims, the complaint should

be read to include *all* PFAS contamination from *all* sources, including AFFF. Therefore, even under *Meadows*, the "heart" and "gravamen" of the conduct charged by the Town implicates 3M's production of MilSpec AFFF. Br. at 21. 3M's interpretation ignores the plain language of the complaint, the district court's reading of the complaint, and the JPML's reading of the complaint.

3M concedes that when evaluating the nexus between the complaint's charged conduct and a defendants' actions, courts should not "elevate form over substance," *Cnty. Bd. of Arlington Cty. v. Express Scripts Pharmacy Inc.*, 996 F.3d 243, 256 (4th Cir. 2021), and to read the complaint as a whole to determine the "heart" or "gravamen" of the claims, *Meadows*, 88 F. 4th at 1344. Br. at 21-22.

The Town could not have said it better itself. And, when evaluating the "substance" of the complaint and reading it as whole, 3M's argument falls apart. The Town's allegations demonstrate that this case is exclusively about the production, sale, and discharge of consumer-grade PFAS used at specific paper mills located along the Alabama River. Any actions that 3M may have taken decades ago to supply military-grade AFFF that may (or may not) have been used at sites never mentioned in the complaint are simply never implicated by the complaint.

The *very first paragraph* of the complaint makes this point: the Town has and continues to be damaged by "the release of toxic chemicals, including per- and poly-fluoroalkyl substances ("PFAS") (other than Aqueous Film Forming Foam) and

27

related chemicals *from paper mills, namely International Paper*." JA1-2 ¶ 1 (emphasis added). The Town specifically focuses on 3M's production and sale of PFAS "used in *paper manufacturing* in Alabama, specifically by International Paper." JA1-2 ¶ 36 (emphasis added). The Town alleges that 3M has "long supplied PFAS to the *paper industry* in Alabama and that 3M "sold PFAS treatment to create oil and grease-resistant *paper* to *paper mills* and for use in other *paper-manufacturing processes*, including to International Paper in Alabama." JA1-2 ¶¶ 51, 56 (emphasis added).

Despite this, 3M lamely argues that the Town's complaint is not focused on the sale of consumer-grade PFAS to paper mills. Br. at 33. 3M's attempt to interpret the Town's complaint as somehow alleging damages from all sources of PFAS, including MilSpec AFFF, flies in the face not only of how the district court and the JPML read the Town's allegations, but runs counter to any plain reading of the complaint.

For similar reasons, 3M's argument that a "faithful application" of *Meadows* here supports removal also fails. Br. at 32-34. 3M tries to claim that its "discrete acts" of supplying consumer-grade PFAS to paper mills is not the heart of the Town's complaint, just like no single overt act in *Meadows* constituted the heart of the State's conspiracy indictment against Meadows.

28

The Town's allegations against 3M center solely on its supply of consumer-grade PFAS to paper mills, including a paper mill across the street from the Town's water treatment facility. The entire theory of the Town's case is based on consumer-grade PFAS pollution emanating from these paper mills. This is, by definition, the "heart" of the Town's complaint. Indeed, in *Meadows* this Court cited with approval *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 234 (4th Cir. 2022) in the context of looking to the "heart" of a complaint. *Meadows*, 88 F.4th at 1344. In *Baltimore*, the Fourth Circuit rejected the very argument 3M makes here – instead of looking at a complaint piecemeal, it must be "read as a whole" to focus on the claims on which the plaintiffs base their allegations. *Baltimore*, 31 F.4th at 233. And in this case, the Town clearly bases its allegations on 3M's supply of consumer-grade PFAS to paper mills. *Meadows* (and *Baltimore*) are squarely at odds with 3M's tortured interpretation of the Town's complaint.

### C. The Town's express, unambiguous AFFF disclaimer severs the causal nexus between the Town's charged conduct and any actions 3M took under federal authority

Not only do the "heart" and "gravamen" of the complaint make clear this case is not about 3M's military-grade AFFF, the Town's express disclaimer of relief from AFFF severs any purported causal nexus. 3M is not entitled to federal officer removal because it cannot meet the second element (that the charged conduct was carried out "for or relating to" the asserted official authority). 28 U.S.C. §

1442(a)(1). Admittedly, this element is met by showing a "connection or association" between conduct alleged and 3M's asserted federal authority. *Caver*, 845 F.3d at 1144. Yet even under this forgiving standard, because the Town disclaimed AFFF damages, there cannot be a "connection or association" between 3M's MilSpec AFFF and the Town's charged conduct.

