No. 25-10746

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

THE TOWN OF PINE HILL, ALABAMA

*Plaintiff-Appellee*,

v.

3M COMPANY,

*Defendant-Appellant*,

DAIKIN AMERICA, INC., et al.,

*Defendants*.

---

On Appeal from the United States District Court for the Southern District of
Alabama, No. 2:24-cv-00284-KD-N

---

**BRIEF OF AMICI CURIAE ON BEHALF OF THE CITY OF MUSCLE
SHOALS, ALABAMA; COLBERT COUNTY, ALABAMA; THE CITY OF
IRONDALE, ALABAMA; THE MAYOR AND ALDERMEN OF THE CITY
OF SAVANNAH, GEORGIA; AND THE WATER WORKS BOARD OF
THE CITY OF OPELIKA, ALABAMA, IN SUPPORT OF PLAINTIFF-
APPELLEE THE TOWN OF PINE HILL, ALABAMA'S ANSWER BRIEF**

Jeffrey E. Friedman
FRIEDMAN, DAZZIO & ZULANAS, P.C.
3800 Corporate Woods Drive
Birmingham, Alabama 35242
Phone: (205) 278-7000
jfriedman@friedman-lawyers.com
*Attorney for Amici Curiae*

(Attorneys for Amici Curiae continued on next page)

FRIEDMAN, DAZZIO & ZULANAS, P.C.        Lee T. Patterson
3800 Corporate Woods Drive              Matt D. Conn
Birmingham, Alabama 35242               Jeffrey "Jay" E. Friedman, Jr.
Phone: (205) 278-7000                   Madison M. Gitschier
lpatterson@friedman-lawyers.com         Ethan R.Wright
mconn@friedman-lawyers.com              *Attorneys for Amici Curiae*
jayfriedman@friedman-lawyers.com
mgitschier@friedman-lawyers.com
ewright@friedman-lawyers.com

*Additional Attorneys of Record for Amici Curiae*

2906 Canterbury Road                    Glenn Murdock
Birmingham, Alabama 35223               *Attorney for Amici Curiae The City of*
mrdck@aol.com                           *Muscle Shoals, Alabama, and Colbert*
                                        *County, Alabama*


BEFORD, ROGERS,                         Jeffrey L. Bowling
BOWLING & MCREYNOLDS, P.C               John A. McReynolds
P.O. Box 669                            *Attorney for Amici Curiae The City of*
Russellville, Alabama 35653             *Muscle Shoals, Alabama, and Colbert*
Phone: (256) 332-7821                   *County, Alabama*
jeffbrbpc@bellsouth.net
johnbrbpc@bellsouth.net


BLACK & HUGHSTON, P.C.                  D. Edgar Black
406 Avalon Avenue                       *Attorney for Amici Curiae The City of*
Muscle Shoals, Alabama 35661            *Muscle Shoals, Alabama, and Colbert*
Phone: (256) 383-5707                   *County, Alabama*
edgar.black@blackandhughston.com




OFFICE OF THE CITY ATTORNEY             R. Bates Lovett
2 East Bay Street                       *Attorney for Amicus Curiae*
City Hall, 3rd Floor GA 30161           *The Mayor and Aldermen of*
Savannah, Georgia 31401                 *the City of Savannah, Georgia*
Phone: (912) 525-3131
blovett@savannahga.gov

HARRIS LOWRY MANTON LLP
410 East Broughton Street
Savannah, Georgia 31401
Phone: (912) 651-9967
jeff@hlmlawfirm.com
steve@hlmlawfirm.com
jed@hlmlawfirm.com
molly@hlmlawfirm.com
cdonahue@hlmlawfirm.com

Jeffrey R. Harris
Stephen G. Lowry
Jed D. Manton
Madeline E. McNeeley
Cole F. Donahue
*Attorneys for Amicus Curiae*
*The Mayor and Aldermen of*
*the City of Savannah, Georgia*

FRANKLIN LAW, LLC
2919 River Drive
Thunderbolt, Georgia 31404
Phone: (912) 335-3305
rebecca@franklinlawllc.com

Rebecca Franklin Harris
*Attorney for Amicus Curiae*
*The Mayor and Aldermen of*
*the City of Savannah, Georgia*

WALLACE JORDAN RATLIFF & BRANDT LLC
800 Shades Creek Parkway, Suite 400
Birmingham, Alabama 35209
Phone: (205) 870-0555
adanielson@wallacejordan.com

April Danielson
Kimberly West
Lauren Brasher
*Attorneys for Amicus Curiae*
*The City of Irondale, Alabama*

**No. 25-10746**
**The Town of Pine Hill, Alabama v. 3M Company, et al.**

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26.1, the undersigned hereby certifies that the following is a list of persons and entities who have an interest in the outcome of this case:

1.    3M Company, *Appellant*;

2.    Aquart, Nicholas A., *counsel for Appellant*;

3.    Balch & Bingham, *counsel for Daikin America, Inc.*;

4.    BASF Corporation, *co-defendant*;

5.    Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., *counsel for Appellee*;

6.    Beasley, Jere L., *counsel for Appellee*;

7.    Bedford, Rogers, Bowling & McReynolds, P.C., *counsel for proposed Amici Curiae The City of Muscle Shoals, Alabama, and Colbert County, Alabama*;

8.    Bienenfeld, Elliot, *counsel for Appellee*;

9.    Black, D. Edgar, *counsel for proposed Amici Curiae The City of Muscle Shoals, Alabama, and Colbert County, Alabama*;

10.    Black & Hughston P.C., *counsel for proposed Amici Curiae The City of Muscle Shoals, Alabama, and Colbert County, Alabama*;

