No. 25-10746

———————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————————

THE TOWN OF PINE HILL, ALABAMA

*Plaintiff-Appellee*,

v.

3M COMPANY,

*Defendant-Appellant*,

DAIKIN AMERICA, INC., et al.,

*Defendants*.

———————————————

On Appeal from the United States District Court
for the Southern District of Alabama, No. 2:24-cv-00284-KD-N

———————————————

## REPLY BRIEF FOR
## DEFENDANT-APPELLANT 3M COMPANY

———————————————

Paul D. Clement
Nicholas A. Aquart
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com

Amir C. Tayrani
Zachary Tyree
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036
(202) 955-8500
atayrani@gibsondunn.com
ztyree@gibsondunn.com

*Counsel for 3M Company*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellant 3M Company ("3M") certifies that the following is a list of persons and entities that have an interest in the outcome of this case:

1.    3M Company, *Appellant*;

2.    Aquart, Nicholas A., *counsel for Appellant*;

3.    Balch & Bingham, *counsel for Daikin America, Inc.*;

4.    BASF Corporation, *co-defendant*;

5.    Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., *counsel for Appellee*;

6.    Beasley, Jere L, *counsel for Appellee*;

7.    Bienenfeld, Elliot, *counsel for Appellee*;

8.    Bradley, Arant, Boult Cummings, *counsel for BASF Corporation*;

9.    Clement & Murphy PLLC, *counsel for Appellant*;

10.   Clement, Paul D., *counsel for Appellant*;

11.   Corteva, Inc., *co-defendant*;

12.   Cozen O'Connor, *counsel for Solenis LLC*;

13.   Daikin America, Inc., *co-defendant*;

14.   Davis, Richard Eldon, *counsel for Solenis LLC*;

i

15. Diab, David, *counsel for Appellee*;

16. Dixon, Shannon, *co-defendant*;

17. DLA Piper LLP US, *counsel for BASF Corporation*;

18. Dubose, Kristi K, *District Judge*;

19. Dupont De Nemours, Inc., *co-defendant*;

20. EIDP, Inc., *co-defendant*;

21. Estes, Allen McLean, *counsel for Daikin America, Inc.*;

22. Flachsbart, Elizabeth, *counsel for Daikin America, Inc.*;

23. Flax, Jillian, *counsel for Solenis LLC*;

24. Frazer, Greene, Upchurch & Baker, LLC, *counsel for Daikin America, Inc.*;

25. Gibson, Dunn & Crutcher, LLP, *counsel for Appellant*;

26. Gilchrist, Wesley B., *counsel for Appellant*;

27. Goldman, Lauren R., *counsel for Appellant*;

28. Griffith, Matthew Ross, *counsel for Appellee*;

29. Harrison, Mary Elizabeth, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

30. Heller, James Harris, *counsel for Solenis LLC*;

31. International Paper Company, *co-defendant*;

32. Johnson, Andrew Burns, *counsel for BASF Corporation*;

ii

33. Johnson, John M., *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

34. Jones Day, *counsel for Daikin America, Inc.*;

35. Jones, Rhon E., *counsel for Appellee*;

36. King, Gavin Floyd, *counsel for Appellee*;

37. King, M. Christian, *counsel for Appellant*;

38. Lankford, Ambria LaFaye*, counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

39. Lightfoot, Franklin & White, LLC, *counsel for Appellant*;

40. Lightfoot Franklin & White, LLC, *counsel for EIDP, Inc., the Chemours Company, Dupont De Nemours, Inc., Corteva, Inc.*;

41. Montalto, Vincent John, *counsel for BASF Corporation*;

42. Nelson, Katherine P., *Magistrate District Judge*;

43. Pearson, Carla, *co-defendant*;

44. Perry, Ken Law Firm*, counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

45. Perry, Kenneth Martin, *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

46. Pompey & Pompey, PC, *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

47. Pompey, William M., *counsel for International Paper Company, Shannon Dixon, Steve Webb, Carla Pearson*;

48. Prater, Harlan I. IV, *counsel for Appellant*;

49. Price, Jeffrey Donald, *counsel for Appellee*;

50. Radney, William Larkin, IV, *counsel for Appellant*;

51. Riney, Shelby, *counsel for Solenis, LLC*;

52. Saywell, James Robert, *counsel for Daikin America, Inc.*;

53. Solenis, LLC; *co-defendant*;

54. Speegle, Clinton Timothy, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

55. Starnes & Atchison, LLP, *counsel for Solenis, LLC*;

56. Tayrani, Amir C., *counsel for Appellant*;

57. The Chemours Company, *co-defendant*;

58. The Town of Pine Hill, Alabama, *Appellee*;

59. Thompson, Amber Nicole, *counsel for Appellant*;

60. Traeger, William H., III, *counsel for EIDP, Inc., The Chemours Company, DuPont De Nemours, Inc., Corteva, Inc.*;

61. Tyree, Zachary, *counsel for Appellant*;

62. Upchurch, Michael E., *counsel for Daikin America, Inc.*;

63. Webb, Steve, *co-defendant*;

64.    Weyerman, Elizabeth, *counsel for Appellee*;

65.    Williams, Kayla R., *counsel for Appellant*;

66.    Yeilding, Christopher Lynch, *counsel for Daikin America, Inc.*

Appellant further states that:

The below are subsidiaries of 3M.

3M (East) AG
3M (Proprietary) Ltd
3M (Schweiz) GmbH
3M a/s
3M APAC RDC PTE. LTD.
3M Arabia Advanced Trading Company One Person Company
3M Argentina Stock Company, Commercial, Industrial, Financial Real
Property and Farming Corporation
3M Asia Holding B.V.
3M Asia Pacific UK Holding Ltd
3M Asset Management GmbH
3M Australia Pty. Ltd.
3M Belgium BV
3M Bricolage et Batiment
3M Canada Company - Compagnie 3M Canada
3M Canada Holdings Ltd.
3M Central American Management Company, S. DE R.L.
3M Cesko, spol. s.r.o.
3M Chemical Operations LLC
3M Chile S.A.
3M China Limited
3M Clubs of the United States, Inc.
3M Colombia S.A.
3M Consulting (Guangzhou) Co., Ltd.
3M Deutschland GmbH
3M do Brasil Ltda.
3M Dominicana, S.r.l.
3M El Salvador, Sociedad Anonima de Capital Variable
3M EMEA GmbH
3M Employees' Benefits Trust Association

3M Espana, S.L.
3M Fall Protection Company
3M Film Construction (Shanghai) Co., Ltd.
3M Financial Management Company
3M Foreign Holding LLC
3M France S.A.S.
3M Global Capital Limited
3M Global Channel Services, Inc.
3M Global Holding B.V.
3M Global Service Center Management Company
3M GLOBAL TECHNOLOGY CENTER LLP
3M Global Trading, Inc.
3M Guatemala, Sociedad Anonima
3M Gulf Limited
3M Health Care Limited
3M Holding Company B.V.
3M Hong Kong Limited
3M Hungária Trade Limited Liability Company
3M Importadora, S.A.
3M India Limited
3M Innovation (Thailand) Limited
3M Innovation Singapore Pte. Ltd.
3M Innovative Properties Company
3M Inovasyon Urunleri Sanayi ve Ticaret Limited Sirketi
3M Interamerica, LLC
3M Intermediate Acquisitions B.V.
3M International Company
3M International Group B.V.
3M International Holding B.V.
3M International Investments B.V.
3M International Trading (Cheng Du) Co., Ltd.
3M International Trading (Shanghai) Co., Ltd.
3M International Trading (Shenzhen) Co., Ltd.
3M International Trading (Tianjin) Co., Ltd.
3M International Trading B.V.
3M Investments (China) Co., Ltd.
3M Ireland Limited
3M Israel Ltd.
3M ITALIA s.r.l.
3M Japan Holdings G.K.