The Town's claims are neither "for" nor do they "relate to" 3M's actions under federal authority. "If a plaintiff renounces such claims, then a defendant is not entitled to 'a federal forum' in which 'to raise a defense arising out of his official duties,' 'because such a defense pertains to claims that simply do not exist.'" *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (first quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)); then quoting *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1364 (S.D. Fla. 2016)).

1.  Numerous courts have remanded cases based on similar disclaimers

This Circuit has not addressed head on whether an express waiver of claims (such as the Town's) severs a causal nexus with a purported federal officer defense. However, other courts have consistently granted motions to remand where the plaintiff makes a specific disclaimer. *Batchelor*, 185 F. Supp. 3d at 1363.

Plaintiffs across the country have brought state-law claims against 3M for its non-AFFF PFAS pollution. And, just like here, 3M removed many of those cases based on federal officer jurisdiction. Multiple district courts remanded those cases,

finding the disclaimers eliminated any connection between the plaintiffs' claims and 3M's manufacture of military-grade AFFF. *See Connecticut v. EIDP, Inc.,* No. 3:24-CV-239 (SRU), 2024 WL 5135601, at *4 (D. Conn. Dec. 17, 2024) *appeal pending*, No. 25-11 (2nd Cir.) (holding that both the "causal nexus" and the "colorable federal defense" prongs of the federal officer removal test were both resolved in plaintiff's favor due to the disclaimer of any relief stemming from any form of AFFF); *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 227 (D.N.H. 2023), *aff'd on other grounds*, 132 F.4th 556 (1st Cir. 2025) (holding that the plaintiff's disclaimer of any recovery for contamination resulting from 3M's production of AFFF was "effective and eliminates the connection" between the plaintiff's claims and 3M's production of MilSpec AFFF for the U.S. military); *Maine v. 3M Co.*, No. 2:23-CV-00210-JAW, 2023 WL 4758816, at *10 (D. Me. July 26, 2023), *appeal pending*, No. 23-1709 (1st Cir.) (holding that the plaintiff's "express, unambiguous, and plain" AFFF disclaimer was "effective to justify a remand order.").

3M claims the *Maine* and *New Hampshire* decisions were "discredited" by *Express Scripts*. Br. at 44. This is simply incorrect. In *Express Scripts*, the Commonwealth of Puerto Rico sued Caremark for inflating insulin prices through rebate negotiations, and the court credited "Caremark's theory of the case that its federal and non-federal work is *indivisible* based on the way it negotiates rebates for the federal government and private clients simultaneously." *Express Scripts*, 119

31

F.4th at 194 (emphasis added). Caremark alleged that it jointly negotiated rebates on behalf of all clients simultaneously, so it was "impossible to sever what the Commonwealth's residents paid between Caremark's negotiations for FEHBA [Federal Employee Health Benefits Act] versus non-FEHBA plans." *Id.* at 183. Therefore, despite Caremark disclaiming "relief relating to any federal program … or any contract related to a federal program," the *Express Scripts* court held that "the disclaimer did not eliminate the possibility that the Commonwealth would recover for Caremark's official acts." *Id.* at 181-82, 194.

Here, however, 3M's manufacture of military-grade AFFF is entirely distinct from its manufacture and supply of consumer-grade PFAS for use in paper mills. The Town disclaims "any relief for contamination or injury related to [AFFF]." JA1-2 ¶ 12. It is therefore impossible for 3M to be held liable for any conduct connected to its production of AFFF at the direction of the U.S. military, thus rendering irrelevant any question about the scope of what 3M did under federal authority.

The disclaimer in *Express Scripts* was not valid because the disclaimed federal conduct was indivisible from Caremark's non-federal conduct. Here, the disclaimed conduct (3M's production of MilSpec AFFF for specific military facilities) is distinct from the conduct for which the Town seeks to hold 3M liable (3M's supply of consumer-grade PFAS to specific paper mills). *Cf. Maryland v. 3M Co.*, 130 F.4th

380, 395-396 (4th Cir. 2025) (Floyd, J., dissenting) (distinguishing disclaimer in *Express Scripts* from AFFF disclaimer).

Moreover, other circuits have affirmed remand orders based on disclaimers like the Town's:

**Third Circuit:** *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2022) (rejecting defendants' argument they were entitled to federal officer removal because plaintiffs disclaimed any damages stemming from emissions caused by fuel provided to the federal government).

**Fourth Circuit:** *Wood v. Crane Co.*, 764 F.3d 316, 321 (4th Cir. 2014) (disclaimer in plaintiff's amended complaint had "real effect" because it "expressly disclaimed any damages" for valves defendant had produced for the military).