11.    Bowling, Jeffrey L., *counsel for proposed Amici Curiae The City of Muscle Shoals, Alabama, and Colbert County, Alabama*;

No. 25-10746
**The Town of Pine Hill, Alabama v. 3M Company, et al.**

12.    Bradley, Arant, Boult Cummings, *counsel for BASF Corporation*;

13.    Brasher, Lauren C., *counsel for proposed Amicus Curiae The City of Irondale, Alabama*;

14.    Clement & Murphy PLLC, *counsel for Appellant*;

15.    Clement, Paul D., *counsel for Appellant*;

16.    Colbert County, Alabama, *proposed Amicus Curiae*;

17.    Conn, Matthew David, *counsel for proposed Amici Curiae*;

18.    Corteva, Inc., *co-defendant*;

19.    Cozen O'Connor, *counsel for Solenis LLC*;

20.    Danielson, April B., *counsel for proposed Amicus Curiae The City of Irondale, Alabama*;

21.    Daikin America, Inc., *co-defendant*;

22.    Davis, Richard Eldon, *counsel for Solenis LLC*;

23.    Diab, David, *counsel for Appellee*;

24.    Dixon, Shannon, *co-defendant*;

25.    DLA Piper LLP US, *counsel for BASF Corporation*;

26.    Dubose, Kristi K, *District Judge*;

27.    Dupont De Nemours, Inc., *co-defendant*;

28.    EIDP, Inc., *co-defendant*;

No. 25-10746
**The Town of Pine Hill, Alabama v. 3M Company, et al.**

29. Estes, Allen McLean, *counsel for Daikin America, Inc.*;

30. Flachsbart, Elizabeth, *counsel for Daikin America, Inc.*;

31. Flax, Jillian, *counsel for Solenis LLC*;

32. Franklin Law, LLC, *counsel for proposed Amicus Curiae The Mayor and Aldermen of the City of Savannah, Georgia*;

33. Frazer, Greene, Upchurch & Baker, LLC, *counsel for Daikin America, Inc.*;

34. Friedman, Dazzio & Zulanas, P.C., *counsel for proposed Amici Curiae*;

35. Friedman, Jeffrey E., *counsel for proposed Amici Curiae*;

36. Friedman, Jr., Jeffrey E., *counsel for proposed Amici Curiae*;

37. Gibson, Dunn & Crutcher, LLP, *counsel for Appellant*;

38. Gilchrist, Wesley B., *counsel for Appellant*;

39. Gitschier, Madison M., *counsel for proposed Amici Curiae*;

40. Goldman, Lauren R., *counsel for Appellant*;

41. Griffith, Matthew Ross, *counsel for Appellee*;

42. Harris, Jeffrey R., *counsel for proposed Amicus Curiae The Mayor and Aldermen of the City of Savannah, Georgia*;

43. Harris Lowry Manton, LLP, *counsel for proposed Amicus Curiae The Mayor and Aldermen of the City of Savannah, Georgia*;

No. 25-10746
**The Town of Pine Hill, Alabama v. 3M Company, et al.**

44.    Harris, Rebecca Franklin, *counsel for proposed Amicus Curiae The Mayor and Aldermen of the City of Savannah, Georgia*;

45.    Harrison, Mary Elizabeth, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

46.    Heller, James Harris, *counsel for Solenis LLC*;

47.    International Paper Company, *co-defendant*;

48.    Johnson, Andrew Burns, *counsel for BASF Corporation*;

49.    Johnson, John M., *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

50.    Jones Day, *counsel for Daikin America, Inc.*;

51.    Jones, Rhon E., *counsel for Appellee*;

52.    King, Gavin Floyd, *counsel for Appellee*;

53.    King, M. Christian, *counsel for Appellant*;

54.    Lankford, Ambria LaFaye, *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

55.    Lightfoot, Franklin & White, LLC, *counsel for Appellant, EIDP, Inc., the Chemours Company, Dupont De Nemours, Inc., Corteva, Inc.*;

56.    Lovett, Robert Bates, *counsel for proposed Amicus Curiae The Mayor and Aldermen of the City of Savannah, Georgia*;

**No. 25-10746**
**The Town of Pine Hill, Alabama v. 3M Company, et al.**

57.   Manton, Jed Davis, *counsel for proposed Amicus Curiae The Mayor and Aldermen of the City of Savannah, Georgia*;

58.   McNeeley, Madeline E., *counsel for proposed Amicus Curiae The Mayor and Aldermen of the City of Savannah, Georgia*;

59.   McReynolds, IV, John Andrew, *counsel for proposed Amici Curiae The City of Muscle Shoals, Alabama, and Colbert County, Alabama*;

60.   Montalto, Vincent John, *counsel for BASF Corporation*;

61.   Murdock, Glenn, *counsel for proposed Amici Curiae The City of Muscle Shoals, Alabama, and Colbert County, Alabama*;

62.   Nelson, Katherine P., *Magistrate District Judge*;

63.   Patterson, Lee T., *counsel for proposed Amici Curiae*;

64.   Pearson, Carla, *co-defendant*;

65.   Perry, Ken Law Firm, *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

66.   Perry, Kenneth Martin, *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

67.   Pierson Ferdinand, LLP, *counsel for proposed Amicus Curiae The Mayor and Aldermen of the City of Savannah, Georgia*;