3M Japan Innovation Limited
3M Japan Limited
3M Japan Products Limited
3M Kenya Ltd
3M Korea Co., Ltd
3M Lanka (Private) Limited
3M Latin American Regional Distribution Center S.A. (LARDC)
3M Malaysia Sdn. Bhd.
3M Manaus Industria de Produtos Quimicos Ltda.
3M Manufacturera Venezuela, S.A.
3M Material Technology (Guangzhou) Co., Ltd.
3M Material Technology (Hefei) Co., Ltd.
3M Material Technology (Suzhou) Co., Ltd.
3M Mexico, Sociedad Anonima de Capital Variable
3M Minnesota Mining & Manufacturing Nigeria Ltd
3M Nederland B.V.
3M Nederland Holding B.V.
3M New Zealand Limited
3M New Zealand Trustee Limited
3M Norge A/S
3M Occupational Safety LLC
3M Open Fund
3M Osterreich Gesellschaft m.b.H.
3M Pakistan (Private) Limited
3M Panama Pacifico S. de R.L.
3M Pension Trust e.V
3M Pension Trustees Limited
3M Peru, Sociedad Anonima
3M Philippines (Export), Inc.
3M Philippines, Inc.
3M Phoenix Limited
3M Poland Manufacturing Spółka z ograniczoną odpowiedzialnością
3M Poland Spolka z ograniczona odpowiedzialnoscia
3M Precision Grinding GmbH
3M Products Limited
3M Puerto Rico, Inc.
3M Real Estate GmbH & Co KG
3M Real Estate Management GmbH
3M Sanayi Ve Ticaret A.S.
3M Seremban (Malaysia) Sdn. Bhd.

3M Service Center APAC, Inc.
3M Service Center EMEA Sp. z o.o.
3M Servicios Mexico, S. de R.L. de C.V.
3M Singapore Pte. Ltd.
3M Slovensko s.r.o.
3M South Africa (Proprietary) Limited
3M South Asia Manufacturing Private Limited
3M Specialty Materials (Shanghai) Co., Ltd.
3M Svenska Aktiebolag
3M Taiwan Limited
3M Taiwan Optronics Corporation
3M Technical Ceramics Canada ULC
3M Technical Ceramics Clarkston LLC
3M Technical Ceramics, Inc.
3M TECHNOLOGIES (S) PTE LTD
3M Thailand Limited
3M Touch Systems, Inc.
3M UK Holdings Limited
3M Ukraine LLC
3M United Kingdom Public Limited Company
3M Vietnam Limited
3M West Europe B.V.
3M Wroclaw spolka z ograniczona odpowiedzialnoscia
Aearo Canada Limited/Aearo Canada Limitee
Aearo Holding LLC
Aearo Intermediate LLC
Aearo LLC
Aearo Mexico Holding Corp.
Aearo Technologies De Baja, S.A.de C.V.
Aearo Technologies de Mexico, S.A. de C.V.
Aearo Technologies LLC
Aearo Trading Company (Shenzhen) Ltd.
Cabot Safety Intermediate LLC
Capital Safety Global Holdings Limited
CAPITAL SAFETY GROUP - Banská Bystrica, s.r.o.
Capital Safety Group Canada ULC
Ceradyne Cayman Holdings, Inc.
D B Industries, LLC
Dyneon GmbH
Edumex, S.A. De C.V.

Edusa Corporation
Eknäs Industristad AB
EMFI SAS
Fall Protection Group Inc.
Figgie (G.B.) Limited
Figgie (U.K.) Limited
Figgie Sportswear (U.K.) Limited
Figgie Sportswear Limited
Fondation d'entreprise 3M France
Fondazione 3M
Fundacion 3M
Infrared Systems Group Ltd.
Kinetic Safety, LLC
Kolors Kevarkian S.A.
Lotum S.A.
Manufacturas Digitales, S.A. de C.V.
Masking SRL
Meguiar's Deutschland GmbH
Meguiar's Holland B.V.
Meguiar's Trading Limited
Meguiar's, Inc.
Minnesota Mining and Manufacturing Company
MTI PolyFab Inc.
North Alabama Real Property Holdings, LLC
P.T. 3M Indonesia
Pensionskasse der 3M Firmen in der Schweiz
PT. 3M Indonesia Importama
Scott Health & Safety Limited
Scott Technologies, Inc.
SemEquip, Inc.
SOA Logistics S.A.S.
Sociedade Previdenciaria 3M - Preveme
Sociedade Previdenciaria 3M - Preveme II
Sun Abrasives Company Limited
Suomen 3M Oy
Three M Global Service Center Costa Rica, Sociedad de Responsabilidad Limitada
Tres M Costa Rica Sociedad Anónima
Two Harbors Insurance Company
Wendt (India) Limited

Wendt GmbH
Winterthur Technology (Taicang) Co., Ltd.
Woodtrail Estates, LLC
Yamanaka Advanced Materials, Inc.

Appellant is publicly held; is traded under stock ticker NYSE: MMM; has no parent company; and no publicly held corporation holds 10% or more of Appellant's stock.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................3

    I.      3M Acted Under Federal Authority. ....................................................4

    II.    The Town's Nexus Arguments Fail. ...................................................6

           A.    3M's Plausible Allegations Are Sufficient For Removal. ..........7

           B.    The Town Cannot Sever The Nexus By Artificially Narrowing The Charged Conduct. ...........................................11

                1.    The Charged Conduct Is 3M's Alleged Contamination Of The Town's Water Supply With PFAS. ...............................................................................11

                2.    3M Plausibly Alleges A Nexus Between The Charged Conduct—No Matter How Defined—And 3M's Federal Activities. ................................................15

           C.    The Town's Disclaimer Does Not Sever The Nexus................18

                1.    The Town's Disclaimer Is Merely Artful Pleading........18

                2.    This Court Should Not Create A Circuit Split. .............20

    III.   3M Has Asserted A Colorable Federal Defense. ...............................25

CONCLUSION .........................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Now, Inc. v. Sw. Airlines Co.*,
   385 F.3d 1324 (11th Cir. 2004) ............................................................4

*Anne Arundel Cnty. v. BP P.L.C.*,
   94 F.4th 343 (4th Cir. 2024) ...............................................................15

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
   2022 WL 4291357 (D.S.C. Sept. 16, 2022) .......................................27

*Baker v. Atl. Richfield Co.*,
   962 F.3d 937 (7th Cir. 2020) ..........................................6, 14, 16, 21, 22