**Ninth Circuit:** *Young v. Tyco Fire Prod., LP*, No. 21-15912, 2022 WL 486632, at *2 (9th Cir. Feb. 17, 2022) (affirming remand because defendant's alleged federal involvement with MilSpec AFFF was simply an "alternative theory of causation" that the plaintiffs had "expressly disavowed.").

**D.C. Circuit:** *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 156-57 (D.C. Cir. 2023) (District of Columbia's statement that it "w[ould] not seek damages" for overuse of fossil fuels, and "would seek only those damages associated with misrepresentations [by defendants]," meant that there was "no link" between

defendants' extraction of fossil fuels under federal leases and "the damages at issue in this lawsuit").

<u>2. 3M's arguments to ignore the Town's disclaimer are without merit</u>

3M dismisses the Town's disclaimer as a "bald-faced attempt to evade federal jurisdiction" through "artful pleading." Br. at 43. 3M also offers up several cases to demonstrate that disclaimers cannot defeat federal officer removal. Br. at 39-41. Both arguments will be addressed, and refuted, in turn.

> a. *The Town's express, specific disclaimer is a targeted disclaimer of claims, not jurisdiction*

"Artful pleading disguises federal claims as state ones." *City of Hoboken*, 45 F.4th at 713 (citing § 3722.1 *Removal Based on Federal-Question Jurisdiction— Removal Based on Artful Pleading*, 14C Fed. Prac. & Proc. Juris. § 3722.1 (Rev. 4th ed.)). "[C]ourts recognize a distinction between artful pleading for purposes of circumventing federal officer jurisdiction, and express disclaimers of the claims that serve as the grounds for removal under Section 1442(a)(1)." *Dougherty v. A O Smith Corp.*, 2014 WL 3542243, at *10 (D. Del. July 16, 2014). Instances of artful pleading to circumvent federal officer jurisdiction include where a disclaimer "(1) generally purported to waive all federal claims based on boilerplate language; or (2) disavowed claims based on a defendant's acts or omissions carried out under color of office, but the plaintiff, nonetheless, sought to recover based on a defendant's official acts." *Batchelor*, 185 F. Supp. 3d at 1363 (cleaned up). Courts, however, have

"consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." *Dougherty*, 2014 WL 3542243, at *10.[9]

All the Town's causes of actions are state-law claims. There are no federal claims to disguise. And here, the Town's disclaimer is specific because it excludes by name any claims based on AFFF, rather than "boilerplate" language to simply waive *all* claims giving rise to *any* theory that *could* be the basis for federal officer jurisdiction. By definition, Town's disclaimer is not "artful pleading."

*Delaware v. BP Am. Inc.* further supports the Town's disclaimer here. 578 F. Supp. 3d 618 (D. Del. 2022). There, the plaintiff brought an action in state court against fossil fuel companies, alleging only state-law claims. In its complaint, the plaintiff "expressly disclaimed any 'injuries arising on federal property and those that arose from Defendants' provision of fossil fuel products to the federal

---

[9] *See also, e.g., Young,* 2022 WL 486632, at *1-2 (granting remand based on plaintiffs' express disclaimer that they were not asserting any MilSpec AFFF-related claims, so that Defendant's "propose[d] . . . alternate theory of causation" was "expressly disavowed"); *Hayden v. 3M Co.*, 2015 WL 4730741, at *4 (E.D. La. Aug. 10, 2015) (remanding asbestos case because plaintiff disclaimed any relief for exposure during Navy service, which was the only ground for federal officer removal, and stating that the disclaimer was "dissimilar from other invalid disclaimers that merely attempted [to] circumvent federal jurisdiction."); *Kelleher v. A.W. Chesterton Co.,* No. 15–CV–893–SMY–SCW, 2015 WL 7422756, at *3 (S.D.Ill. Nov. 23, 2015) (remanding asbestos case where "[i]n the complaint and the notice of disclaimer, [the plaintiff] has made clear statements that his claims [based on asbestos exposure] do not include any work performed while in the military or on military machinery").

35

government.'" *Id*. at 635. Just like 3M here, defendants in *Delaware* argued the disclaimer was ineffective because "such attempts at artful pleading to circumvent federal officer removal by the use of jurisdictional disclaimers have generally failed." *Id*. (internal quotations omitted). The *Delaware* court found the disclaimer was effective because it was not a broad "jurisdictional disclaimer," but was instead a "claim disclaimer" targeting specific claims upon which federal officer removal was based. *Id.* at 634-35.