No. 25-10746
**The Town of Pine Hill, Alabama v. 3M Company, et al.**

68. Pompey & Pompey, PC, *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

69. Pompey, William M., *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

70. Prater, Harlan I. IV, *counsel for Appellant*;

71. Price, Jeffrey Donald, *counsel for Appellee*;

72. Radney, William Larkin, IV, *counsel for Appellant*;

73. Riney, Shelby, *counsel for Solenis, LLC*;

74. Saywell, James Robert, *counsel for Daikin America, Inc.*;

75. Solenis, LLC; *co-defendant*;

76. Speegle, Clinton Timothy, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

77. Starnes & Atchison, LLP, *counsel for Solenis, LLC*;

78. Tayrani, Amir C., *counsel for Appellant*;

79. The Chemours Company, *co-defendant*;

80. The City of Irondale, Alabama, *proposed Amicus Curiae*;

81. The City of Muscle Shoals, Alabama, *proposed Amicus Curiae*;

82. The Mayor and Aldermen of the City of Savannah, Georgia, *proposed Amicus Curiae*;

No. 25-10746
**The Town of Pine Hill, Alabama v. 3M Company, et al.**

83.   The Town of Pine Hill, Alabama, *Appellee*;

84.   The Water Works Board of the City of Opelika, Alabama, *proposed Amicus Curiae*;

85.   Thompson, Amber Nicole, *counsel for Appellant*;

86.   Traeger, William H., III, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

87.   Tyree, Zachary, *counsel for Appellant*;

88.   Upchurch, Michael E., *counsel for Daikin America, Inc.*;

89.   Wallace, Jordan, Ratliff & Brandt, LLC, *counsel for proposed Amicus Curiae The City of Irondale, Alabama*;

90.   Webb, Steve, *co-defendant*;

91.   West, Kimberly R., *counsel for proposed Amicus Curiae The City of Irondale, Alabama*;

92.   Weyerman, Elizabeth, *counsel for Appellee*;

93.   Williams, Kayla R., *counsel for Appellant*;

94.   Wright, Ethan R., *counsel for proposed Amici Curiae*;

95.   Yeilding, Christopher Lynch, *counsel for Daikin America, Inc.*

**No. 25-10746**
**The Town of Pine Hill, Alabama v. 3M Company, et al.**

*Amici Curiae* further state that they are local governmental units and political subdivisions of the states of Alabama and Georgia, are not publicly held, are not publicly traded, have no subsidiary companies, and have no parent companies.

# TABLE OF CONTENTS

IDENTITY AND INTERESTS OF AMICI CURIAE……………………………...1

STATEMENT OF THE ISSUE……………………………………………………….3

SUMMARY OF ARGUMENT……………………………………………………….3

ARGUMENT…………………………………………………………………………7

I.    3M's reinterpretation of its "act" or "charged conduct" is inconsistent with this Court's precedent and should not be "credited" as true……………..8

    A. 3M's "act" for purposes of federal officer removal is defined by the core of Pine Hill's factual allegations, not 3M's reinterpretation of Pine Hill's legal claims…………………………….8

    B. 3M's reinterpretation of its relevant "act" improperly shifts the focus to the *result* of 3M's "charged conduct"—Pine Hill's injury……9

II.    3M's "causal nexus" analysis builds on the errors of its "act" analysis……..12

    A. Because 3M misdefined its relevant "act," its "causal nexus" analysis is inherently flawed……………………………………………12

    B. Other circuits have rejected similar attempts to artificially expand the "causal nexus" analysis…………………………………13

III.    This Court is not required to "credit" 3M's alternative factual theory as true………………………………………………………………………..15

CONCLUSION…………………………………………………………………....18

CERTIFICATE OF COMPLIANCE………………………………………………...19

CERTIFICATE OF SERVICE………………………………………………………20

i

# TABLE OF AUTHORITIES

## Cases

*Anne Arundel Cnty., Maryland v. BP P.L.C.*,
    94 F.4th 343 (4th Cir. 2024)…………………………………………5, 13–15

*Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
    25 F.4th 1238 (10th Cir. 2022)……………………………………………..13

*Caver v. Cent. Alabama Elec. Coop.*,
    845 F.3d 1135 (11th Cir. 2017)………………………………...4, 5, 9, 12, 16

*City & Cnty. of Honolulu v. Sunoco LP*,
    39 F.4th 1101 (9th Cir. 2022)……………………………………………13

*City of Hoboken v. Chevron Corp.*,
    45 F.4th 699 (3d Cir. 2022)……………………………………………...13

*City of Oakland v. BP PLC*,
    No. 22-16810, 2023 WL 8179286 (9th Cir. Nov. 27, 2023)………………13

*Cnty. of San Mateo v. Chevron Corp.*,
    32 F.4th 733 (9th Cir. 2022)……………………………………………..13

*D.C. v. Exxon Mobil Corp.*,
    89 F.4th 144 (D.C. Cir. 2023)…………………………………………...13

*Delaware v. BP Am. Inc.*,
    578 F. Supp. 3d 618, 636 (D. Del.), *aff'd sub nom. City of Hoboken v.
    Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022)………………………………17

*Georgia v. Clark*,
    119 F.4th 1304 (11th Cir. 2024)…………………………………………12

*Jefferson Cnty. v. Acker*,
    527 U.S. 423 (1999)……………………………………………..3, 6–7, 11, 14–17

*Maryland v. 3M Co.*,
    130 F.4th 380 (4th Cir. 2025)……………………………………………9–10

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022)…………………………………………………..13

*Minnesota by Ellison v. Am. Petroleum Inst.*,
    63 F.4th 703 (8th Cir. 2023), *cert. denied sub nom.*
    *Am. Petroleum Inst. v. Minnesota*, 144 S. Ct. 620 (2024)…………………….13

*Rhode Island v. Shell Oil Prods. Co.*,
    35 F.4th 44 (1st Cir. 2022)………………………………………………………13

*State v. Meadows*,
    88 F.4th 1331 (11th Cir. 2023)……………………………………..*passim*

*State by Tong v. Exxon Mobil Corp.*,
    83 F.4th 122 (2d Cir. 2023)……………………………………………………...13

## Other Authorities

*EPA Announces It Will Keep Maximum Contaminant Levels for PFOA, PFOS*, Env'l Prot. Agency (May 14, 2025), available at
https://www.epa.gov/newsreleases/epa-announces-it-will-keep-maximum-contaminant-levels-pfoa-pfos……………………………………………………………1, 2

## STATEMENT REGARDING ORAL ARGUMENT

If the Court grants *Amici*'s Motion for Leave to File this Proposed Brief of Amici Curae and the parties' respective requests for oral argument, *Amici* respectfully requests the opportunity to participate in oral argument pursuant to Federal Rule of Appellate Procedure 29(a)(8) regarding the issues presented herein.