*Caver v. Cent. Ala. Elec. Coop.*,
   845 F.3d 1135 (11th Cir. 2017) ..................... 2, 4, 5, 8, 9, 15, 16, 17, 18, 19, 26

*City of Hoboken v. Chevron Corp.*,
   45 F.4th 699 (3d Cir. 2022) ......................................................9, 23, 24

*City of Irondale v. 3M Co.*,
   2025 WL 2419238 (N.D. Ala. Aug. 19, 2025) ..............................5, 13

*Cnty. of San Mateo v. Chevron Corp.*,
   32 F.4th 733 (9th Cir. 2022) ................................................................9

*Cuomo v. Crane Co.*,
   771 F.3d 113 (2d Cir. 2014) ................................................................9

*Curiale v. A. Clemente, Inc.*,
   2023 WL 4362722 (D.N.J. July 5, 2023) ...........................................23

*Dart Cherokee Basin Operating Co. v. Owens*,
   574 U.S. 81 (2014) ....................................................................8, 9, 27

*Delaware v. BP Am. Inc.*,
   578 F. Supp. 3d 618 (D. Del. 2022) ...................................................19

*District of Columbia v. Exxon Mobil Corp.*,
   89 F.4th 144 (D.C. Cir. 2023) ............................................................24

**TABLE OF AUTHORITIES**

(*continued*)

**Page(s)**

*Georgia v. Kim*,
    733 F. Supp. 3d 1378 (N.D. Ga. 2024) ................................................. 5

*Georgia v. Meadows*,
    88 F.4th 1331 (11th Cir. 2023) ..................................... 4, 9, 12, 13, 14

*Goffner v. Avondale Indus. Inc.*,
    2024 WL 2844542 (E.D. La. June 5, 2024) ........................................ 5

*Gov't of Puerto Rico v. Express Scripts, Inc.*,
    119 F.4th 174 (1st Cir. 2024) ................................... 14, 19, 20, 23

*Isaacson v. Dow Chem. Co.*,
    517 F.3d 129 (2d Cir. 2008) ................................................. 6

*Jefferson Cnty. v. Acker*,
    527 U.S. 423 (1999) ........................................................ 15

*Kircher v. Putnam Funds Tr.*,
    547 U.S. 633 (2006) ........................................................ 18

*Laperriere v. Vesta Ins. Grp., Inc.*,
    526 F.3d 715 (11th Cir. 2008) ................................................. 5

*Latiolais v. Huntington Ingalls, Inc.*,
    951 F.3d 286 (5th Cir. 2020) (en banc) .......................................... 6

*Maryland v. 3M Co.*,
    130 F.4th 380 (4th Cir. 2025) ................... 1, 9, 15, 16, 17, 19, 20, 21, 22, 24, 26

*Mayor & City Council of Balt. v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022) .......................................... 9, 15

*Michigan v. Kelly*,
    2024 WL 5066093 (W.D. Mich. Dec. 11, 2024) ................................. 5

*Morrison v. Amway Corp.*,
    323 F.3d 920 (11th Cir. 2003) ........................................... 8, 9

*Nessel v. Chemguard, Inc.*,
    2021 WL 744683 (W.D. Mich. Jan. 6, 2021) .................................... 23

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*Pub. Health Tr. v. Lake Aircraft, Inc.*,
   992 F.2d 291 (11th Cir. 1993) ............................................................21

*Illinois ex rel. Raoul v. 3M Co.*,
   111 F.4th 846 (7th Cir. 2024) ......................................................21, 22

*Watson v. Philip Morris Cos.*,
   551 U.S. 142 (2007)............................................................................5

*Willingham v. Morgan*,
   395 U.S. 402 (1969)......................................................................10, 21

*Wood v. Crane Co.*,
   764 F.3d 316 (4th Cir. 2014) ............................................................24

*Young v. Tyco Fire Prods., LP*,
   2022 WL 486632 (9th Cir. Feb. 17, 2022) ........................................24

**Statutes**

28 U.S.C. § 1442 ........................................................................3, 4, 6, 7

28 U.S.C. § 1446 ....................................................................................9

28 U.S.C. § 1455 ....................................................................................9

**Other Authorities**

3M, *Aerospace Spec Support Portal*........................................................6

*Final Site Inspection Report, Site Inspection of Aqueous Film
   Forming Foam (AFFF) Release Areas (Maxwell Air Force Base,
   Montgomery Alabama)* (Jan. 2019) ..................................................10

USASpending, *3M Profile* ......................................................................6

## INTRODUCTION

The Town's brief underscores that "the heart" of its case is to recover for alleged "PFAS pollution" of its water supply.  Town Br. 1, 19.  Given 3M's plausible removal allegations that any PFAS contamination could not be disentangled from PFAS from MilSpec AFFF produced to federal specifications, the Town's suit must proceed in federal court.  The Town attempts to resist that conclusion by recharacterizing the charged conduct and invoking its purported disclaimer of recovery for harms caused by PFAS from AFFF sources.  But comparable arguments have been wholly rejected by other circuits in materially identical cases, *see*, *e.g.*, *Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025), and conflict with well-established precedent from this Court and the Supreme Court.  This Court should reverse rather than create a circuit split.

The Town seeks to hold 3M liable for allegedly contaminating the Town's water supply with PFAS.  3M plausibly alleges that MilSpec AFFF PFAS from the Maxwell Air Force Base commingled with PFAS from non-AFFF sources in the Town's water supply and that the Town has no ready way to distinguish particular PFAS compounds based on source.  That means any relief the Town obtains will necessarily be based—at least in part—on PFAS contamination from MilSpec AFFF.  The Town's recovery thus necessarily depends on the applicability and scope of 3M's colorable federal government-contractor defense to liability for PFAS from

MilSpec AFFF.  As the Fourth and Seventh Circuits have held, those issues must be resolved in federal court under the federal-officer removal statute.

The Town's response is wrong at every turn.  In a new argument, not raised below, the Town briefly asserts that 3M cannot remove because it no longer manufactures MilSpec AFFF.  But this Court has clearly held that a government contractor can remove under the federal-officer removal statute if it "was a person 'acting under' a federal officer *when it took the actions complained of*," as 3M indisputably was.  *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (emphasis added).

The Town asserts that 3M's removal allegations are insufficient and unsupported by extrinsic evidence.  But 3M's notice of removal alleges that "3M manufactured and sold PFAS-containing MilSpec AFFF to the U.S. military"; that "PFAS from MilSpec AFFF manufactured by 3M" was released from Maxwell Air Force Base and commingled with PFAS from paper mills in the Town's water supply; and that the Town has no ready way to distinguish PFAS from different sources.  Dkt. 1 ¶¶ 4, 24, 29.  Those allegations are more than just plausible, and 3M has no burden to come forward with proof at this stage.

The Town next seeks to artificially narrow its complaint to 3M's supply of non-AFFF PFAS products to paper mills.  But any fair reading of the Town's complaint—and its brief on appeal—shows that the charged conduct is 3M's alleged

2

PFAS contamination of the Town's water supply. The Town cannot artificially narrow the charged conduct by virtue of its disclaimer or ignore its claimed injury and requested relief. But even under the Town's narrow view of the conduct charged, 3M's plausible allegations establish a clear connection between the Town's claims and 3M's production of MilSpec AFFF.