Just as in *Delaware*, the Town's disclaimer is a "claim disclaimer" specifically targeting claims or defenses related to AFFF. Such a targeted and express disclaimer is the kind that courts routinely recognize as severing any connection between the plaintiff's claims and conduct allegedly taken at a federal officer's direction.

### b. 3M's cited cases are distinguishable

In support of its disclaimer argument, 3M cites several cases: *Baker v. Atl. Richfield Co.,* 962 F.3d 937 (7th Cir. 2020); *People ex rel. Raoul v. 3M Co.,* 111 F.4th 846 (7th Cir. 2024); *Maryland v. 3M Co.,* 130 F.4th 380 (4th Cir. 2025); and *Gov't of Puerto Rico v. Express Scripts, Inc.,* 119 F.4th 174 (1st Cir. 2024).[10] Br. 27-

---

[10] The disclaimer at issue in *Express Scripts* is factually distinguishable from the Town's here, as discussed in Section III.C.1., pp. 30-33, *supra*.

31. Beyond the fact that these cases are out-of-circuit and not binding precedent, each one is factually distinguishable.

*Baker*: In *Baker*, the complained-of contaminants—lead and arsenic—were components of Freon-12 that defendants produced for the federal government during World War II. *See Baker*, 962 F.3d at 945 n.3. The plaintiffs sought to disclaim relief only from harm during the defendants' wartime production and leave open only the possibility of recovery for lead and arsenic pollution generated outside that time frame. *Id.* at 945. The *Baker* court explained that the plaintiffs could not "have it both ways," seeking recovery for exposure to lead and arsenic, but simultaneously disclaiming recovery for a defendant's activities that allegedly led to their exposure to lead and arsenic. *Id.* at 945 n.3.

Here, the Town is not trying to "have it both ways." *See id.* 3M's only alleged federal activity was its past production of military-grade AFFF, but the Town's complaint unambiguously disclaims recovery for any contamination from AFFF. The ineffective disclaimer in *Baker* is materially different from the Town's because it completely disclaims *all* relief from *all* AFFF and is consistent because it *only* seeks recovery from consumer-grade PFAS. In *Baker*, the plaintiffs sought recovery from the *same* contaminants, made in the *same* production facility, but sought only to carve out a specific *time frame* (*i.e.*, wartime production).

37

But the Town's AFFF disclaimer is quite different. Unlike the plaintiffs in *Baker*, the Town seeks to limit its recovery to an entirely *different* product, manufactured at *different* 3M facilities, supplied to *different* locations (*i.e.*, paper mills) from those related to 3M's production of AFFF. The Town seeks to recover from harm resulting from a wholly discrete category of consumer products (non-AFFF PFAS used in paper mills) which is entirely unrelated to 3M's federal conduct of manufacturing firefighting foam to military specifications. Therefore, the Town's disclaimer is factually different than the one invalidated in *Baker*. *See Maryland*, 130 F.4th at 394 (Floyd, J., dissenting).

<u>*Raoul:*</u> As a threshold issue, and as the Town argued to the district court (Plaintiff's Reply in Support of Motion to Remand, Doc. 58 at 1-6), *Raoul* (which did not find jurisdiction existed) does not stand for the proposition that 3M repeatedly claims it does. *Raoul* held that 3M could not demonstrate that it was entitled to federal officer removal because the plaintiff conceded on appeal that it would only recover from 3M where 100% of the PFAS pollution present was from non-AFFF compounds. Therefore, 3M could not demonstrate that it had a colorable defense entitling it to federal officer jurisdiction because the government contractor defense was "wholly irrelevant" under the plaintiff's theory of recovery. *Raoul*, 111 F.4th 846 at 849. This was the entirety of the *Raoul* court's holding. *Roaul* did *not* discredit the plaintiff's disclaimer, as 3M argues it does.

*Maryland:* 3M touts *Maryland*, a single split-panel decision from the Fourth Circuit, as its trump card. The Town readily acknowledges that the facts of its case and *Maryland* are quite similar. But there is a key – and fatal – factual difference. In *Maryland*, the majority based its holding on the fact that 3M affirmatively alleged that it supplied AFFF to the pollution sites in question. Here, however, 3M has never alleged that its MilSpec AFFF was supplied to or used at Maxwell.