## IDENTITY AND INTERESTS OF *AMICI CURIAE*[1]

*Amici Curiae* are five (5) cities and counties in Alabama and Georgia that have initiated litigation against 3M and other chemical manufacturers due to the contamination of public drinking water supplies with PFOS and PFOA: The City of Muscle Shoals, Alabama; Colbert County, Alabama; The City of Irondale, Alabama; The Mayor and Aldermen of the City of Savannah, Georgia; and The Water Works Board of The City of Opelika, Alabama. Amici have sought leave of the Court to file this brief pursuant to Federal Rule of Appellate Procedure 29(a)(2).

Like the Town of Pine Hill, *Amici* operate public drinking water systems that contain PFOS and PFOA in excess of "nationwide limits for . . . drinking water" set by the Trump Administration and Environmental Protection Agency ("EPA")[2] — some by several orders of magnitude. *Amici* cannot meet the EPA's regulatory requirements for PFOS and PFOA without significant investment in new treatment technologies, such as Reverse Osmosis and Granular Activated Carbon. Installation and operation of these systems costs upwards of tens, and often hundreds, of millions

---

[1] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *Amici* and their counsel made a monetary contribution to the preparation or submission of this brief. Fed. R. App. P. 29(a)(4)(E).

[2] *EPA Announces It Will Keep Maximum Contaminant Levels for PFOA, PFOS*, ENV'L PROT. AGENCY (May 14, 2025), available at https://www.epa.gov/newsreleases/epa-announces-it-will-keep-maximum-contaminant-levels-pfoa-pfos.

1

of dollars per system. Following the EPA's principle of "Holding Polluters Accountable,"[3] *Amici* have brought individual lawsuits against 3M and the other chemical manufacturers responsible for placing these chemicals in state waters.

Like the present action, the water pollution cases filed by *Amici* seek to hold 3M accountable for the PFOS and PFOA pollution it has caused to drinking water in Alabama and Georgia, which *Amici* allege have violated state laws and local ordinances.

3M's response in each of these cases has been the same as in *Pine Hill*: to remove to federal court on the basis of federal officer removal and then seek transfer of the action to a sprawling multi-district litigation pending in South Carolina ("AFFF MDL"). Three of *Amici*'s cases (Muscle Shoals, Colbert County, and Savannah) have already been removed and transferred to the AFFF MDL; two (Irondale and Opelika) are fighting against the same fate. Each of these cases have fought for remand to state court, but to date, none have received rulings on the merits of Movants' jurisdictional arguments.

*Amici* support The Town of Pine Hill's Answer Brief and respectfully urge this Court to affirm the district court's remand of this case to state court.

---

[3] *Id.*

## STATEMENT OF THE ISSUE

*Amici* adopt and incorporate Plaintiff-Appellee's Statement of the Issue as if fully set forth herein. (Pine Hill Answer Br., at 3.)

## SUMMARY OF ARGUMENT

3M's theory of removal in this case is based on a subtle—but critical—misconstruction of the "causal nexus" element of the federal officer removal analysis. To invoke federal officer removal, 3M "must establish a 'causal connection between the charged conduct and asserted official authority.'" *State v. Meadows*, 88 F.4th 1331, 1343 (11th Cir. 2023) (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999)). Determining whether a "causal connection" exists requires "identify[ing] the 'act' or charged conduct underlying [the plaintiff's claims]" and evaluating "the existence of a causal nexus between [the removing defendant's] conduct and his office." *Id.* at 1343–44.

3M seeks to rewrite the relevant analysis in ways that would not only implicitly overrule this Court's recent precedent, but significantly and unalterably expand the scope of federal officer removal—particularly for private actors that "acted under" federal officers. Such an expansion would not only impact the legal rights of *Amici* but would disturb the distribution of judicial power between the states and federal government and run counter to the purpose and intent of the federal officer removal statute.

3

I.    *3M misdefines its "act" or "charged conduct."*

This Court has made clear that the removing defendant's "act" or "charged conduct" is, just as it sounds, defined by what the defendant allegedly *did*, not what they allegedly *caused*. Indeed, to determine the removing defendant's "act," the Court "must look to the core of the [plaintiff's] factual allegations" and the "'heart' of [the removing defendant's] *conduct*." *Meadows*, 88 F.4th at 1345 (emphasis added). At its most basic construction, this inquiry asks, what are the "*actions* for which [the removing defendant] is being sued"? *Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (emphasis added).

3M's removal of this case seeks to flip this inquiry on its head. 3M argues that its "charged conduct" is "3M's alleged contamination of the Town's water supply with PFAS." (3M Br., at 24.) But the contamination of Pine Hill's drinking water itself is not "conduct" or an "action." It is an *injury*—the *result* of 3M's alleged "conduct."

Here, the district court was not "required to accept [3M's] interpretation of 'act' at face value." *See Meadows*, 88 F.4th at 1344. Rather, the district court correctly concluded, by "look[ing] to the core of the factual allegations," that 3M's "charged conduct" was "its manufacture of PFAS-containing products for, and suppl[y]ing of them to, International Paper specifically for use in its Alabama mills." (Dkt. 81, at 8–9.)