The Town argues that its disclaimer neutralizes 3M's colorable federal defense, rendering the complex causation and allocation questions implicated by the Town's claims "ordinary" state-law issues that can be decided in state court. But whether, and to what extent, the alleged PFAS contamination stems from MilSpec AFFF directly determines the availability and scope of 3M's federal government-contractor defense. Asserting a disclaimer does not transmute those issues into ordinary questions of state law. Whether framed as a question about the scope of the Town's disclaimer or the scope of 3M's federal defense, some court must decide whether PFAS contamination from AFFF and non-AFFF sources can be disentangled and if so to what degree. Under the federal-officer removal statute, the court deciding those issues must be a federal court.

## ARGUMENT

The federal-officer removal statute permits "any person acting under" a federal officer to remove a civil action to federal court if the action is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1); 3M Br. 16-19. The

Town agrees that the Court must accept the "facially plausible" allegations in 3M's notice of removal.  Town Br. 13.  That means this case is removable if 3M plausibly alleges that (1) it is a "person" who "acted under a federal officer"; (2) there is a "'connection between what [3M] has done under asserted official authority and the action against'" it; and (3) 3M has a colorable federal defense.  *Caver*, 845 F.3d at 1142.  3M plausibly alleges all three elements; the Town's counterarguments lack merit.

## I.    3M Acted Under Federal Authority.

3M acted under federal authority in manufacturing MilSpec AFFF for the U.S. military pursuant to government contracts.  3M Br. 18-19.  The Town briefly argues that 3M cannot meet this element because it no longer produces MilSpec AFFF.  Town Br. 14-15.  But that argument—premised on *Georgia v. Meadows*, 88 F.4th 1331 (11th Cir. 2023)—is forfeited, as the Town raises it for the first time on appeal, *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).  In any event, the argument is meritless.

*Meadows* held only that § 1442(a)(1) "does not apply to *former* federal officers," 88 F.4th at 1335; it did not set temporal limitations on the removal statute's "acting under" provision, which applies here.  Indeed, this Court held before *Meadows* that a government contractor satisfies that provision if it "was a person 'acting under' a federal officer when it took the actions complained of"—not when

4

it was sued. *Caver*, 845 F.3d at 1142; *see Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (assessing whether defendant was "acting under" federal authority "in carrying out the 'act[s]' that are the subject of the petitioners' complaint"). That follows from the text: "[T]he phrase 'any person' encompasses individuals of any kind." *Georgia v. Kim*, 733 F. Supp. 3d 1378, 1380 (N.D. Ga. 2024) (citing *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 726 (11th Cir. 2008) ("any" means "all," not just "some or all but a few")). The defense thus ensures the government can get what it needs from contractors, so the defendant's status at the time it acted is what matters.

*Caver*, not *Meadows*, controls here, as *Meadows* did not (and could not) overrule *Caver*—and certainly not *sub silentio*. Unsurprisingly, "many courts have declined to extend *Meadows*" to former government contractors. *Michigan v. Kelly*, 2024 WL 5066093, at *2 (W.D. Mich. Dec. 11, 2024) (citing cases); *see Goffner v. Avondale Indus. Inc.*, 2024 WL 2844542, at *4 (E.D. La. June 5, 2024) (extending *Meadows* would "'twist the Eleventh Circuit's holding'"); *City of Irondale v. 3M Co.*, 2025 WL 2419238, at *4-5 (N.D. Ala. Aug. 19, 2025). Indeed, the Supreme Court is currently considering a case involving actions taken in the World-War-II era, and no one is suggesting that the fact that the contracting officers are long dead makes any difference. *See Chevron USA Inc. v. Plaquemines Par.*, No. 24-813, 2025 WL 1678985 (U.S. June 16, 2025).

5

Numerous other courts agree with *Caver* and have upheld removal by government contractors based on past manufacture of military products. *E.g.*, *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 939-40 (7th Cir. 2020) (manufacturer for military during World War II); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 289 (5th Cir. 2020) (en banc) (asbestos manufacturer for Navy in 1960s); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (Agent Orange supplier during Vietnam War).[1]

But even if § 1442(a)(1) applied only to current government contractors, 3M would satisfy that requirement. 3M continues to make certain MilSpec products for the military. 3M, *Aerospace Spec Support Portal*, https://perma.cc/N4N5-7TLP. In the last 12 months, the government has awarded 3M over $115 million in contracts. USASpending, *3M Profile*, https://perma.cc/ZFD9-XA2J. Approximately one-third of that money was awarded by the Defense Logistics Agency—the same agency that awarded 3M MilSpec AFFF contracts. *Id.* Thus, 3M is still "acting under" the same federal officers it acted under when manufacturing MilSpec AFFF.

## II.    The Town's Nexus Arguments Fail.

3M plausibly alleges that at least one of the Town's claims is "for or relating to" 3M's exercise of federal authority because the Town seeks to recover for 3M's

---

[1] To the extent *Meadows* could be read to hold that § 1442(a)(1) applies only to current government contractors, it was wrongly decided and should be revisited by this Court or reviewed by the Supreme Court.

alleged contamination of the Town's water supply, where the same PFAS from MilSpec AFFF and non-AFFF sources have allegedly commingled and are indistinguishable. 28 U.S.C. § 1442(a)(1). Therefore, any relief would necessarily sweep in PFAS from MilSpec AFFF for which 3M has a federal defense. Those allegations establish a sufficient nexus—*i.e.*, a connection or association—between the charged conduct and 3M's federal activities. 3M Br. 19-30. The Town's counterarguments fail, as they seek to rewrite both the notice of removal and the Town's own complaint.

### A.    3M's Plausible Allegations Are Sufficient For Removal.

The Town first asserts that 3M's allegations are not plausible and are not supported by competent proof. Town Br. 16-22. Neither argument has weight.

*First*, the Town argues that 3M cannot remove because it fails to plausibly allege that *3M*'s MilSpec AFFF was used at the Maxwell Air Force Base or that AFFF PFAS ever left the Base. Town Br. 16-20. That argument cannot withstand any fair reading of 3M's notice of removal or 3M's opening brief. *See* 3M Br. 51. 3M alleges that it "manufactured and sold PFAS-containing MilSpec AFFF to the U.S. military for over three decades," Dkt. 1 ¶ 24, and that the PFAS allegedly in the Town's water supply is "PFAS from MilSpec AFFF manufactured by 3M," *id.* ¶ 29, based on PFAS use at the Base, *id.* ¶¶ 26-28; *see id.* ¶ 36 (the Town's claims "arise at least in part from 3M's manufacture" of MilSpec AFFF); *see also id.* ¶¶ 2, 33, 44.