*Maryland* involved an appeal about whether suits brought by two states against 3M for its non-AFFF pollution could be removed based on the federal officer removal statute despite the states' AFFF disclaimer. The district court determined that the disclaimers were dispositive. On appeal, the *Maryland* majority vacated the remand, holding that the states' AFFF disclaimers were not effective to sever 3M's claimed nexus. *Maryland*, 130 F.4th at 389. The *Maryland* court determined that 3M had sufficiently established a plausible nexus between its actions and the states' charged conduct, and the court credited 3M's theory of removal since it could "plausibly infer that 3M's Military AFFF contributed to at least a 'portion of their relevant conduct.'" *Id.* at 391 (citing *Baker*, 962 F.3d at 945).

1. *In this case, the factual record shows that 3M has* never *asserted that* its *AFFF was supplied to the military facility in question, a key difference from* Maryland

In *Maryland*, the plaintiff states pleaded "general PFAS contamination near military bases *where 3M alleges it sold Military AFFF*." *Maryland*, 130 F.4th at 390

("Both States plead general PFAS contamination near military bases *where 3M alleges it sold Military AFFF. On this record*, we have no trouble considering as plausible 3M's allegations…") (emphasis added). *Based specifically on this record*, the *Maryland* majority held that 3M's allegations were plausible that some of the plaintiffs' complained-of PFAS contamination may have come from 3M's production of AFFF. *Id*.

But, as detailed above,[11] 3M has never alleged that it ever supplied its MilSpec AFFF to Maxwell; never alleged that any AFFF ever left Maxwell to pollute the Alabama River; and never alleged that any potential AFFF pollution somehow traveled miles downstream the Alabama River to eventually commingle with the non-AFFF PFAS pollution present in the Town's water source.

3M has never plausibly alleged a causal nexus between its actions (manufacturing military-grade AFFF) and the Town's complained-of conduct (consumer-grade PFAS pollution from paper mills). 3M cannot assert a federal defense for a product it has neither shown it supplied to Maxwell nor is even present at the Town's water supply. Based on the key factual differences between *Maryland* and the instant case, this Court should treat the Town's AFFF disclaimer as dispositive, thus severing the causal nexus between the Town's charged conduct and any acts 3M took under federal authority.

---

[11] Section III.A.1., pp. 16-20 *supra*.

40

## 2.  *3M simply ignores the arguments raised in* Maryland's *dissent*

Despite it being an out-of-circuit decision, 3M cites *Maryland* as dispositive proof that this Court should ignore the Town's AFFF disclaimer. Br. at 26-27. 3M argues that, like in *Maryland*, this Court should credit as true 3M's every aspect of its theory of removal. And, because AFFF pollution from Maxwell could just as plausibly be a source of the Town's complained-of PFAS pollution, the AFFF and non-AFFF pollution present at the Town's water source is so inextricably intertwined that any attempt by the Town to separate AFFF claims from non-AFFF claims via a disclaimer cannot work.

But, in addition to the key differences here and in *Maryland*, 3M ignores the lengthy *Maryland* dissent which raises key issues with the majority's decision. Oddly, in its brief 3M never even addresses the dissent's arguments or reasoning, hoping this Court would blindly accept the majority's holding.

The dissent's arguments, however, cannot be ignored. Should this Court reject the Town's contention that *Maryland* is factually dissimilar, the Town urges this Court to follow the reasoning of the *Maryland* dissent.

The *Maryland* dissent acknowledged that the federal officer removal statute serves the important function of protecting against interference with federal operations if those acting under federal authority were able to be brought to trial in state court on state-law offenses. *Maryland,* 130 F.4th at 394 (Floyd, J., dissenting).

41

And the dissent acknowledged that the statute must be "liberally construed" and that the "ordinary 'presumption against removal' does not apply." *Id.*

Even though courts have recognized that a "broad range of conduct" satisfies the causal nexus requirement for purposes of federal officer removal, the dissent warned that the removal statute should not be read "to sweep so broadly to include the States' non-AFFF claims." *Id.*

The dissent found that *Baker*, the key basis for the *Maryland* majority's ruling, was factually distinguishable and should not apply. Unlike the *Baker* plaintiffs, the States in *Maryland* "seek to recover from harm resulting from a discrete category of consumer products unrelated to 3M's federal conduct of manufacturing firefighting foam to military specifications." *Id.*

Looking at decisions from the First and Fifth Circuits in addition to its own Circuit, the dissent noted that removal was proper only when the link between a defendant's actions and a plaintiff's charged conduct was "stronger" than the one claimed by 3M in *Maryland*.[12] *Id.* at 395. The common denominator between those