II.    *3M's "causal nexus" analysis attempts to connect the wrong pieces together.*

With its artificially expanded definition of the relevant "act" in hand (Pine Hill's PFAS contamination in a general sense), 3M seeks to introduce an alternative factual theory for how that contamination came to exist. The problem is that 3M is comparing the wrong things. Because 3M misdefined its relevant "act" or "charged conduct," its "causal nexus" analysis is inherently incorrect.

In 3M's "Statement of the Issue," 3M contends that removal was proper due to "3M's plausible allegations that [1] the Town's claims for PFAS contamination of its water supply relate to [2] 3M's federally directed production of MilSpec AFFF." (3M Br. at 5.) In other words, 3M's version of the causal nexus analysis is that [1] Pine Hill's *damages*—the "PFAS contamination of its water supply"—is "relate[d] to" [2] work 3M allegedly did for the federal government. *Id.*

"But that is not what the statute says or how courts have interpreted it. . . . It is the 'act' for which the defendant is being sued—*not the plaintiff's entire civil action in a general sense*—that must relate to the asserted federal duty." *Anne Arundel Cnty., Maryland v. BP P.L.C.*, 94 F.4th 343, 348 (4th Cir. 2024) (emphasis added).

Because 3M wrongly defined its "charged conduct," it does not matter how "low" the "bar for proof" is on the causal nexus element. (See 3M Br., at 20–21) (citing *Caver*, 845 F.3d at 1144). 3M must still "be 'specific and positive' in showing

that [its] charged conduct 'was *confined to* [its] acts [under] an officer.'" *See Meadows*, 88 F.4th at 1348 (emphasis added) (quoting *Symes*, 286 U.S. at 520). 3M has not shown that "its manufacture of PFAS-containing products for, and suppl[y]ing of them to, International Paper specifically for use in its Alabama mills," Dkt. 81, at 8–9, was "related to"—much less "confined to"—any work it did for the federal government. Therefore, 3M cannot establish a causal nexus.

III.    *This Court is not required to "credit" 3M's alternative factual theory as true.*

Finally, 3M's drumbeat invocation of the "credit" its alternative factual theory should receive under *Acker* is misguided. As this Court has previously explained,

> *Acker credited two judicial officers' "adequate threshold showing" on a question of statutory interpretation*. 527 U.S. at 432, 119 S.Ct. 2069. The Supreme Court credited the judges' "theory of the case" when it declined to "choose between [disputed] readings" of a municipal ordinance, but *that deference involved crediting a plausible reading of a specific legal authority. Id.*

*Meadows*, 88 F.4th at 1346 (emphasis added). *Acker*, therefore, represents a limited deference given to a removing party's plausible *legal* theory. But nothing in *Acker* or *Meadows* permits—much less requires—the unquestioned acceptance of the removing party's *factual* theory.

For these reasons, *Amici* respectfully request that the Court affirm the district court's order remanding Pine Hill's case to state court.

## ARGUMENT

To invoke federal officer removal, 3M "must establish a 'causal connection between the charged conduct and asserted official authority.'" *Meadows*, 88 F.4th at 1343 (quoting *Acker*, 527 U.S. at 431). Determining whether a "causal connection" exists involves three steps:

1. The Court "must identify the 'act' or charged conduct underlying [the plaintiff's claims]." *Id.*

2. The Court must determine "the scope of [the removing defendant's] federal office." *Id.* at 1343–44.

3. The Court must evaluate "the existence of a causal nexus between [the removing defendant's] conduct and his office." *Id.* at 1344.

The district court conducted a straightforward application of this three-part test to conclude that "3M is not entitled to federal-officer removal in this action." (Dkt. 81, at 6–10.) 3M's appeal of that order is based on a subtle, but critical recasting of the three-step "causal nexus" analysis. In short, 3M misdefines the relevant "act" or "charged conduct" and misstates the "credit" its alternative factual theories should receive. For the reasons to follow, *Amici* respectfully assert that the district court's order remanding Pine Hill's case to state court should be affirmed.[4]

---

[4] There are other defects in 3M's theory of removal, each fully addressed in Pine Hill's Answer Brief. This Brief focuses on 3M's inability to satisfy the "causal nexus" element, as well as its attempt to rewrite the "causal nexus" analysis in a way

I. **3M's reinterpretation of its "act" or "charged conduct" is inconsistent with this Court's precedent and should not be "credited" as true.**

3M seeks to broadly redefine its "act" or "charged conduct" and asks this court to "credit" its reinterpretation as true. This argument runs contrary to this Court's federal officer removal precedent.

   A. **3M's "act" for purposes of federal officer removal is defined by the core of Pine Hill's factual allegations, not 3M's reinterpretation of Pine Hill's legal claims.**

Beginning with the first step of the "causal nexus" analysis—the identification of "the 'act' or charged conduct underlying [Pine Hill's claims]," *Meadows*, 88 F.4th at 1343—3M suggests that this Court should accept *3M's* interpretation of its "charged conduct" over the findings of the district court. (3M Br., at 21–24, 32–34.) In so doing, 3M asks this Court to "credit the plausible allegations in the notice of removal." *Id.* at 22, n.1.

However, neither this Court nor the district court is "required to accept [3M's] interpretation of 'act' at face value." *See Meadows*, 88 F.4th at 1344. Instead, this Court "must look to the core of the factual allegations" and "the 'heart' of [3M's] conduct to determine whether [its] section 1442(a)(1) 'act' . . . supports removal." *Id.* at 1344–45. Therefore, and contrary to 3M's position, the district court was not

_____

that would significantly expand the scope of federal officer removal and run contrary to this Court's precedent.

permitted—much less required—to "credit" 3M's interpretation of its "charged conduct" over the factual allegations in Pine Hill's complaint.