3M also plausibly alleges that PFAS from AFFF left the Base and entered the Alabama River—the Town's water supply. For example, the notice alleges that PFAS from "multiple AFFF releases" were found "in groundwater" on the Base, which "flowed in the direction of the Alabama River." Dkt. 1 ¶ 26. 3M alleges that the Base is "approximately the same distance upstream as International Paper's paper mill," "to which the Complaint attributes the PFAS purportedly contaminating its drinking water supply." *Id.* ¶ 2. And 3M repeatedly alleges that its MilSpec AFFF PFAS from the Base contributed at least in part to the Town's alleged contamination, *e.g.*, *id.* ¶¶ 2, 4, 29, 36, 44, meaning that PFAS left the Base. That easily clears the plausible-allegation bar. Even if the Town thinks those allegations are incorrect, the Court must accept them as true at this stage. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *Caver*, 845 F.3d at 1145.

*Second*, the Town argues that 3M cannot remove because, even if 3M's allegations are plausible, it has not "prove[n]" a nexus "by a preponderance of the evidence." Town Br. 20-22. To begin, the Town does not dispute that proof is arguably required only if a plaintiff makes a factual, rather than a facial, challenge to the notice of removal. *Id.* at 20. In the district court, the Town challenged only the legal sufficiency of 3M's allegations; it did not introduce evidence to challenge the veracity of those allegations. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003); 3M Br. 50; *see* Dkt. 18 at 12-13.

In any case, 3M explained at length in the opening brief that it need not supply any proof at this stage of this case—only plausible allegations are required. 28 U.S.C. § 1446(a); *Dart Cherokee*, 574 U.S. at 89; *Caver*, 845 F.3d at 1145. And it is equally clear that a court cannot resolve at this stage factual questions that "implicate the merits" of 3M's defense, *Morrison*, 323 F.3d at 925, including the causation and apportionment questions presented here, *Maryland*, 130 F.4th at 392. 3M Br. 48-50.

The Town does not address those decisions or 3M's argument. Instead, it asserts that *Meadows* establishes an evidentiary burden. Town Br. 21. But, as 3M explained, *Meadows* is a *criminal* case where a statute requires an evidentiary hearing for removal. 3M Br. 49 (citing *Meadows*, 88 F.4th at 1336, and 28 U.S.C. § 1455(b)(5)). There is no such requirement here.[2]

Moreover, 3M *did* support its allegations with proof. 3M's notice of removal cites documents from the U.S. Navy and the Department of Defense establishing

---

[2] In a footnote, the Town cites a few other cases, but they are inapposite. Two say nothing about a defendant proving removability. *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 231 (4th Cir. 2022); *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 706 (3d Cir. 2022). One assessed a factual attack on removal. *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746, 760 (9th Cir. 2022). And one permitted removal where there was "some competent evidence supporting a 'colorable' federal defense," without requiring the defendant to "establish[]" the defense or allowing the court "to resolve factual disputes." *Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d Cir. 2014).

9

precise specifications for MilSpec AFFF, listing 3M's products on the Navy's Qualified Products List, and demonstrating the government's awareness of potential risks from PFAS compounds. Dkt. 1 ¶¶ 21-24, 42. 3M also discussed an inspection report "identif[ying] PFAS in groundwater resulting from multiple AFFF release[] areas on [the Maxwell] base." *Id.* ¶ 26. And 3M referenced a "scientific study . . . indicat[ing] that PFAS levels in the Alabama River increase downstream of Montgomery, Alabama," where the Base is located. *Id.* ¶ 26 n.14.

The Town addresses only the inspection report, incorrectly referring to it as "3M's sole piece of extrinsic 'evidence'" and claiming that it is deficient because "3M's name is never mentioned" and "the Inspection Report never says that any AFFF from the base is polluting the environment." Town Br. 18. But the report notes that the Alabama River is less than a mile from the boundary where PFAS were detected on the Base. *Final Site Inspection Report, Site Inspection of Aqueous Film Forming Foam (AFFF) Release Areas (Maxwell Air Force Base, Montgomery Alabama)*, at 22 (Jan. 2019). Even standing alone—and assuming any evidentiary showing is required at this stage—that report suffices; a defendant "need not win his case before he can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

**B.      The Town Cannot Sever The Nexus By Artificially Narrowing The Charged Conduct.**

3M's opening brief explains that the Town's claims focus on 3M's alleged PFAS contamination of the Town's water supply and that 3M's allegations of commingling and indistinguishability mean the charged conduct has a nexus to 3M's production of MilSpec AFFF. 3M Br. 20-31. In response, the Town recharacterizes the charged conduct, asserting that its complaint is "exclusively about the production, sale, and discharge of consumer-grade PFAS used at specific paper mills" for which 3M has no federal defense. Town Br. 22-29. But while the Town is master of its complaint, it cannot ignore the nature of its injuries, claims, and requested relief, or use its disclaimer, to artificially narrow the charged conduct. At any rate, even as reimagined by the Town, the charged conduct would still have a nexus to 3M's federal activities.

**1.      The Charged Conduct Is 3M's Alleged Contamination Of The Town's Water Supply With PFAS.**

The Town agrees that courts determine the charged conduct by identifying the "'heart' or 'gravamen' of the claims." Town Br. 23. As 3M has explained, the complaint's allegations, the Town's request for relief, and the state-law elements of the claims all show that the charged conduct is 3M's alleged contamination of the Town's water supply. 3M Br. 21-24.

The Town nonetheless insists that this case is only about the use of non-AFFF PFAS products at paper mills. Town Br. 27-28. The Town relies on a few allegations that reference paper mills and its disclaimer and asserts that the "entire theory" of its case "is based on consumer-grade PFAS pollution emanating from these paper mills." *Id.* at 25-29. But the disclaimer is unavailing, *see infra* at 18-25; 3M Br. 37-43, and the Town ignores the thrust of its complaint, which turns on 3M's alleged PFAS contamination of the Town's water supply generally. Dkt. 1-2 ¶¶ 74-93, p. 18. That alleged contamination both supplies the Town's injury and informs its requested relief—namely, an order "requiring Defendants to take all steps necessary to remove their chemicals from Pine Hill's water supplies and property," without regard to source. *Id.* ¶ 102. The Town never addresses that sought-after relief or explains how a court could award damages only for non-AFFF PFAS without some allocation decision. The Town also ignores the contamination-focused elements of its claims under Alabama law. Eventually, even the Town slips up and admits that "PFAS pollution" is "at the heart of [its] complaint." Town Br. 19.

The Town nonetheless argues that the district court "faithfully applied" this Court's framework from *Meadows* to conclude that the case is only about non-AFFF PFAS products used at paper mills based on the "'core of the factual allegations.'" Town Br. 22-26. But, under *Meadows*, the charged conduct turns on the "'*claim[s]*' brought against the defendant." 88 F.4th at 1344 (emphasis added). And yet the

district court did not discuss the Town's state-law claims *or* the Alabama case law addressing the elements of those claims. Reviewing those claims, together with the complaint's allegations and request for relief (not to mention the Town's admissions on appeal), demonstrates that the Town is focused on 3M's alleged PFAS contamination of the Town's water supply. 3M Br. 33-34; *see Irondale*, 2025 WL 2419238, at *6 ("PFAS contamination" is "'the heart of the' claim brought by Irondale"). And 3M's discrete acts supplying PFAS to paper mills are actionable (if at all) only if PFAS contaminated the water supply. *See Meadows*, 88 F.4th at 1345 (discrete acts were unlawful only as part of larger criminal conspiracy). It is thus the district court and the Town that have failed to read the complaint "as a whole," elevating "'form over substance.'" *Contra* Town Br. 27.