---

[12] *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (rejecting the plaintiff's argument that the asbestos exposure did not meet the nexus requirement because the defendant "performed the refurbishment and, allegedly, the installation of asbestos pursuant to directions of the U.S. Navy."); *Express Scripts*, 119 F.4th at 181–82 (holding there was no way to separate plaintiff's claims resulting from defendant's private conduct from defendant's conduct related to federal activities); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017) (finding sufficient nexus between defendant's actions installing boilers and plaintiff's claims of asbestos exposure from the boilers because the U.S. Navy

decisions, the dissent found, was that federal officer removal was appropriate only when the "complained-of conduct could not be separated from the relevant federal authority." *Id.*

In *Maryland*, however, 3M sought to remove the States' claims seeking recovery for pollution from products that 3M made and sold on the consumer market just because some of its AFFF pollution may be commingled with its consumer PFAS in the environment. The dissent characterized this nexus as "too tenuous" for removal. *Id.* at 396. "[W]hile some of the pollution may be commingled, that does little to alter the fact that the non-AFFF PFAS pollution is caused by 3M's manufacturing activities that are entirely unrelated to its work as a government contractor." *Id.* at 395.

Because the States' complained-of conduct (3M's manufacture and sale of consumer-grade PFAS) was easily separated from 3M's claimed actions under federal authority (3M's manufacture of military-grade AFFF), the dissent found the majority's reading of the nexus/connection requirement too broad. Under the majority's reading, the dissent wrote, the removal statute could be used so broadly "as to move toward foreclosing state courtrooms to plaintiffs bringing state-law claims against defendants, when those defendants in turn identify even the slightest

---

dictated the content and form of warnings that defendant used when installing the boilers).

connection between the claims at issue at work they have performed as government contractors." *Id.* at 396.

Given the "scant connection" between 3M's production of consumer PFAS products and its AFFF production, the dissent reasoned that the States' claims did not sufficiently relate to 3M's acts performed for the federal government. *Id.* Instead, the dissent argued, *Maryland* should be heard in state court, where 3M could still raise its federal defense and have any liability arising from AFFF apportioned appropriately. *Id.* at 395 (citing *City of Hoboken,* 45 F.4th at 705 ("[o]ur federal system trusts state courts to hear most cases—even big, important ones that raise federal defenses.").

The dissent's reasoning applies with equal force here. Even assuming that this Court takes 3M's claims at face value – that some of the AFFF present at Maxwell was supplied by 3M *and* that some of that AFFF from Maxwell leached into the Alabama River and made its way miles downstream to the Town's water source – the "scant connection" between the Town's charged conduct and 3M's actions is simply "too tenuous" to support removal.

The Town's complaint, and what it must prove at trial, is "overwhelmingly" focused on PFAS pollution from paper mills ECF No. 3260 (J.P.M.L. Feb. 12, 2025) at 3. This case is a "non-AFFF case." *Id*. at 2. The Town's complained-of harm relates to 3M's manufacture of consumer-grade PFAS used at paper mills. This is

wholly discrete – and readily separated from – 3M's production of MilSpec AFFF. Even if some AFFF actually attributable to 3M is commingled with non-AFFF PFAS in the Town's water, that still has no bearing on the fact that 3M's non-AFFF PFAS pollution is caused by 3M's consumer-grade manufacturing activities which are entirely unrelated to its work as a government contractor.

Allowing 3M to remove this case based on such a "scant connection" would warp the removal statute beyond all recognition. Even though the removal statute may be liberally construed, its "broad language is not limitless." *Watson*, 551 U.S. at 147.

The *Maryland* majority's overly broad reading of the removal statue effectively renders it "limitless" by allowing defendants to remove cases based on even the most remote theoretical connection to federal activity. The Town urges this Court not to make the same mistake.

### IV. 3M Does Not Have a "Colorable" Federal Defense

3M fails to meet the third prong of federal officer removal – that it has asserted a "colorable defense." *Caver*, 845 F.3d at 1142. A federal defense is only "colorable" when it is "legitimate and [could] reasonably be asserted, given the facts presented and the current law." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 815 (3d Cir. 2016) (cleaned up). Determining whether a defendant has a colorable federal defense in this context requires a court to assess "what kind of claims [the plaintiff's] complaint

alleges." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012). The "case is removable" only if the defendant has a colorable defense to any claim alleged in the complaint. *Id.*

### A. 3M's federal defense rests solely on products and claims not at issue in this case

As both the district court and the JPML found, the Town's claims simply do not relate to MilSpec AFFF.[13] 3M's federal defense is premised on the government contractor defense in *Boyle*. JA1 ¶ 2. Because the purpose of the government contractor defense is to protect military contractors from "[l]iability for design defects in military equipment," *Boyle*, 487 U.S. at 512, 3M can only raise this defense for its supply of military equipment. But no such equipment or products are at issue here.