### B. 3M's reinterpretation of its relevant "act" improperly shifts the focus to the *result* of 3M's "charged conduct"—Pine Hill's injury.

The removing defendant's "act" or "charged conduct" is just what it sounds like: an *action*. Indeed, it is "the actions for which [the removing defendant] is being sued." *Caver*, 845 F.3d at 1142. The question, then, is what 3M allegedly *did*, not what its actions allegedly *caused*.

To answer this question, the district court does not turn to the boilerplate language of the complaint's legal counts, as 3M contends, *see* 3M Br., at 22–24, but instead "must look to the core of [Pine Hill's] *factual allegations*." *See Meadows*, 88 F.4th at 1345 (emphasis added). In doing so, the district court was required to "look to the 'heart' of [3M's] *conduct*." *See id.* (emphasis added). The district court did just that, "[r]eading the complaint as a whole" to conclude that the "'heart' or 'gravamen' of Pine Hill's claims against 3M is [3M's] manufacture of PFAS-containing products for, and suppl[y]ing of them to, International Paper specifically for use in its Alabama mills." (Dkt. 81, at 8–9.)[5]

---

[5] 3M suggests that the district court's determination of 3M's "charged conduct" is inconsistent with *Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025). (*See* 3M Br., at 23.) But *Maryland* is factually distinguishable from this case in several important respects. In *Maryland*, the States of Maryland and South Carolina both sued 3M over *statewide* PFAS contamination. *Id.* at 385. Critically, each of the States "filed two overlapping lawsuits" asserting "the same seven state-law causes of action against

3M seeks to distort and significantly expand its "charged conduct" by focusing on Pine Hill's legal claims in the abstract—and, in particular, Pine Hill's injury, *see* 3M Br., at 21–24, rather than "the core of [Pine Hill's] *factual allegations*," *see Meadows*, 88 F.4th at 1345 (emphasis added). For instance, 3M admits that "[t]he injury that the Town alleges 3M caused is 'the contamination of PFAS [in] the water supply.'" (3M Br., at 23) (quoting Dkt. 1-2 ¶ 75). So, according to 3M, "the heart of the Town's complaint—the charged conduct in this case—is 3M's alleged contamination of the Town's water supply with PFAS." *Id.* at 24.

But 3M is confusing its *acts*—"its manufacture of PFAS-containing products for, and suppl[y]ing of them to, International Paper specifically for use in its

---

3M." *Id.* at 385–86. "The only meaningful difference in the [State's overlapping] complaints [wa]s that one was directed toward 3M's PFAS production through its manufacture of AFFF generally—Military AFFF and otherwise—while the other was directed towards 3M's production of other PFAS-containing products and specifically excluded any AFFF." *Id.* In other words, both Maryland and South Carolina actively sought to hold 3M liable for its manufacture and sale of AFFF to the federal government—albeit in a separate lawsuit. As a result, 3M's "charged conduct" in *Maryland* was quite broad: 3M's manufacture and supply of *all* of its PFAS-containing products into the States of Maryland and South Carolina. *See id.* This case and *Amici's* cases are completely different. Pine Hill and *Amici* are not seeking to clean up PFAS contamination across the State; they are seeking to bring their drinking water into compliance with EPA regulations. Unlike the States in *Maryland*, Pine Hill and *Amici* have never argued that AFFF caused or contributed to their injuries, and while the States' own factual theories demonstrated that 3M's "charged conduct" was broad and encompassed essentially all of 3M's PFAS-containing products that wound up in the States' waterways, Pine Hill and *Amici* allege that specific commercial products supplied by 3M to discrete point-source dischargers are the causes of their PFAS problem. This case and *Amici's* cases are not bound by *Maryland*.

Alabama mills," *see* Dkt. 81, at 8–9—with the *result* of those acts—the "contamination of the Town's water supply with PFAS," 3M Br., at 24. However, the contamination of Pine Hill's drinking water with PFAS is not "conduct" or an "action"—it is the injury that Pine Hill has suffered *because of* 3M's acts.

Therefore, 3M's nebulous observation that "the heart of the Town's claims is the attempt 'to hold 3M liable for PFAS in its water supply,'" 3M Br., at 11 (citing Dkt. 85, at 9-10), is looking in the wrong direction. Instead of "look[ing] to the 'heart' of [3M's] *conduct*," *see Meadows*, 88 F.4th at 1345 (emphasis added), 3M is looking to the harm that its conduct has caused.

3M is likewise mistaken in its assertion that "[t]he plain 'gravamen' of these 'claim[s],' is not some narrow concern about particular product sales, but rather encompasses all alleged PFAS contamination of the Town's water supply." (3M Br., at 23) (internal citations omitted) (quoting *Meadows*, 88 F.4th at 1344). Again, "all alleged PFAS contamination" is a result—not an "act"—and 3M "should have to identify as the gravamen of the suit *an act* that was, if not required by, at least closely connected with, the performance of [its] official functions." *Acker*, 527 U.S. at 447 (emphasis added) (Scalia, J., concurring in part and dissenting in part) (adopted by *Meadows*, 88 F.4th at 1344–45). 3M has not done that.

II.    **3M's "causal nexus" analysis builds on the errors of its "act" analysis.**

    **A. Because 3M misdefined its relevant "act," its "causal nexus" analysis is inherently flawed.**

3M makes much of the fact that its "bar for proof is 'quite low'" in establishing the "causal nexus" requirement. (*See* 3M Br., at 20–21) (citing *Caver*, 845 F.3d at 1144). But, while the hurdle to clear may be low, 3M must still show that it is running in the right lane—and it is not. Because 3M wrongly defined its "act" or "charged conduct," its attempt to draw a "causal nexus" between its "charged conduct" and its work for the federal government is necessarily incorrect.