Next, the Town says the Judicial Panel of Multidistrict Litigation's decision not to transfer this case to the AFFF MDL supports the Town's view of the charged conduct. Town Br. 26. Not so. The panel said that the Town's complaint does not include allegations about AFFF on its face, Exhibit A, *Pine Hill v. 3M Co.*, No. 2:24-cv-284, Dkt. 82-1 at 2 (S.D. Ala. Feb. 14, 2025)—a fact 3M has not disputed. But that was part of the panel's effort to "dr[a]w [a] line between 'AFFF' and 'non-AFFF' cases" based on the complaint's express allegations, *id.*—a different question from whether the charged conduct is 3M's alleged contamination of the Town's water supply or instead its supply of non-AFFF PFAS to paper mills.

13

Amici assert a variation of the same argument: that the charged conduct should be determined according to "what 3M allegedly *did*, not what its actions allegedly *caused*." Amici Br. 9-11. Under that test, they argue, the charged conduct must be the sale of non-AFFF PFAS to paper mills; it cannot be "the contamination of Pine Hill's drinking water," because contamination "is not 'conduct' or an 'action'—it is the injury" the Town "suffered." *Id.* at 11. But this Court has been clear that "the 'act' anchoring removal must be defined by the 'claim' brought against the defendant." *Meadows*, 88 F.4th at 1344.

Here, the elements of the Town's claims center on the Town's alleged injury from PFAS contamination, *see* 3M Br. 23-24, and the Town seeks an order "requiring Defendants to take all steps necessary to remove their chemicals from Pine Hill's water supplies and property," Dkt. 1-2 ¶ 102. Thus, despite its superficial focus on non-AFFF PFAS from paper mills, the Town actually seeks to recover for all 3M acts that caused PFAS contamination of its water supply. Like other courts, this Court should consider the claims as a whole—including the alleged injury—in determining the charged conduct. *E.g.*, *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 190 (1st Cir. 2024) ("charged conduct" was "negotiations" that were "part of a larger scheme . . . to inflate insulin prices"); *Baker*, 962 F.3d at 944 (charged conduct is "the Companies' pollution" that caused "Residents' health conditions").

14

Both the Town and amici say Fourth Circuit decisions support their view of the charged conduct. Town Br. 29 (citing *Baltimore*, 31 F.4th 178); Amici Br. 13-15 (citing *Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343 (4th Cir. 2024)). But in *Maryland*, the Fourth Circuit held exactly the opposite in a nearly identical case. Applying *Anne Arundel* (which, in turn, applied *Baltimore*), the court concluded that the heart of Maryland's and South Carolina's identical claims was their concern regarding "general PFAS contamination" of natural resources. 130 F.4th at 390. That those states disclaimed recovery for AFFF PFAS and argued that their allegations focused on non-AFFF products, as the Town has here, was not determinative. *Id.* at 385, 390.

### 2. 3M Plausibly Alleges A Nexus Between The Charged Conduct—No Matter How Defined—And 3M's Federal Activities.

3M's theory of the case governs in assessing whether 3M plausibly alleges "'a connection or association'" between the charged conduct and its federal activities. *Caver*, 845 F.3d at 1144; *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999). And there should be no question that 3M's theory is plausible. 3M has plausibly alleged that the charged conduct—3M's alleged PFAS contamination of the Town's water supply—is inseparable from 3M's production of MilSpec AFFF, PFAS from which have indistinguishably commingled in the Town's water supply with the same PFAS compounds from other sources. 3M Br. 24-31.

The same would be true even if the charged conduct were only 3M's supply of non-AFFF PFAS products to paper mills. 3M has plausibly alleged that there is no separating PFAS from MilSpec AFFF it supplied to Maxwell Air Force Base and non-AFFF PFAS attributed to paper mills; the same PFAS from the two sources are indistinguishable. 3M thus has plausibly alleged not just a connection or association between the charged conduct and 3M's actions to fulfill federal contracts, but that the two are inseparable. Those plausible allegations thus raise "important causation and allocation questions"—how much of the alleged PFAS contamination in the Town's water supply results from non-AFFF versus MilSpec AFFF sources. *Maryland*, 130 F.4th at 392; *Baker*, 962 F.3d at 944-46 & n.3. The answers to those questions determine the availability and scope of 3M's federal government-contractor defense. That means there is a "'connection between what [3M] has done under asserted official authority and the action against [it].'" *Caver*, 845 F.3d at 1142.

The Town quibbles with the nexus standard, but the relationship here satisfies any formulation of the standard. The Town repeatedly states that 3M must allege a "concrete causal connection" between the charged conduct and 3M's production of MilSpec AFFF, which it suggests is a stricter requirement than the connection-or-association standard. Town Br. 19; *see id.* at 9, 13, 15, 16 n.4. Under the proper standard, the Town asserts, 3M's allegations are insufficient. *Id.* at 19. But this

16

Court has held that the nexus requirement—even if phrased as a "causal connection"—is satisfied by "'a connection or association between the act in question and the federal office.'" *Caver*, 845 F.3d at 1144. That follows from the clear text of the federal-officer removal statute, which Congress "broaden[ed]" in 2011 to allow for removal of actions "'for or relating to'" federal conduct. *Id.* at 1144 & n.8. Indeed, the Town ultimately "[a]dmit[s]" that the nexus element "is met by showing a 'connection or association' between conduct alleged and 3M's asserted federal authority," which the Town recognizes is a "forgiving standard." Town Br. 30. In any event, 3M alleges a sufficient causal connection—that the purported PFAS contamination of the Town's water supply was caused in part by PFAS stemming from MilSpec AFFF, which plausibly commingled in the water supply with the same indistinguishable PFAS compounds from paper mills. 3M Br. 25-27.

Amici argue that deferring to a removing defendant's theory of the case improperly allows the defendant to rewrite the complaint and expand its removal rights. Amici Br. 17-18. But that argument conflates the two steps of the nexus analysis: defining the charged conduct and determining the nexus between that conduct and federal authority. At the first step, a court makes an independent determination based on the plaintiff's claims. At the second, a court must accept the defendant's theory based on the defendant's plausible allegations. *Maryland*, 130

17

F.4th at 389; *Caver*, 845 F.3d at 1145; *see Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644-45 & n.12 (2006) (federal-officer removal is an exception to the well-pleaded-complaint rule).  The Town cannot evade that black-letter law via an artificially narrow conception of the charged conduct.  Properly applying that test leads to the clear conclusion that 3M has plausibly alleged the requisite nexus here.

### C. The Town's Disclaimer Does Not Sever The Nexus.

Next, the Town contends that its disclaimer "severs any purported causal nexus."  Town Br. 29-36.  Not so.