Simply put, the issues presented by a federal contractor defense, such as whether 3M followed detailed federal specifications or whether 3M warned the government of the dangers of AFFF, will never be implicated because none of the Town's claims relate to 3M's manufacture of military-grade AFFF.

A federal defense is colorable unless it is "'immaterial' … or 'wholly insubstantial…'" *Moore,* 25 F.4th at 37 (quoting *Latiolais,* 951 F.3d at 297). The

---

[13] Section III.B.1., pp. 23-29 *supra.*

federal officer removal statute's purpose is to protect those acting under federal authority from "local prejudice." *State of Maryland v. Soper*, 270 U.S. 9, 32 (1926).

3M never claims that its government contractor defense could apply to the consumer-grade PFAS used at paper mills, which are actually at issue in this case; any federal contractor defense that 3M could raise would relate only to its production of military-grade AFFF. Likewise, 3M will not face any "local prejudice" for harms from AFFF because the Town has expressly disavowed any such claims. 3M's federal contractor defense is, by definition, "immaterial" and "wholly insubstantial" and is therefore not colorable.

Because 3M cannot be held liable for AFFF in this case, it cannot raise a defense to liability for AFFF. Allowing 3M to premise its federal contractor defense on the basis of its production of MilSpec AFFF – a product wholly irrelevant to this case – "would affirm [the] right to assert a defense against a claim that does not exist." *Kelleher,* 2015 WL 7422756, at *2.

### B. 3M does not assert a *federal* defense – instead, it has simply put forth an ordinary *factual* defense of an alternative theory of causation, which can and should be resolved in state court

The Town's claims arising from consumer-grade PFAS used at paper mills are distinct from 3M's past production of MilSpec AFFF. To sidestep this problem for its removal bid, 3M argues this case presents "challenging causation" and "apportionment" questions based on its plausible allegations that MilSpec AFFF

may have "commingled" with non-AFFF PFAS. Br. at 28. Those questions of causation and apportionment to discern the degree of pollution from AFFF and non-AFFF products, 3M argues, must be resolved by a federal factfinder in federal court. *Id.*

3M's argument fails. 3M conflates an assertion of a *factual* defense with a *federal* defense. The "causation issues" of potential commingling of AFFF and non-AFFF PFAS don't raise a colorable federal defense that it cannot be held liable for non-AFFF PFAS. *Connecticut*, 2024 WL 5135601, at *5 (in PFAS case with AFFF disclaimer, the "court nonetheless will *not* have to determine, and the federal contractors will *not* have to prove, whether they acted under the direction of the government … [T]he factfinder's inquiry relevant to AFFF will only be whether, and perhaps in what amount, AFFF is present at any claimed site of contamination") (emphasis added).

Instead, 3M is raising an ordinary, factual defense that it is difficult to differentiate between AFFF PFAS and non-AFFF PFAS present in the Town's water supply.[14] 3M may be able to assert a *federal* defense if 3M's production of MilSpec AFFF pursuant to federal guidelines were an issue, or whether 3M appropriately

---

[14] In its brief 3M erroneously claims that the factual record before this Court demonstrates "[t]he same PFAS compounds are chemically indistinguishable in the environment regardless of their source." Br. at 10. The actual document cited by 3M, however, does not allege that.

48

warned the government about the dangers of its military-grade AFFF. But no such claims are at issue in this case.

Defendants, like 3M, cannot remove a case based on alleged federal involvement in an "alternative theory of causation" that a plaintiff has "expressly disavowed," like the Town has here. *Young*, 2022 WL 486632, at *2.

The "causation questions" 3M raises in its brief would simply be a *factual* defense premised on alternative causation. Determining the extent to which the Town's PFAS pollution is from consumer-grade PFAS and military-grade AFFF is a question of causation 3M can raise as a defense. Even so, 3M will not be called to defend its actions in following government specifications when it produced AFFF, nor its failure to warn the U.S. government about harms related to AFFF. Therefore, 3M will never need to raise a *federal* defense that it was acting as a government contractor.