In fact, even with a "low" bar for proof, 3M must still "be 'specific and positive' in showing that [its] charged conduct 'was *confined to* [its] acts [under] an officer.'" *See Meadows*, 88 F.4th at 1348 (emphasis added) (quoting *Symes*, 286 U.S. at 520). But 3M has not shown that "its manufacture of PFAS-containing products for, and suppl[y]ing of them to, International Paper specifically for use in its Alabama mills," Dkt. 81, at 8–9, was "related to"—much less "confined to"—any work it did for the federal government. Indeed, "none of [3M's] charged conduct falls within the job description of [its] former positions [allegedly acting under] a federal officer. So [3M] can't satisfy the removal statute." *See Georgia v. Clark*, 119 F.4th 1304, 1308 (11th Cir. 2024) (Rosenbaum, Circuit Judge, concurring).

**B. Other circuits have rejected similar attempts to artificially expand the "causal nexus" analysis.**

3M's version of the "causal nexus" analysis, while erroneous, is not new. Sister circuits have recently considered and rejected similar arguments in cases brought by state and local governments against energy companies for misrepresentations related to fossil fuels. These cases demonstrate just how broadly 3M seeks to expand the "causal nexus" test.

"In recent years, state and local governments have brought state-court lawsuits against energy companies, alleging they misrepresented and concealed information about their fossil fuel products in violation of state tort and consumer protection laws." *Anne Arundel Cnty., Maryland v. BP P.L.C.*, 94 F.4th 343, 346 (4th Cir. 2024).[6] "The companies . . . sought—over and over and over—to remove the cases to federal court" under the federal officer removal statute—eleven times in total. *Id.*

---

[6] *See also Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44 (1st Cir. 2022); *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir. 2023); *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022); *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022); *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 708 (8th Cir. 2023), *cert. denied sub nom. Am. Petroleum Inst. v. Minnesota*, 144 S. Ct. 620, 217 L. Ed. 2d 331 (2024); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101 (9th Cir. 2022); *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022); *City of Oakland v. BP PLC*, No. 22-16810, 2023 WL 8179286 (9th Cir. Nov. 27, 2023); *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022); *D.C. v. Exxon Mobil Corp.*, 89 F.4th 144 (D.C. Cir. 2023).

The repeated error of those removal attempts is the same that infects 3M's removal theory in this case: a misapplication of the "causal nexus" test.

In *Anne Arundel*, for instance, the Fourth Circuit "reject[ed] the companies' novel and atextual attempt to expand the scope of the relevant inquiry" by posing "the relevant question [a]s whether *the civil action* . . . relat[es]—at least in part—to the defendant's action(s) under the direction of federal officers." *Id.* at 348 (emphasis added) (internal quotations omitted). That is exactly the question that 3M poses here. (*See* 3M Br., at 24) (emphasis added) (focusing "Statement of the Issue" on whether "*the Town's claims for PFAS contamination* of its water supply relate to 3M's federally directed production of MilSpec AFFF"); *see also id.* at 19 ("*This Suit Relates To Actions 3M Took Under Color Of Federal Office.*").

Just like 3M does in this case, the companies in *Anne Arundel* contended that the focus of the nexus inquiry should be on "whether the acts that allegedly caused the injuries for which the local governments seek to recover were directed by federal officers." *Anne Arundel*, 94 F.4th at 348 (internal quotations and alterations omitted). "But that is not what the statute says or how courts have interpreted it." *Id.* Rather, as the Fourth Circuit explained:

> The statutory text tells us what must relate to what. To qualify for removal, a defendant must show, as relevant here, that a suit is "against" "any person acting under [an] officer" "for or relating to any act under color of" a federal office. 28 U.S.C. § 1442(a), (a)(1) (emphasis added). **It is the "act" for which the defendant is being sued—not the**

14

*plaintiff's entire civil action in a general sense—that must relate to the asserted federal duty*.

*Id.* (emphasis added).

In other words, it is the *actions* the defendant is accused of taking, not the *injury* the defendant is accused of causing, that must relate to work allegedly done under federal authority. "Having framed the relevant inquiry, [the Fourth Circuit] conclude[d] [that] the companies failed to show any of their allegedly *wrongful activities* were carried out for or in relation to federal authority." *Id.* at 349 (emphasis added).

Here, likewise, even if Pine Hill's *injury* is related to work 3M allegedly did for the federal government, that still is not enough for federal officer removal. 3M must show that its "allegedly wrongful activities"—manufacturing and supplying commercial PFAS products to private industries—were related to work it allegedly performed for the federal government. 3M has not done that.

**III.    This Court is not required to "credit" 3M's alternative factual theory as true.**

As set forth above, 3M's attempt to remove this case to federal court is not based on Pine Hill's factual theory of contamination. Instead, 3M goes beyond the factual allegations of Pine Hill's complaint and presents its own, alternative factual theory for how the Town's drinking water became polluted with PFOS and PFOA. 3M then asks this Court to "credit" its alternative factual theory under *Acker*:

> [N]o matter how the charged conduct is defined, the district court erred by failing to reach the second step of the nexus analysis: whether 3M has alleged the requisite "'connection or association'" between that conduct and 3M's federal activities. *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017). **In analyzing *that* question, the Court must credit the plausible allegations in the defendant's notice of removal.** *Id.* at 1145[7]; *see Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999).

(3M Br., at 3) (emphasis added); *see also id.* at 21–22, 28, 30, 41–44, 48 (arguing that the Court must "credit" 3M's factual allegations).