### 1. The Town's Disclaimer Is Merely Artful Pleading.

The Town recognizes that a plaintiff cannot "circumvent[] federal officer jurisdiction" by means of "artful pleading."  Town Br. 34-35.  But the Town argues that its disclaimer is "express" and "specific," waiving all claims that could result in 3M's being held liable for PFAS contamination stemming from MilSpec AFFF.  *Id.* at 29-36.

The problem with the Town's argument is that it rests on a false dichotomy.  Most artful pleading is done expressly and specifically, and courts have repeatedly rejected disclaimers no less explicit and specific than the Town's.  The reality is that, despite its so-called express disclaimer, the Town seeks to recover for alleged contamination of its water supply, where 3M has alleged that the same specific PFAS compounds from MilSpec AFFF and non-AFFF sources are commingled and

18

indistinguishable. Regardless of the label a plaintiff gives it, a disclaimer does not defeat federal jurisdiction if it "'requires a state court to determine the nexus between the charged conduct and federal authority,'" *Maryland*, 130 F.4th at 389 (quoting *Express Scripts*, 119 F.4th at 188), or—as the Town agrees—if the "'plaintiff, nonetheless, s[eeks] to recover based on a defendant's official acts,'" Town Br. 34. That is the case here. Given 3M's allegations, the factfinder "must" decide, based on expert testimony or other evidence, whether it is possible to segregate PFAS contamination based on source, and if so, what percentage of PFAS contamination traces back to MilSpec AFFF. *Maryland*, 130 F.4th at 392. Of course, 3M alleges that such disentangling likely is not possible. But, in any event, those decisions— whether framed in terms of the scope of the disclaimer or the scope of the federal defense—determine the availability and scope of 3M's federal government-contractor defense. 3M therefore has the right to argue the law and the facts in a federal court. *Caver*, 845 F.3d at 1145; *Maryland*, 130 F.4th at 390-92.

The Town says *Delaware v. BP America Inc.*, 578 F. Supp. 3d 618 (D. Del. 2022), accepted a similar disclaimer of recovery for injury to federal property. Town Br. 35-36. But *Delaware* did not address allegations about commingling and indistinguishability like those presented here. 3M's allegations mean it is "possible for the [Town] 'to recover based on' [3M's] 'official acts' despite the disclaimer."

19

*Express Scripts*, 119 F.4th at 192.  The disclaimer is thus "artful crafting" that does not sever the nexus 3M plausibly alleges.  *Maryland*, 130 F.4th at 389-93.

### 2.    This Court Should Not Create A Circuit Split.

The Town argues that "other courts have consistently granted motions to remand" based on similar disclaimers.  Town Br. 30.  In reality, case after case is on 3M's side—including materially identical Fourth and Seventh Circuit decisions. This Court should follow those well-reasoned decisions rather than create a circuit split.

***Fourth Circuit.***  The Fourth Circuit recently endorsed 3M's removal theory, rejecting two States' attempts to evade federal jurisdiction via a disclaimer:  Those States' "artful pleading" could not overcome 3M's allegations of "PFAS from 3M's non-AFFF products indistinguishably commingled with the PFAS from 3M's Military AFFF."  *Maryland*, 130 F.4th at 386, 391-92.  That reasoning applies here.

The Town "readily acknowledges that the facts of its case and *Maryland* are quite similar," but nonetheless seeks to distinguish *Maryland* on a single ground: Whereas 3M "allege[d] it sold Military AFFF" to nearby military bases in *Maryland*, the Town argues, 3M has not similarly alleged here.  Town Br. 39-40.  As explained, however, 3M clearly alleges that it sold MilSpec AFFF to the Maxwell Air Force Base that was used on the Base and plausibly entered the Alabama River and the Town's water supply.  *See supra* at 7-8.

20

Eventually, the Town abandons all pretense and "urges" this Court to split from the Fourth Circuit, criticizing 3M for "ignor[ing]" the *Maryland* dissent. Town Br. 41-44. But this Court does not "lightly" split from other circuits; it follows the out-of-circuit majority decision—not the dissent—unless it is "plainly wrong." *Pub. Health Tr. v. Lake Aircraft, Inc.*, 992 F.2d 291, 295 n.4 (11th Cir. 1993). The *Maryland* dissent may have believed "the States' complained-of conduct . . . was easily separated from" 3M's federal activities, Town Br. 43 (citing 130 F.4th at 395-96), but only by ignoring the requirement that courts defer to a defendant's theory in determining removability. The dissent also saw no problem with 3M's raising its federal defense in state court, 130 F.4th at 396, but "[o]ne of the primary purposes of the removal statute . . . was to have [federal-officer] defenses litigated in the *federal* courts," *Willingham*, 395 U.S. at 405-09 (emphasis added).

**Seventh Circuit.** The Town also invites this Court to break with the Seventh Circuit in *Raoul* and *Baker*. In those cases, the Seventh Circuit held that a federal government-contractor defense remains "viab[le]" even when a plaintiff "disclaim[s]" recovery for certain contamination, if "a factfinder would need to apportion the contamination" between sources at least one of which is federal. *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848-49 (7th Cir. 2024). That task presents "'difficult causation question[s] that a federal court should . . . resolve.'" *Id.* at 849 (quoting *Baker*, 962 F.3d at 945 n.3).

21

The Town dismisses *Raoul* on the ground that the Seventh Circuit "did not discredit the plaintiff's disclaimer." Town Br. 38. But *Raoul* concluded that the suit could proceed in state court not because of a disclaimer, but because Illinois conceded it could recover only if the alleged contamination was "*wholly* derived" from non-AFFF sources, such that "a factfinder will not need to apportion the PFAS contamination between sources." 111 F.4th at 849 (emphasis added). The Town pointedly has not made that drastic concession here—and could not. Given 3M's plausible allegations, the Town "envision[s] recovering for mixed PFAS contamination," so this case belongs in federal court. *Maryland*, 130 F.4th at 392.[3]

The Town insists *Baker* is distinct because the Town "seeks to limit its recovery to an entirely *different* product, manufactured at *different* 3M facilities, supplied to *different* locations." Town Br. 37-38. But *Baker* and this case are on all fours. 3M Br. 29-30. The *Baker* plaintiffs disclaimed recovery for contamination from Freon-12 produced for the federal government, but still sought to recover for contamination from the same chemicals stemming from non-federally-controlled products. 962 F.3d at 945 & n.3. Here, the Town similarly disclaims recovery for PFAS contamination from AFFF products, but still seeks to recover for chemically indistinguishable PFAS compounds stemming from other products.

---

[3] 3M does not concede that a *Raoul*-style concession eliminates federal jurisdiction. 3M Br. 29 n.2. This case, however, does not present that question.