Moreover, questions of causation, even if "complex," are routinely remanded when those questions do not require a state court to address a federal defense. And that is precisely the case here, with the Town's claims arising only from consumer-grade PFAS used in paper mills. *See City of Hoboken*, 45 F.4th at 713 (rejecting federal officer removal even though the defendants "say that these suits cannot separate harm caused by military fuel use from harm caused by civilian fuel use"); *Young*, 2022 WL 486632, at *2 (no federal officer jurisdiction because plaintiffs

"expressly disavowed" contamination from MilSpec AFFF, and although defendant presented MilSpec AFFF in groundwater as an "alternative theory of causation," the case was remanded to state court); *Delaware*, 578 F. Supp. 3d at 635 n.20 (holding that the argument that plaintiff cannot "factually distinguish between its alleged injuries resulting from the combustion of fuels produced at the government's behest, and those resulting from the combustion of fuels sold to any other customer" as appropriate to resolve in state court on remand).

3M claims that because its consumer-grade PFAS and its military-grade AFFF contain the same PFAS compounds (PFOS), the two are essentially "indivisible." Br. at 13. But even if the PFAS contamination is "indivisible," courts routinely grant motions to remand in cases presenting a classic indivisible injury – harm from asbestos – when a plaintiff disclaims one source of exposure. *See*, *e.g., Batchelor*, 185 F. Supp. 3d at 1364; *Hayden*, 2015 WL 4730741, at *3; *Kelleher*, 2015 WL 7422756, at *1-2; *Heilner v. Foster Wheeler LLC*, No. 1:22-CV-00616, 2022 WL 3045838 at *3 (M.D. Pa. Aug. 2, 2022) (granting remand despite defendant's argument that plaintiffs "cannot disclaim any particular asbestos exposure based on the indivisible nature of [plaintiff's] injury.").

### C. 3M does not satisfy the *Boyle* requirements

The federal defense 3M seeks to employ in this case – that it is a government contractor for the work it did manufacturing military-grade AFFF – must satisfy the

50

three-part test set forth under *Boyle*: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *In re Aqueous Film-Forming Foams Prods. Liab. Litig*., 2022 WL 4291357, at *4 (quoting *Boyle*, 487 U.S. at 512-13).

3M removed this case on the basis that it manufactured AFFF "in accordance with rigorous military specifications." JA1 ¶¶ 2, 22. However, the AFFF MDL court has expressly ruled that "*as a matter of law* that the AFFF MilSpec is *not* a reasonably precise specification under the first prong of *Boyle*." *In re Aqueous Film-Forming Foams Prods. Liab. Litig*., 2022 WL 4291357, at *8 (emphasis added). The MDL court has made clear that the U.S. government did not require 3M to use any specific C-8 chemistry or formula containing PFOS in its production of MilSpec AFFF. *Id* at *6-7.

The work 3M did in manufacturing MilSpec AFFF did not follow reasonably precise specifications, thereby failing to meet the requirements set forth in *Boyle* to assert a valid government contractor defense. Because it cannot assert a valid government contractor defense, 3M has no colorable federal defense and cannot remove this case under § 1442(a)(1).

51

## CONCLUSION

For these reasons, the Town respectfully requests this Court affirm the district court's order granting the Town's motion to remand.

Dated: July 16, 2025                    Respectfully submitted,

                                         */s/ Matthew R. Griffith*

Elliot S. Bienenfeld                    Matthew R. Griffith
BEASLEY, ALLEN, CROW,                   BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.           METHVIN, PORTIS & MILES, P.C.
2839 Paces Ferry Road #400              301 St. Louis Street
Atlanta, GA 30339                       Mobile, AL 36602
(404) 751-1162                          (251) 308-1515
elliot.bienenfeld@beasleyallen.com      matt.griffith@beasleyallen.com

*Counsel for Plaintiff-Appellee*
*The Town of Pine Hill, Alabama*

52

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type style, and type-volume limitations. This brief was prepared using a proportionately spaced type (Times New Roman, 14-point font). Exclusive of the portions exempted by Federal Rules of Appellate Procedure 32(f), this brief contains 11,747 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

Dated: July 16, 2025                    Respectfully submitted,

                                         /s/ Matthew R. Griffith

                                        Matthew R. Griffith
                                        BEASLEY, ALLEN, CROW, METHVIN,
                                        PORTIS & MILES, P.C.
                                        301 St. Louis Street
                                        Mobile, AL 36602
                                        matt.griffith@beasleyallen.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2025, I caused a true and correct copy of this brief to be filed electronically through the Court's CM/ECF system, which will send a notice of filing to all registered users.

 */s/ Matthew R. Griffith*

Matthew R. Griffith
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
301 St. Louis Street
Mobile, AL 36602
matt.griffith@beasleyallen.com