However, this Court has already explained the extent of the deference or "credit" that a court may give to a removing party's "theory of the case" under *Acker*:

> *Acker* **credited two judicial officers' "adequate threshold showing" on a question of statutory interpretation**. 527 U.S. at 432, 119 S.Ct. 2069. The Supreme Court credited the judges' "theory of the case" when it declined to "choose between [disputed] readings" of a municipal ordinance, but **that deference involved crediting a plausible reading of a specific legal authority**. *Id.* But Meadows's

---

[7] While 3M cites to *Caver* for this proposition, nowhere in that decision did this Court say that it must "credit" a defendant's alternative factual theory for purposes of federal officer removal. Indeed, 3M's citations to *Caver* conveniently omit critical language from this Court's holding that undermine 3M's entire removal theory. For example, 3M states that "this Court asks whether a notice of removal's 'allegations, if true, would establish that' federal-officer removal jurisdiction exists." (3M Br., at 17) (quoting *Caver*, 845 F.3d at 1145); *see also id.* at 48, 49. 3M's selective quotation from *Caver* omits the bolded language: "[The removing defendant's] allegations, if true, would establish that ***the acts for which [it] is being sued . . . occurred because of [its] performance of its [federal] duties*.**" *Caver*, 845 F.3d at 1145 (emphasis added). The omitted language from *Caver* is a critical limitation to federal officer removal that confirms again the requirement that the defendants' "charged conduct" (*i.e.*, "the acts for which it is being sued") was "confined to" its work under federal authority (*i.e.*, "occurred *because of* its performance of its federal duties"). *See Meadows*, 88 F.4th at 1348; *Caver*, 845 F.3d at 1145 (emphasis added) (internal alterations omitted).

theory of the case is not plausible. *Acker* does not instruct us blindly to accept an expansive proclamation of executive power relying on no source of positive law. Instead, our judicial duty demands an independent assessment of the limits of Meadows's office.

*Meadows*, 88 F.4th at 1346 (emphasis added). In other words, *Acker* represents a limited deference given to a removing party's plausible *legal* theory—not the unquestioned acceptance of the removing party's *factual* theory, as 3M seeks.[8]

This Court's acknowledgment of the narrow scope of *Acker*'s holding makes practical sense. If the defendant's "act" or "charged conduct" is defined by "the core of the factual allegations" against it, *see Meadows*, 88 F.4th at 1344–45, and the defendant must show "that his charged conduct 'was confined to his acts as an officer,'" *see id.* at 1348, but the defendant is nevertheless permitted to re-write those allegations and require the district court to "credit" its re-casting of the relevant facts, *see* 3M Br., at 3, 21–22, 42, then the "act" inquiry would be rendered a formality—if not a nullity. Such a nebulous and deferential standard of removal would not only

---

[8] *See also Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 636 (D. Del.), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) ("Defendants rely on *Acker*, 527 U.S. at 432, 119 S.Ct. 2069 . . . for the proposition that the Court must credit their 'theory of the case' for purposes of the federal officer removal statute. . . . Defendants have misunderstood these cited cases. In *Acker*, whether there was a connection between the claims in the lawsuit and the defendants' official acts rested on disputed readings of an Ordinance imposing occupational taxes, and the Supreme Court credited the defendants' reading because '[t]o choose between those readings of the Ordinance is to decide the merits of this case.' *Acker*, 527 U.S. at 433, 119 S.Ct. 2069. . . . *Acker* [does not] authorize Defendants to freely rewrite the complaint and manufacture a cause of action explicitly disclaimed by Plaintiff and then ask the Court to accept their 'theory of the case' for purposes of removal.").

implicitly overrule this Court's precedent, but significantly expand the outer limits of federal officer removal.

## CONCLUSION

3M theory of removal seeks to expand the limits of federal officer removal. 3M begins by redefining its "act" or "charged conduct" as Pine Hill's *injury*. Next, 3M introduces an alternative factual theory to explain how that injury occurred. 3M then asks this Court to "credit" its alternative factual theory as true. According to 3M, this is enough to secure federal jurisdiction. However, for the reasons stated herein, 3M's removal theory cuts against this Court's—and other circuits'—recent precedent on federal officer removal. *Amici* respectfully request that the Court affirm the district court's order remanding Pine Hill's case to state court.

Dated: July 23, 2025                          Respectfully Submitted,

/s/ Jeffrey E. Friedman
Jeffrey E. Friedman
FRIEDMAN, DAZZIO & ZULANAS, P.C.
3800 Corporate Woods Drive
Birmingham, Alabama 35242
Phone: (205) 278-7000
jfriedman@friedman-lawyers.com
*Attorney for Proposed Amici Curiae*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 29(a)(4)(G) and 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type style, and type volume limitations. This brief was prepared using a proportionately spaced type (Times New Roman, 14-point font). Exclusive of the portions exempted by Federal Rules of Appellate Procedure 32(f), this brief contains 5,678 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

Dated: July 23, 2025                    Respectfully Submitted,

*/s/ Jeffrey E. Friedman*
Jeffrey E. Friedman
FRIEDMAN, DAZZIO & ZULANAS, P.C.
3800 Corporate Woods Drive
Birmingham, Alabama 35242
Phone: (205) 278-7000
jfriedman@friedman-lawyers.com
*Attorney for Proposed Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2025, I caused a true and correct copy of this brief to be filed electronically through the Court's CM/ECF system, which will send a notice of filing to all registered users.

Dated: July 23, 2025                    Respectfully Submitted,

/s/ Jeffrey E. Friedman
Jeffrey E. Friedman
FRIEDMAN, DAZZIO & ZULANAS, P.C.
3800 Corporate Woods Drive
Birmingham, Alabama 35242
Phone: (205) 278-7000
jfriedman@friedman-lawyers.com
Attorney for Amici Curiae