***First Circuit.*** The First Circuit held that *Express Scripts* was removable because the plaintiff sought to hold Caremark liable for one "indivisib[le]" course of negotiations involving the federal government in part. 119 F.4th at 189. The Town insists this case is different because "the disclaimed conduct" is "distinct" from the charged conduct. Town Br. 32. That is a blatant attempt to ignore 3M's theory of the case. If the Town's disclaimer were credited, a state court could hold 3M liable for federal actions, "no matter what the disclaimer says." *Express Scripts*, 119 F.4th at 191-92. Ruling for the Town would thus require rejecting the First Circuit's reasoning too.[4]

***The Town's cases.*** The Town's cases (Town Br. 30-34) are inapposite.

In *City of Hoboken*, a city sued oil companies for alleged climate-change injuries, while disclaiming injuries "caused by fuel provided to the federal government." 45 F.4th at 713. But that was a "global" case where "less than 1/800th" of the conduct was government-related. *Id.* *Hoboken* concluded that such a "small island" could be "carve[d] out" and therefore refused—rightly or

---

[4] District-court decisions also support 3M. 3M Br. 41-42. *Nessel v. Chemguard, Inc.*, rejected Michigan's attempt to disclaim recovery for MilSpec-AFFF contamination but not recovery for commercial-AFFF contamination. 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021). And *Curiale v. A. Clemente, Inc.*, held that a chemical manufacturer could present an alternate-causation argument in federal court although the plaintiff purportedly "disclaim[ed] harm resulting from" the manufacturer's federal activities. 2023 WL 4362722, at *6 (D.N.J. July 5, 2023). The Town offers no response to those decisions.

wrongly—"to hang [its] jurisdiction on so small a slice of the pie." *Id.* By contrast, no such "carv[ing] out" is possible here, *id.*, where 3M's plausible allegations mean that any remediation would "implicate work that 3M did for the federal government," *Maryland*, 130 F.4th at 390.

Relatedly, *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144 (D.C. Cir. 2023)—which did not involve a disclaimer—held that there was "no relationship" between the defendant's production of "military products during World War II" and fraud-based claims regarding statements made after 1980. *Id.* at 156. *Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014), is also "inapposite" here, as the Fourth Circuit has already explained in *Maryland*, 130 F.4th at 390.

Finally, in *Young v. Tyco Fire Products, LP*, the Ninth Circuit rejected a defendant's attempt to remove claims by a firefighter alleging on-the-job AFFF exposure. 2022 WL 486632, at *1 (9th Cir. Feb. 17, 2022). The defendant argued that MilSpec AFFF may have contaminated the town's groundwater and contributed to the injury, but the court concluded that removal was inappropriate because the plaintiff alleged workplace exposure and "expressly disavowed" groundwater exposure. *Id.* at *2. The court distinguished cases like *Nessel*, where "the plaintiff explicitly alleged groundwater contamination as a source of injury." *Id.* The Town's suit is more like *Nessel* (and *Maryland* and *Baker*) than *Young*: The Town seeks

24

recovery for alleged contamination of its water supply, allegedly caused by the same PFAS from both MilSpec AFFF and non-AFFF sources.

The Town also cites several district-court decisions. Some credited States' disclaimers in contexts similar to this one. Town Br. 30-32. But 3M has already explained why those decisions are wrong and have been overruled or undermined by the subsequent circuit-court precedent discussed above. 3M Br. 43-44; *supra* at 20-23. The Town's remaining district-court decisions, which involve personal injuries and largely predate that on-point circuit precedent, Town Br. 35 n.9, 50, are similarly incorrect to the extent they suggest a state court may resolve factual questions concerning plausible alternate causes of a plaintiff's injury if that causation analysis determines the availability of a federal defense.

In short, 3M plausibly alleges a nexus between the charged conduct and 3M's federal activities.

## III.    3M Has Asserted A Colorable Federal Defense.

3M asserts a colorable federal government-contractor defense. 3M has alleged that it manufactured MilSpec AFFF for the U.S. military according to reasonably precise specifications requiring the use of PFAS and that the government was aware of the potential risks of PFAS. 3M Br. 44-47. The Town primarily repeats its disclaimer argument, asserting that it neutralizes 3M's federal defense. Town Br. 46-47. The Town's arguments are unavailing for the reasons explained

above and fare no better when repackaged under the colorable-federal-defense prong. As the Fourth Circuit explained, giving "dispositive" weight to a disclaimer is just as "misguided" when applied to the colorable-federal-defense element as to the nexus element. *Maryland*, 130 F.4th at 393.

The Town also argues that 3M's federal defense is merely "an ordinary, factual defense" that can be raised in state court. Town Br. 47-50. That argument is question-begging. As 3M explained in its opening brief, a factfinder must determine the source of the Town's alleged PFAS contamination. 3M Br. 24-31. 3M has alleged that there is no ready way to distinguish between PFAS from AFFF and non-AFFF sources, so any judgment in the Town's favor would necessarily hold 3M liable for conduct that it undertook for the federal government. *Id.* at 26. Even if the Town could distinguish between PFAS based on source, a *federal* factfinder would need to consider and weigh the evidence because the answers to those "challenging causation question[s]" determine the availability and scope of 3M's defense. *Maryland*, 130 F.4th at 391; *see* 3M Br. 27; *Caver*, 845 F.3d at 1145. Calling it a determination about the scope of the disclaimer does not change that reality. If the factfinder decides there is no PFAS from MilSpec AFFF in the Town's water supply, that finding would defeat 3M's *federal* defense. If that finding were erroneous, 3M would have been deprived of its valid federal defense. Such factfinding therefore must occur in a federal forum.

The Town also asserts—relying on an order from the MDL court—that 3M's manufacture of MilSpec AFFF "did not follow reasonably precise specifications," as required to assert a government-contractor defense. Town Br. 50-51. But 3M's notice of removal plausibly alleges that the AFFF MilSpec is reasonably precise, which suffices at this stage. *Dart Cherokee*, 574 U.S. at 89. In any event, the MDL order explains that 3M can raise its defense if the federal government (1) "approved reasonably precise specifications" *or* (2) "continued to use the product after acquiring full knowledge of its defects and risks." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *4-5 (D.S.C. Sept. 16, 2022). The Town does not dispute that the second path is available here, and the MDL court held that, under that theory, 3M's government-contractor defense raises "disputed issues of material fact" that "require a full factual presentation at trial." *Id.* at *15. In other words, 3M's defense is more than colorable.

## CONCLUSION

For these reasons, this Court should reverse the district court's remand order.

27

Dated:  August 27, 2025                          Respectfully submitted,


                                                   _/s/ Lauren R. Goldman_____

Paul D. Clement                                  Lauren R. Goldman
Nicholas A. Aquart                               GIBSON, DUNN & CRUTCHER LLP
Clement & Murphy, PLLC                           200 Park Avenue
706 Duke Street                                  New York, NY 10166
Alexandria, VA 22314                             (212) 351-2375
(202) 742-8900                                   lgoldman@gibsondunn.com
paul.clement@clementmurphy.com

                                                 Amir C. Tayrani
                                                 Zachary Tyree
                                                 GIBSON, DUNN & CRUTCHER LLP
                                                 1700 M Street, N.W.
                                                 Washington, DC 20036
                                                 (202) 955-8500
                                                 atayrani@gibsondunn.com
                                                 ztyree@gibsondunn.com


              *Counsel for 3M Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Times New Roman, 14-point font). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 6,500 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

August 27, 2025                    Respectfully submitted,


   */s/ Lauren R. Goldman*
Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2025, I caused a true and correct copy of this brief to be filed electronically through the Court's CM/ECF system, which will send a notice of filing to all registered users.

    */s/ Lauren R. Goldman*
Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com